UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GUS BETHEA,

Petitioner,

-against-

JAMES WALSH, Superintendent of Sullivan Correctional Facility,

Respondent.

EXHIBITS TO SUPPLEMENTAL AFFIDAVIT IN OPPOSITION TO PETITION FOR A WRIT OF HABEAS CORPUS

CV 09-5037 (NGG)

EXHIBIT J

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM, PART 9

THE PEOPLE OF THE STATE OF NEW YORK,

-against-

GUS BETHEA,

Defendant.

AFFIRMATION IN OPPOSITION TO MOTION TO VACATE JUDGMENT

Kings County
Indictment Number
1237/2002

TERRY-ANN LLEWELLYN, an attorney admitted to practice in the State of New York and an Assistant District Attorney in the County of Kings, affirms the following to be true under the penalties of perjury:

1. This affirmation is made in opposition to defendant's pro se motion, dated January 5, 2010, pursuant to Criminal Procedure Law § 440.10, seeking an order vacating his judgment of conviction.

2. The following statements are made upon information and belief based upon the files and records of the District Attorney of Kings County and conversations with defendant's trial attorney, Philip Sicks.

3. On October 31, 2001, at approximately 4:00 p.m., in front of 60 Glenmore Avenue, in Brooklyn, defendant approached Kendrick Bass with a gun in his hand and demanded Bass's money and property. Defendant reached into Bass's pocket and took his wallet, money, and cell phone. As Emmanuel Davis walked nearby, defendant approached Davis and, while still holding the gun, demanded Davis's money and property. Defendant reached into

Davis's pocket and took his money and cell phone. Defendant also took Davis's ring, chain, and coat. Davis recognized defendant from the neighborhood, and the day after the robbery, defendant approached Davis, apologized to him, and returned his ring. On November 26, 2001, Bass told Detective Paul Parsekian that his assailant's nickname was "Pop," his first name was "Gus," and that he lived at 300 Stone Avenue. On February 23, 2002, Bass identified defendant in a lineup as the person who had robbed him. Davis did not view the lineup. After the lineup, defendant requested to make a telephone call to his aunt and Detective Parsekian heard defendant tell her to ask someone to reach out to the cousin of the person who was pressing charges against him. Defendant then told Detective Parsekian that the victim would not appear in court.[1]

4. For these crimes, defendant was charged, under Kings County Indictment Number 1237/2002, with two counts each of Robbery in the First Degree (P.L. § 160.15[4]), Robbery in the Third Degree (P.L. § 160.05), Grand Larceny in the Fourth Degree (P.L. § 155.30[5]), and Petit Larceny (P.L. § 155.25).

5. When defendant was arraigned on the indictment on March 4, 2002, defendant was represented by a court appointed attorney, John Stella, Esq. A few months later, Mr. Stella later made an ex-parte motion to be relieved as counsel for defendant. On

---

[1] On August 5, 2002, the first date that Bass had been subpoenaed for trial, Bass wrote a letter stating that defendant was not the person who had robbed him and he gave the letter to one of defendant's family members who lived in his complex. Then, sometime in December of 2002 or January of 2003, a friend of defendant called Davis and told him not to go to court.

October 15, 2002, the Court relieved Mr. Stella and assigned Philip Sicks, who represented defendant at the pre-trial hearing and trial.[2]

6. Defendant was convicted, after a jury trial, of two counts of Robbery in the First Degree (P.L. § 160.15[4]). On May 13, 2003, defendant was sentenced to concurrent, definite terms of imprisonment of twenty-five years for each count (Starkey, J., at trial and sentence).

7. Defendant appealed to the Appellate Division, Second Department from his judgment of conviction. Appellate counsel, Daniel F. Lynch, Esq., filed a brief with an appendix on defendant's behalf, raising the following claims:[3]

1. the trial court erred in failing to afford defendant a hearing on the admissibility of uncharged crimes evidence;

2. defendant was deprived of constitutionally adequate counsel; and

---

[2] Philip Sicks was disbarred on January 24, 2005, after his conviction of fourth-degree Grand Larceny on September 21, 2004 under Kings County Superior Court Information Number 4398/2004. Defendant has provided to the Court a purported copy of the minutes from Mr. Sicks's plea allocution on July 13, 2004 (Def.'s Exhibit B). However, the minutes provided by defendant incorrectly indicate that the District Attorney was Robert T. Johnson, Esq., District Attorney, Bronx County, represented by Ileana Vasivean, Esq. (see Def.'s Exhibit B at 1-2). Rather, the District Attorney on Mr. Sicks's case was Charles J. Hynes, Esq., represented by Eileen Ayvazian, Esq. The People are providing the Court with a copy of the correct plea minutes (see People's Exhibit 1).

[3] The People are providing the Court with a copy of the Appendix submitted by defendant with his brief to the Appellate Division, which includes the pages of the pretrial hearing, trial, and sentence.

3. the sentence imposed was harsh and excessive.

8. By decision and order, the Appellate Division affirmed defendant's judgment of conviction on November 8, 2006. People v. Bethea, 34 A.D.3d 489 (2d Dep't 2006). The Appellate Division held that defendant did not preserve for appellate review his claim that the trial court had improperly failed to conduct a Ventimiglia hearing to determine the admissibility of testimony regarding a telephone call made by defendant's friend to one of the complainants and that, in any event, the testimony was properly introduced as some evidence of defendant's consciousness of guilt. Id. at 490. The Appellate Division further held that the trial court gave the jury proper limiting instructions. Id. Finally, the Appellate Division held that defendant was not denied his right to effective assistance of counsel and that the sentence imposed was not excessive. Id.

9. On June 19, 2007, a judge of the New York Court of Appeals denied defendant's application for leave to appeal from this Court's decision. People v. Bethea, 9 N.Y.3d 840 (2007) (Smith, R., J.).

10. In papers dated March 28, 2008, defendant, pro se, moved the Appellate Division for a writ of error coram nobis on the ground that he was denied the effective assistance of appellate counsel. Defendant claimed that appellate counsel was ineffective for raising a mischaracterized and unpreserved Ventimiglia claim. Defendant further claimed that appellate counsel should have raised before the Appellate Division that (1) the evidence was legally insufficient to establish

defendant's guilt beyond a reasonable doubt and the verdict was against the weight of the evidence, (2) the trial court erroneously allowed the People to impeach one of their witnesses with his Grand Jury testimony and the court failed to immediately give corresponding limiting instructions, (3) the prosecutor failed to investigate Bass's recantation, (4) the prosecutor engaged in misconduct that deprived defendant of a fair trial, (5) defendant was deprived of his right to choice of counsel because the trial court summarily denied his last minute request for a three-week adjournment to retain private counsel, and (6) the hearing court improperly denied defendant's motion to suppress his pre-Miranda statements.

11. On August 19, 2008, the Appellate Division denied defendant's motion for a writ of error coram nobis, finding that defendant had failed to establish that he was denied effective assistance of appellate counsel. People v. Bethea, 54 A.D.3d 420 (2d Dep't 2008).

12. On June 19, 2007, a judge of the New York Court of Appeals denied defendant's application for leave to appeal from this Court's decision. People v. Bethea, 9 N.Y.3d 840 (2007) (Smith, R., J.).

13. On October 30, 2009, a judge of the New York Court of Appeals denied defendant's application for leave to appeal from the Appellate Division's denial of defendant's motion for a writ of error coram nobis. People v. Bethea, 13 N.Y.3d 834 (2009) (Lippman, J.).

14. By pro se papers dated November 2, 2009, defendant filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York (hereinafter "District Court"). Defendant raised the same claims that he raised on direct appeal and in his motion for a writ of error coram nobis in the Appellate Division.

15. By pro se papers dated February 12, 2010, defendant moved in the District Court to hold his habeas petition in abeyance during the pendency of the determination of his motion to vacate the judgment in this Court. The District Court denied defendant's motion without prejudice and ordered defendant to move to amend his habeas petition to include the claims from his motion to vacate the judgment before the District Court would address the abeyance issue. By papers dated, June 14, 2010, defendant moved accordingly to amend his habeas petition. Defendant's motion is still pending in the District Court.

16. In his current pro se motion dated January 5, 2010, defendant seeks to vacate his judgment of conviction on several grounds. Defendant asserts a claim of actual innocence on the ground that defendant did not commit the crimes charged because he was at a location different from where the crimes occurred. Specifically, defendant claims that at the time of the robberies he had been with his then girlfriend, Kyonte Walker, and her mother, Angelette Walker, at their apartment at 777 Franklin Avenue.[4]

---

[4] Kyonte Walker is currently defendant's wife.

17. Defendant also claims that defense counsel was ineffective for failing to investigate and proffer the alibi defense and, more specifically, for counsel's failure to interview and present Kyonte Walker and Angienette Walker as alibi witnesses at the pretrial hearing and trial. Defendant further claims that defense counsel was ineffective for failing to: (1) conduct any investigation, (2) interview the victims and call them to testify at the pre-trial hearing; (3) introduce Bass's recantation letter at the pretrial hearing; (4) call any witnesses to testify on defendant's behalf at trial; (5) challenge certain jurors during jury selection; (6) present a medical and psychological expert at trial to challenge the mental health condition of Davis who, according to defendant, testified while under the influence of medication after suffering from a stroke; (7) effectively cross-examine the victims at trial; (8) vigorously object to the prosecutor's impeachment of Bass, who recanted at trial; (9) inform defendant about counsel's pending criminal case; and (10) filing vouchers for work not performed on defendant's case. Defendant claims that the criminal charges allegedly pending against defense counsel during defendant's trial created a conflict of interest. Defendant also claims that, during the voir dire of prospective jurors, which occurred off the record, the trial court allegedly failed to conduct an adequate inquiry of certain chosen jurors who had allegedly claimed that it would be difficult for them to render an impartial verdict due to their negative experience as crime victims. Defendant further claims that the trial court improperly denied defendant's in limine

motion to relieve counsel. Defendant also claims that the prosecutor failed to investigate Bass's recantation and that the prosecutor elicited false testimony from Bass at trial.

18. Defendant attaches to his motion papers, an affidavit purportedly written by Kyonte Walker, stating that defendant had been with her and her now deceased mother, Angienette Walker, at the time of the robberies and that she had contacted defense counsel who had allegedly sated that he would send an investigator to interview them, but counsel failed to do so. Defendant also attaches to his motion papers, an affidavit purportedly written by Kevin Hinkson, a private investigator, stating that he had interviewed Princess Donaldson, the sister-in-law of Emmanuel Davis, and that Ms. Donaldson had said that Davis had suffered a drug-induced stroke and had been taken from the hospital to court, to testify against defendant.

19. Defendant's present papers do not establish his claim of actual innocence. Therefore, his claim should be summarily denied. Furthermore, the People dispute defendant's allegations that defense counsel rendered ineffective assistance due to counsel's failure to investigate and proffer defendant's alleged alibi defense at the pretrial hearing and trial. Therefore, the People consent to the Court conducting a hearing for defendant to prove his allegations by a preponderance of the evidence. See C.P.L. § 440.30(3), (5) (6); People v. Gruden, 42 N.Y.2d 214, 217-18 (1977). Defendant's remaining claims should be summarily denied because they are largely mandatorily procedurally barred from the Court's review and, in any event, are all without merit.

WHEREFORE, and for the reasons set forth in the accompanying Memorandum of Law, the Court should conduct a hearing for defendant to prove, by a preponderance of the evidence, that he received ineffective assistance of counsel due to trial counsel's failure to investigate and proffer an alleged alibi defense. All of defendant's remaining claims should be summarily denied.

Dated: Brooklyn, New York
July 2, 2010

Terry-Ann Llewellyn
Assistant District Attorney
(718) 250-3905

cc: Gus Bethea
#03A2735
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, New York 12733

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM, PART 9

THE PEOPLE OF THE STATE OF NEW YORK,

-against-

GUS BETHEA,

Defendant.

MEMORANDUM OF LAW

Kings County
Indictment Number
1237/2002

## POINT I

### DEFENDANT FAILS TO ESTABLISH HIS ACTUAL INNOCENCE CLAIM. THEREFORE, THE CLAIM SHOULD BE SUMMARILY REJECTED.

For the first time since his arrest in February 2002, defendant asserts a claim of actual innocence on the ground that defendant did not commit the crimes charged because he was at a location different from where the crimes occurred (Def.'s Affidavit ¶¶ 12-13, 23). Specifically, defendant claims that he had told his defense counsel, Philip Sicks, that at the time of the robberies on October 31, 2001, he had been with his girlfriend, Kyonte Walker, and her mother, Angelette Walker, at their apartment at 777 Franklin Avenue from 3:00 p.m. to 11:30 p.m., watching Halloween movies and preparing candy for Halloween treats, and that therefore defendant could not have committed the robberies in front of 60 Glenmore Avenue at approximately 4:00 p.m. (Def.'s Affidavit ¶¶ 12, 23; Def.'s Argument at 3-4). Defendant attaches to his motion papers, an affidavit purportedly written by Kyonte Walker, his current wife, which states that

defendant had been with her and her now deceased mother, Angienette Walker, at the time of the robberies (see Def.'s Exhibit D).

Defendant has failed to establish that he is entitled to relief under Criminal Procedure Law § 440.10(1)(h), under a theory of actual innocence. Pursuant to the Supreme Court's decision in Herrera v. Collins, 506 U.S. 390 (1993), a defendant may argue that his continued incarceration violates his right to due process of law because he is actually innocent of the charges on which he was convicted. However, defendant here has failed to demonstrate that he is "actually innocent" of the robberies of which he was convicted. Therefore, his claim should be summarily denied.

In Herrera v. Collins, 506 U.S. 390 (1993), the defendant, who had been sentenced to death, claimed that his brother (who had since died) was the actual perpetrator and that the execution of an innocent person such as himself would violate the due process clause of the Federal Constitution. Justice Rehnquist, delivering the opinion of the Court, stated that, absent an independent constitutional violation occurring during the criminal trial, an actual innocence claim ordinarily does not raise a federal constitutional issue. 506 U.S. at 393, 399-404. Instead, it merely raises the non-constitutional issue of whether a defendant is entitled to a new trial under the statutory newly discovered evidence provisions of state or federal law. Id. at 406-07, 410-11.

However, a majority of the other justices expressed the view that the execution of an actually innocent person would violate the due process clause. See Herrera, 506 U.S. at 419 (Connor, J., concurring, joined by Kennedy) ("I cannot disagree with the fundamental legal principle that executing the innocent is inconsistent with the Constitution"); id. at 429 (White, J., concurring) ("I assume that a persuasive showing of 'actual innocence' made after trial, even though made after the expiration of the time provided by law for the presentation of newly discovered evidence, would render unconstitutional the execution of petitioner in this case"); id. at 430-31 (Blackmun, J., dissenting, joined by Stevens and Souter) ("We really are being asked to decide whether the Constitution forbids the execution of a person who has been validly convicted. . .but who, nonetheless, can prove his innocence with newly discovered evidence. . . . I do not see how the answer can be anything but 'yes'").[5]

Since the Supreme Court's decision in Herrera, state and federal courts have wrestled with the question of whether a defendant's claim of actual innocence raises a federal constitutional claim. Some courts have read Herrera to stand for the proposition that the Constitution does not prohibit the incarceration or execution of innocent persons. See LaFevers v.

[5] The Court in Herrera concluded that the defendant had not made a credible showing of actual innocence. 506 U.S. at 417-19. Therefore, the Court did not have to squarely decide the issue of whether the incarceration of an actually innocent defendant violates the due process clause.

Gibson, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001); Dowthitt v. Johnson, 230 F.3d 733, 741 (5th Cir. 2000), cert. denied, 532 U.S. 915 (2001); Mansfield v. Dormire, 202 F.3d 1018, 1023-24 (8th Cir. 2000), cert. denied, 531 U.S. 1154 (2001); Ohio v. Watson, 126 Oh. App. 3d 316, 323, 710 N.E.2d 340, 344-45 (1998).

But other courts have held that the incarceration or execution of an innocent person does violate the due process clause of the federal or their state constitutions. See Carriger v. Stewart, 132 F.3d 463, 476-77 (9th Cir. 1997) (holding that federal constitution prohibits the execution of an innocent person), cert. denied, 523 U.S. 1133 (1998); Miller v. Commissioner of Correction, 242 Conn. 745, 700 A.2d 1108 (1997) (holding that incarceration of an innocent person is inconsistent with fundamental fairness); People v. Washington, 171 Ill. 2d 475, 665 N.E.2d 1330, 1333-37 (Ill. 1996) (holding that the federal constitution does not prohibit the incarceration of an innocent person, but that the Illinois Constitution does); Ex Parte Elizondo, 947 S.W.2d 202 (Tex. Cr. App. 1996) (holding that federal constitution prohibits the execution or incarceration of an innocent person); cf. Milone v. Camp, 22 F.3d 693, 699-700 (7th Cir. 1994) (a claim of actual innocence is of constitutional magnitude only in capital cases), cert. denied, 513 U.S. 1076 (1995).

New York State courts have yet to decide whether a defendant can pursue a free-standing claim of actual innocence. In People v. Tankleff, 49 A.D.3d 160, 178 (2d Dep't 2007), the Appellate Division, Second Department, explained that "It is abhorrent to

our sense of justice and fair play to countenance the possibility that someone innocent of a crime may be incarcerated or otherwise punished for a crime which he or she did not commit." The defendant in Tankleff had moved to set aside his conviction for the murder of his parents on the grounds of newly discovered evidence and actual innocence. The Second Department granted the defendant's motion for a new trial on the grounds of newly discovered evidence. 49 A.D.3d at 183. However, the appellate court explained that "[i]n making our determination, we do not decide the contention, advanced by the defendant, that New York recognizes a free-standing claim of actual innocence that is cognizable by, or which may be addressed within the parameters of C.P.L § 440.10(1)(h)." 49 A.D.3d at 182 (emphasis added). Thus, it is not clear that New York State recognizes a free-standing claim of actual innocence under C.P.L § 440.10(1)(h) that fails to meet any of the criteria for newly discovered evidence. See People v. Days, 2009 N.Y. Slip Op. 52667U, *15 (Cty. Ct. Westchester Cty. Dec. 31, 2009) ("there is no appellate authority expressly holding that a free-standing claim of actual innocence can be raised under § 440.10[1][h]"); cf. People v. Bermudez, 25 Misc. 3d 1226A, 2009 N.Y. Slip Op. 52302U, *23 (Sup. Ct. N.Y. Cty. Nov. 9, 2009) ("State Constitution provides a state prisoner alleging actual innocence with greater protection than the federal constitution, by enabling a freestanding claim of actual innocence to be raised by post-conviction motion"). Nonetheless, it is the view of the Kings County District Attorney's Office that, if a defendant can prove his or her actual innocence, the defendant's

continued incarceration would be fundamentally unfair and would, at the very least, violate the New York State Constitution.

In Herrera, the Supreme Court stated that, assuming "for the sake of argument" that the punishment of an actually innocent defendant would violate the due process clause, the "threshold" for such claims would be "extraordinarily high" and that the proof of innocence would have to be "truly persuasive." Herrera, 506 U.S. at 417; accord id. at 426 (O'Connor, J., concurring). Two years later, in Schlup v. Delo, 513 U.S. 298 (1995), Justice Stevens, delivering the opinion of the Court, said in dicta that a claim of actual innocence under Herrera should not be granted unless the hearing court is convinced that the new evidence "unquestionably establish[es]" the defendant's innocence. 513 U.S. at 301, 317.[6]

In determining the standard of proof to be applied, courts have held that a free-standing claim of actual innocence should not be granted unless the defendant establishes his innocence by at least clear and convincing evidence. See Cornell v. Nix, 119 F.3d 1329, 1335 (8th Cir. 1997) (burden of showing new facts that "unquestionably establish the petitioner's innocence is at least as exacting as the clear and convincing evidence standard, and possibly more so"); Ex Parte Elizondo, 947 S.W.2d at 209 (adopting clear and convincing evidence standard for actual

[6] Justice Stevens's statement was dicta because the issue before the Supreme Court in Schlup was whether a state prisoner who was not making a freestanding claim of actual innocence could file a second or successive writ of habeas corpus. 513 U.S. at 314-16.

innocence claims); Miller, 242 Conn. at 794, 700 A.2d at 1132 (same); cf. Carriger, 132 F.3d at 476-77 (court held that the defendant, at a minimum, would have to affirmatively prove that he is probably innocent).

"The clear and convincing standard of proof is substantially greater than the usual civil standard of a preponderance of the evidence, but less than the highest legal standard of proof beyond a reasonable doubt." Miller, 242 Conn. at 794, 700 A.2d at 1132. The Supreme Court has cited the following definition with approval: clear and convincing evidence is "evidence which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the fact-finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" Cruzan v. Director, Missouri Dept. of Health, 497 U.S. 261, 285 n.11 (1990), quoting In Re Jobes, 108 N.J. 394, 407-08, 529 A.2d 434, 441 (1987). The New York Court of Appeals has stated that the clear and convincing standard "'forbids relief whenever the evidence is loose, equivocal or contradictory.'" In Re Storar, 52 N.Y.2d 363, 379, cert. denied, 454 U.S. 858 (1981).

Applying the clear and convincing standard of proof to actual innocence claims would serve two important purposes. First, this high burden of proof reflects the paramount importance of the trial as the proceeding at which guilt or innocence should be determined and ensures that the results of a trial will not be lightly overturned. Second, this standard

recognizes that it is much more difficult to determine the reliability of evidence years later, when memories have faded, physical evidence is no longer available, and the possibility of fabrication is greater. See generally Herrera, 506 U.S. at 441-44 (Blackmun, J., dissenting); Miller, 242 Conn. at 792-99, 700 A.2d at 1131-34.

Although, in general, a defendant can prevail on a motion pursuant to C.P.L. § 440 by proving the facts essential to his claim by a preponderance of the evidence (see C.P.L. § 440.30[7]), a defendant who is claiming actual innocence should be required to meet the higher standard of clear and convincing evidence. The higher standard is a part of the constitutional right, i.e., a defendant cannot establish that his incarceration violates due process unless he establishes that he is "unquestionably innocent." This high standard takes into account the need for finality and the greater risk of inaccurate fact-finding years after the crime.

In People v. Wheeler-Whichard, 884 N.Y.S.2d 304 (Sup. Ct. Kings Co. July 30, 2009), a court of coordinate jurisdiction with this Court did permit a claim of actual innocence pursuant to C.P.L. § 440.10(1)(h), finding that the defendant in that case had, after a hearing, met the high burden of proving his wrongful conviction by clear and convincing evidence. Id. at 313-14. However, the Wheeler-Whichard decision acknowledged the absence of any appellate ruling on the issue of whether a claim of actual innocence was cognizable under C.P.L. § 440.10(1)(h). Id. Furthermore, the conclusion in Wheeler-Whichard was expressly

limited to the facts of that case. Id.; see People v. Days, 26 Misc. 3d 1205A, 2009 N.Y. Slip Op. 52667U, *16 (Cty. Ct. Westchester Cty. Dec. 31, 2009) (holding that defendant did not "clearly and convincingly establish to this court the defendant's actual innocence, particularly when examined in light of the People's evidence of his guilt"); cf. Bermudez, 2009 N.Y. Slip Op. 52302U, at *23 (finding that defendant, after hearing, demonstrated his actually innocence by clear and convincing evidence).

In this case, defendant's current papers fail to meet the high standard of establishing his actual innocence by clear and convincing evidence. Indeed, even were he merely required to prove his actual innocence by a preponderance of the evidence, the evidence he has provided in the form of Kyonte Walker's affidavit is insufficient to entitle him to relief.

"In considering whether a prisoner is entitled to relief on an actual innocence claim, a court should take all the evidence into account, giving due regard to its reliability." Herrera, 506 U.S. at 443 (Blackmun, J., dissenting), citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992) and Kuhlmann v. Wilson, 477 U.S. 436, 454 n.17 (1986). Therefore, in assessing the weight to accord defendant's allegations and Kyonte Walker's affidavit, this Court should consider defendant's lack of due diligence in pursuing his allegations of actual innocence and the lack of credulity in the claim. Furthermore, given the passage of more seven years since his arrest in February 2002 and conviction in May 2003, there is no merit to defendant's claim. See People v.

Nixon, 21 N.Y.2d 338, 352 (1967) (defendant's delay in bringing claim is revelatory of its lack of merit since defendants "have all to gain by reopening old convictions, retrial being so often an impossibility"). More importantly, defendant makes no effort whatsoever to explain why he has waited all these years to bring this motion. He clearly was aware of the alleged facts, but has never before raised the claim. See id. (seriousness of defendant's claim is questionable when defendant delayed raising the claim for more than ten years); People v. Melio, 304 A.D.2d 247, 252 (2d Dep't 2003).

Kyonte Walker's affidavit should be rejected for several reasons. In her affidavit, Kyonte Walker states that it was impossible for defendant to have committed the crimes because defendant had been with her and her mother and had never left their presence. Ms. Walker also states that both she and her mother had contacted defendant's attorney, Philip Sicks, who said that he would send an investigator to talk to them, but they were never interviewed and were unable to testify at defendant's pretrial hearing and trial. See Def.'s Exhibit D. However, the fact that Ms. Walker, defendant's current wife, would wait approximately seven years after defendant's conviction to come forward with this information makes her allegations entirely incredible. Indeed, Ms. Walker does not state that she, at any time in the last eight years, informed either the police or the People of defendant's alleged alibi. Rather, Ms. Walker claims that she informed only defense counsel and then simply waited to be interviewed. Notably, defendant's prison records show that

Ms. Walker visited defendant in jail at least four times after his arrest, up to the week before defendant's trial (see People's Exhibit 4). Thus, it strains credulity that, if the alibi allegations were true, Ms. Walker would allow defendant to stand trial and then remain in prison for years without making any other effort to testify in his favor or to come forward with the information.

Defendant's own allegation of the alleged alibi is also incredible for several reasons. First, defendant makes no allegation, nor is there any evidence, that defendant had informed either the police or his first attorney, John Stella, Esq., of his alleged alibi defense. No alibi notice was ever filed in defendant's case. Rather, defendant claims that he had informed his second attorney, Philip Sicks, who did not begin representing defendant until about eight months after defendant's arrest. Second, defendant was an active participant at his trial and at no time during the trial did defendant state on the record that he had an alibi defense. In fact, when the Court asked defendant whether he wanted to testify at trial, defendant acknowledged that he had discussed the issue with his attorney and that he had decided not to testify even though he could choose to testify despite counsel's advice not to do so (A-230-31).[7] Third, at sentencing, when defendant was allowed to make his own statement on the record, defendant made no mention of an

---

[7] Numbers in parentheses preceded by "A" refer to the pages of the Appendix submitted by appellate counsel on direct appeal. Names preceding the page numbers indicate the witnesses whose testimony is being cited.

alibi defense. Defendant argued only that there was reasonable doubt of his guilt because one of the victims had testified that he did not rob that victim (A-317-18). Finally, in his pre-sentence interview conducted shortly after trial, defendant made no mention of an alibi defense. Defendant stated only that he did not commit the crime and that he had been identified as the robber by one of the victims, but that the second victim had said that he was not the robber (A-303). Therefore, defendant's bare allegations of an alibi defense fail to unquestionably establish his actual innocence.

Defendant's actual innocence claim is also incredible in light of the overwhelming evidence of defendant's guilt presented by the People at trial. That the robberies occurred was of no issue at trial. Rather, the only issue was the identity of the robber. The evidence presented at trial overwhelmingly established defendant's identity as the robber, and thus, his guilt. Emmanuel Davis observed defendant hold a gun and throw Kendrick Bass's wallet to the ground (Davis: A-147-48, 161). Davis also testified that as he walked closer to defendant, defendant, still holding the gun, demanded that Davis give him money. Defendant stole Davis's money, chain, ring, and coat (Davis: A-150-52). The day after the robbery, defendant approached Davis, apologized, told him that he was having family problems, and returned the ring (Davis: A-155-56, 167). Davis recognized defendant from the neighborhood and saw defendant in the neighborhood on a number of occasions after that day, wearing the coat he had stolen (Davis: A-149, 156). Clearly, Davis had

ample opportunity to observe defendant, and therefore, the identity of defendant as the robber was well established.

In addition, Bass's attempt to recant his identification of defendant fell short. Bass's testimony regarding the robbery itself supported Davis's testimony. Furthermore, Detective Parsekian testified that Bass had informed him that the robber's nickname was "Pop," that the robber's first name was "Gus," and that the robber lived at 300 Stone Avenue (Parsekian: A-197-98). This information matched the defendant. Moreover, Bass testified that he had met defendant after the robbery and that defendant had apologized for "what had happened" to him, but that he had been "stressed out" (Bass: A-183-85). Although Bass refused, at trial, to construe defendant's statement as an admission of guilt, defendant's apology and excuse were almost verbatim to the apology and excuse that he issued to Mr. Davis. Thus, in light of the overwhelming evidence of defendant's guilt, defendant fails to unquestionably establish his actual innocence. See Days, 2009 N.Y. Slip Op. 52667U, at *16 (holding that defendant did not "clearly and convincingly establish to this court the defendant's actual innocence, particularly when examined in light of the People's evidence of his guilt").

In sum, defendant has failed to unquestionably establish his actual innocence by clear and convincing evidence. Accordingly, defendant is not entitled to relief on those grounds, pursuant Criminal Procedure Law section 440.10(1)(h), and his claim should be summarily denied. See C.P.L. § 440.30(4)(a) (court may deny

motion without conducting hearing if "moving papers do not allege any ground constituting legal basis for the motion").

## POINT II

### DEFENDANT'S REMAINING CLAIMS ARE LARGELY PROCEDURALLY BARRED. IN ANY EVENT, ALL OF THOSE CLAIMS ARE WITHOUT MERIT.

Defendant claims that he received ineffective assistance of counsel because defense counsel failed to: (1) conduct any investigation, (2) interview the victims and call them to testify at the pre-trial hearing; (3) introduce Bass's recantation letter at the pretrial hearing; (4) call any witnesses to testify on defendant's behalf at trial; (5) challenge certain jurors during jury selection; (6) present a medical and psychological expert at trial to challenge the mental health condition of Davis who, according to defendant, testified while under the influence of medication after suffering from a stroke; (7) effectively cross-examine the victims at trial; (8) vigorously object to the prosecutor's impeachment of Bass, who recanted at trial; (9) inform defendant about counsel's pending criminal case; and (10) filing vouchers for work not performed on defendant's case. Defendant further claims that the criminal charges allegedly pending against defense counsel during defendant's trial created a conflict of interest. Defendant also claims that, during the voir dire of prospective jurors, which occurred off the record, the trial court allegedly failed to conduct an adequate inquiry of certain chosen jurors who had allegedly claimed that it would be difficult for them to render an impartial verdict due to their negative experience as crime victims. Defendant further claims that the trial court improperly denied defendant's in limine

motion to relieve counsel. Defendant also claims that the prosecutor failed to investigate Bass's recantation and that the prosecutor elicited false testimony from Bass at trial.

As a threshold matter, defendant's general claim of ineffective assistance of counsel is subject to a mandatory procedural bar from collateral review because defendant raised, on direct appeal, a claim of ineffective assistance of counsel, and the Appellate Division found that claim to be meritless. People v. Bethea, 34 A.D.3d 489, 490 (2d Dep't 2006) ("The defendant was not denied his right to effective assistance of counsel"); see C.P.L. § 440.10(2)(a); People v. Shih Wei Su, 267 A.D.2d 260, 260-61 (2d Dep't 1999); People v. Purcell, 160 A.D.2d 899, 900 (2d Dep't 1990); People v. Brown, 2005 N.Y. Slip Op. 50319U, 800 N.Y.S.2d 352 (Sup. Ct. Kings Cty. 2005) (ineffective assistance of counsel claim in motion to vacate judgment must be denied to extent motion based on matters appearing on the record reviewed by Appellate Division on direct appeal).

Furthermore, defendant's specific claims of ineffective assistance of counsel are largely procedurally barred from review on a motion to vacate the judgment. In any event, all of the claims are meritless.

Defendant's claims that his trial counsel was ineffective for failing to: (1) call witnesses at the pre-trial hearing and trial; (2) introduce Bass's recantation letter at the pretrial hearing; (3) challenge certain jurors during jury selection; (4) present a medical and psychological expert at trial to challenge the mental capacity of Davis; (5) effectively cross-examine the victims at

trial; and (6) vigorously object to the prosecutor's impeachment of Bass (Def.'s Affidavit ¶¶ 6-11, 14, 21; Def.'s Argument at 6, 8-9, 26, 28-29), are all mandatorily procedurally barred from the Court's review because the claims are all predicated upon facts or omissions which are apparent from the record. Defendant could have raised the claims on direct appeal, but unjustifiably failed to do so. See C.P.L. § 440.10(2)(c); People v. Cuadrado, 9 N.Y.3d 362, 364-65 (2007) (Court of Appeals stresses importance of application of mandatory procedural bar even in case of alleged fundamental error); People v. Louree, 8 N.Y.3d 541, 546 (2007) (where "the omission at issue is clear from the face of the record" claim not properly raised in C.P.L. § 440 motion); People v. Cochrane, 27 A.D.3d 659, 660 (2d Dep't 2006) (ineffective assistance of counsel claim on a C.P.L. § 440.10 motion is procedurally barred when sufficient facts appear on the record to have permitted the defendant to have raised the claim on direct appeal, but he did not do so); People v. Gonzalez, 158 A.D.2d 615 (2d Dep't 1990) (motion to vacate judgment on ground of ineffective assistance of counsel was properly denied without a hearing, where many of underlying allegations of error by trial counsel were based on matters of record that could have been raised on direct appeal).

The Court should also decline to review defendant's claims that counsel was ineffective for failing to conduct any investigation and interview the victims (Def.'s Affidavit ¶¶ 6-10, 14, 21; Def.'s Argument at 6, 8, 22-23, 31-33). Facts in support of the claims could, with due diligence by defendant,

have readily been made to appear on the record in a manner providing adequate basis for review of the claims upon an appeal from the judgment, but defendant unjustifiably failed to adduce the matters prior to sentencing and the claims in question were not subsequently determined upon appeal. See C.P.L. § 440.10(3)(a). "[D]efendant could easily have brought these issues to the court's attention during the trial; he does not claim that he only learned of these deficiencies on counsel's part after sentence was imposed." Brown, 2005 N.Y. Slip Op. 50319U, at *2. Defendant also offers no explanation or justification for his failure to make the claims on the record. Therefore, these claims should be summarily denied. See C.P.L. § 440.10(3)(a); Brown, 2005 N.Y. Slip Op. 50319U, at *2 (rejecting claim that "counsel failed to conduct an adequate investigation prior to trial, or interview one of the People's witnesses, or review relevant police reports" on ground that "defendant could easily have brought these issues to the court's attention during the trial" but unjustifiably failed to do so).

In any event, all of defendant's claims are without merit because defendant received meaningful representation from his trial attorney, Philip Sick. To prevail on a claim of ineffective assistance of counsel under the State Constitution, a defendant must demonstrate that he or she was denied "meaningful representation." People v. Stultz, 2 N.Y.3d 277, 283 (2004); People v. Taylor, 1 N.Y.3d 174, 176 (2003). "The phrase 'meaningful representation' does not mean 'perfect representation.'" People v. Ford, 86 N.Y.2d 397, 404 (1995)

(citation omitted). "Isolated errors in counsel's representation generally will not rise to the level of ineffectiveness . . . ." People v. Rose, 307 A.D.2d 270, 271 (2d Dep't 2003); see Yarborough v. Gentry, 540 U.S. 1, 8 (2003). Nor does simple disagreement with counsel's strategies and tactics establish ineffectiveness without proof of less than meaningful representation. People v. Rivera, 71 N.Y.2d 705, 708 (1988), (citing People v. Benn, 68 N.Y.2d 941 [1986]). "[T]rial tactics which terminate unsuccessfully do not automatically indicate ineffectiveness." People v. Baldi, 54 N.Y.2d 137, 146 (1988). "[T]o establish ineffective assistance, a defendant must 'demonstrate the absence of strategic or other legitimate explanations' for counsel's allegedly deficient conduct." People v. Caban, 5 N.Y.3d 143, 152 (2005); see also Rivera, 71 N.Y.2d at 709; People v. Williams, 24 A.D.3d 575 (2d Dep't 2005).

Under the Federal Constitution, a defendant must establish that counsel's conduct fell outside the "wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. at 690. This is a difficult burden to meet because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. In addition, the defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

In New York, when assessing whether a defendant has been deprived of meaningful representation, a court should consider

whether the defense attorney's alleged errors prejudiced the defendant. See Stultz, 2 N.Y.3d at 284 (a showing of prejudice is a significant element in assessing meaningful representation). Reviewing courts should be "skeptical of an ineffective assistance of counsel claim absent any showing of prejudice." Id. at 283-84; see People v. Benevento, 91 N.Y.2d 708, 713-14 (1998); People v. Maldonado, 278 A.D.2d 513, 514 (2d Dep't 2000).

Under both the state and federal standards, reviewing courts "must avoid confusing 'true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis.'" Benevento, 91 N.Y.2d at 712 (citation omitted); see Strickland, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686.

Here, defendant is utterly unable to meet these demanding standards. A review of the record reflects that trial counsel was more than adequately prepared and possessed an in-depth familiarity with the facts of defendant's case. Defendant's trial counsel made appropriate pre-trial motions, adequately cross-examined witnesses at trial, and made appropriate objections and motions. Defense counsel maintained a theme of

the misidentification of defendant throughout the trial. Counsel questioned Davis's ability to recall the facts of the robbery and suggested that Davis had failed to cooperate with the police and prosecutor because his "story" that defendant committed the robberies was not true (A-165-68). Counsel also elicited testimony from Bass that he had incorrectly identified defendant as the robber and counsel admitted Bass's recantation letter into evidence as a defense exhibit (A-191-93). Trial counsel questioned the fairness of the lineup procedure and attempted to impeach Detective Paul Parsekian's credibility by raising the issue of a civilian complaint filed by defendant's mother against the detective and the subsequent Internal Affairs' investigation (A-213-15).

Counsel's summation was detailed and highlighted the possible problems within the People's case regarding each of the witnesses. At sentencing, trial counsel requested a lenient sentence and reminded the court that one of the victims had recanted his identification of defendant, that defendant had strong support from his family, and that the family would help defendant become a productive member of society upon his release from prison (A-317). Through these actions, counsel provided defendant with meaningful representation. See People v. Charles, 309 A.D.2d 873, 873 (2d Dep't 2003) (defendant received meaningful representation where counsel "presented a reasonable defense, interposed appropriate objections, effectively cross-examined witnesses, and delivered a cogent summation"); see also People v. Gillespie, 36 A.D.3d 626, 627 (2d Dep't 2007)

("[h]indsight does not elevate counsel's unsuccessful trial strategies into ineffective assistance of counsel").

Defendant's claims that counsel was ineffective for failing to conduct any investigation, interview the victims, effectively cross-examine the victims at trial, and call any witnesses to testify on defendant's behalf at trial are all unsubstantiated because defendant does not state what evidence counsel failed to uncover that would have been favorable to the defense. Furthermore, other than the alleged alibi witnesses, defendant does not identify any witnesses whom counsel improperly failed to call. Thus, defendant's fails to establish that he received ineffective assistance on these grounds. Accordingly, the claims provide no basis for relief. See C.P.L. § 440.30(4)(a), (b), (d); People v. Session, 34 N.Y.2d 254, 256 (1974) ("it is not enough to make conclusory allegations of ultimate facts; supporting evidentiary facts must be provided"); People v. Wells, 265 A.D.2d 589 (2d Dep't 1999) (motion to vacate judgment properly denied without a hearing because defendant failed to submit sworn allegations substantiating or tending to substantiate all essential facts necessary to support his claim); Purcell, 160 A.D.2d at 900 (motion to vacate judgment premised on ineffective assistance of counsel claims properly denied where claims were unsubstantiated by sworn allegations).

Defendant's claims that defense counsel was ineffective for failing to call the victims to testify at the pre-trial hearing and for failing to introduce Bass's recantation letter at the pretrial hearing (Def.'s Affidavit ¶¶ 6-11, 14, 21; Def.'s

Argument at 6, 22-23), are also meritless. A defendant has no absolute right to examine complainants at a pretrial Wade hearing. People v. Chipp, 75 N.Y.2d 327, 337-38 (1990); People v. Harvall, 196 A.D.2d 553, 553 (2d Dep't 1993). A complainant's pretrial testimony is required only when the hearing evidence raises "substantial" fact issues as to the constitutionality of the identification procedure. Chipp, 75 N.Y.2d at 338. Furthermore, "it is the defendant who [bears] the ultimate burden of proving that the procedure was unduly suggestive." Id. at 335. Here, defendant neither alleges nor establishes that the testimony of the victims was required at the hearing. Defendant complains only that counsel should have called to victims to testify because they might have exonerated defendant (Def.'s Affidavit ¶¶ 6-10; Def.'s Argument at 6, 22). Furthermore, defendant incorrectly contends that Davis had failed to identify defendant at a lineup (Def.'s Affidavit ¶¶ 19, 21). Rather, Davis did not view a lineup with respect to defendant; only one lineup procedure was conducted with Bass (Parsekia: A-199-204). Therefore, counsel was not ineffective for failing to call the victims to testify at the pre-trial hearing. See C.P.L. § 440.30(4)(a); See Caban, 5 N.Y.3d at 152 ("[t]here can be no denial of effective assistance of trial counsel arising from counsel's failure to 'make a motion or argument that has little or no chance of success'") (quoting People v. Stultz, 2 N.Y.3d 277, 287 [2004]).

Defense's claim that defense counsel failed to effectively impeach Davis on several grounds (Def.'s Affidavit ¶ 21; Def.'s

Argument at 28-29, 31-32), is meritless. Defendant contends that defense counsel failed to effectively impeach Davis with his prior inconsistent statements. However, defendant does not state what prior inconsistent statements counsel failed to elicit. Thus, defendant's claim is unsubstantiated, made solely by him, and is not supported by any other affidavit or evidence. See C.P.L. § 440.30(4)(b), (d); Session, 34 N.Y.2d at 256("it is not enough to make conclusory allegations of ultimate facts; supporting evidentiary facts must be provided"); Wells, 265 A.D.2d 589; Purcell, 160 A.D.2d at 900. Also, defendant's claim that counsel failed to effectively impeach Davis concerning his reluctance to cooperate with the police and the prosecutor is unsubstantiated and conclusively refuted and contradicted by the trial record. Both the prosecutor and defense counsel elicited testimony from Davis concerning his reluctance to cooperate with the police and the prosecutor (see Davis: A-157, 168-69). Furthermore, defendant does not state what evidence counsel failed to elicit from Davis regarding his reluctance to cooperate. Therefore, the claim should be rejected. See C.P.L. § 440.30(4)(b), (c), (d).

Defendant claims that defense counsel failed to present any "medical and psychological expert" witness to challenge Davis's mental capacity Davis who defendant alleges suffered a crack-cocaine induced stroke and was brought to the courtroom, directly from the hospital, while under the influence of "psychotropic medication and severe psychological damage" (Def.'s Affidavit ¶ 19, 21; Def.'s Argument at 9, 28-29, 31-32). To support his

claims that Davis suffered a crack-cocaine induced stroke and was brought to the courtroom, directly from the hospital, defendant attaches to his motion an affidavit purportedly written by Private Investigator Kevin Hinkson based on his interview of Princess Donaldson, Davis's sister-in-law (Def.'s Exhibit E). Ms. Donaldson purportedly told Investigator Hinkson that Davis had suffered a stroke that she "suspected" was induced by his abuse of crack cocaine and that Davis had been taken from the hospital to Court, to testify against defendant (Def.'s Exhibit E). The allegation by defendant and Ms. Donaldson that Davis had been transported from the hospital directly to Court to testify against defendant is refuted by is conclusively refuted by unquestionable documentary proof. See C.P.L. § 440.30(4)(c). On April 17, 2003, the People obtained a material witness order for Davis from the Court (see People's Exhibit 2, Material Witness Order for Emmanuel Davis). On April 18, 2003, the People made a Field Investigation Request for a detective investigator to execute the material witness order on Davis. The request stated that Davis, who did not have a criminal record, was staying at his girlfriend's house and that he had just been released from the hospital (see People's Exhibit 3, Field Investigation Request). Thus, the Field Investigation Request refutes defendant's claim that Davis was brought from the hospital to Court.

Furthermore, defendant's allegation that Davis testified while under the influence of "psychotropic medication and severe psychological damage" is "made solely by the defendant and is

unsupported by any other affidavit or evidence, and [] under these and all the other circumstances attending the case, there is no reasonable possibility that such allegation is true." C.P.L. § 440.30(4)(d). There is no evidence in the record, nor does defendant now state any evidence, other than his own self-serving speculative allegations, that Davis testified under the influence of illegal or prescription drugs. Thus, trial counsel was not ineffective for failing to challenge Davis's medical and psychological condition. See People v. Smiley, 886 N.Y.S.2d 893 (2d Dep't 2009) (summary denial of 440 motion warranted where defendant's self-serving allegations unsupported by other affidavit or evidence and under circumstances of case no reasonable possibility that they are true); People v. Pachay, 185 A.D.2d 287 (2d Dep't 1992) (same).

Moreover, "[a]s a general rule, the admissibility and limits of expert testimony lie primarily in the sound discretion of the trial court." People v. Lee, 96 N.Y.2d 157, 162 (2001). "Essentially, the trial court assesses whether the proffered expert testimony 'would aid a lay jury in reaching a verdict'." Id. (quoting People v. Taylor, 75 N.Y.2d 277, 288 [1990]). Here, there is no reason to believe that the trial court would have allowed defense counsel to present expert testimony on a baseless claim that Davis suffered from severe psychological damage. Indeed, defendant does not allege that expert testimony was necessary to aid the jury in reaching a verdict, nor would any such claim be successful. Therefore, counsel was not ineffective for failing to call a "medical and psychological expert" witness

to challenge Davis's mental capacity. See People v. Meslin, 201 A.D.2d 744 (2d Dep't 1994) ("defense counsel cannot be deemed ineffective for failing to make a meritless motion").

Defendant's claim that defense counsel was ineffective for failing to effectively cross-examine Bass (Def.'s Argument at 8), is unsubstantiated, made solely by him, contradicted by the trial record, and is not supported by any other affidavit or evidence. See C.P.L. § 440.30(4)(b), (d); Session, 34 N.Y.2d at 256("it is not enough to make conclusory allegations of ultimate facts; supporting evidentiary facts must be provided"); Wells, 265 A.D.2d 589; Purcell, 160 A.D.2d at 900. The record demonstrates that counsel attempted to establish that Bass was incorrect in his initial identification of defendant and counsel admitted into evidence Bass's recantation letter (A-190-93). Defendant does not suggest any additional line of questioning or comment that should have been explored. Nor does defendant speculate that a more vigorous cross-examination would have produced any other testimony or evidence that would have resulted in an acquittal. Therefore, defendant's claim should be rejected.

Defendant also claims that the prosecutor's impeachment of Bass was improper and that although defense counsel had objected to the impeachment, counsel was ineffective for failing to "launch a vicious attack" against the impeachment (Def.'s Argument at 33-34). As a preliminary matter, both of these claims are based on matters apparent from the record, and are therefore mandatorily procedurally barred from the Court's review because defendant could have raised the claims on direct appeal,

but unjustifiably failed to do so. See C.P.L. § 440.10(2)(c); Cuadrado, 9 N.Y.3d at 364-65; Louree, 8 N.Y.3d at 546; Cochrane, 27 A.D.3d at 660; Gonzalez, 158 A.D.2d at 615. Furthermore, defendant's claim that the prosecutor's impeachment of Bass was improper should not be reviewed because it was raised in defendant's prior motion for a writ of error coram nobis in the Appellate Division (see, supra, Affirmation in Opposition to Motion to Vacate Judgment ¶ 10). In his motion for a writ of error coram nobis, defendant claimed that his appellate counsel was ineffective for failing to argue that the People were erroneously allowed to impeach Bass. The Appellate Division found that defendant had not been denied the affective assistance of appellate counsel. People v. Bethea, 54 A.D.3d 420 (2d Dep't 2008). In order for the Appellate Division to find that counsel was not ineffective for failing to raise the claim that the prosecutor's impeachment of Bass was improper, the Appellate Division likely determined the claim on the merits. Therefore, this Court should decline to review the claim. See C.P.L. § 440.10(3)(b) (court may deny motion to vacate judgment when "the ground or issue raised upon the motion was previously determined on the merits upon a prior motion or proceeding in a court of this state, other than an appeal from the judgment, or upon a motion or proceeding in a federal court").[8]

---

[8] Defendant's claim that the prosecutor failed to investigate Bass's recantation (Def.'s Argument at 7), should also be rejected because the claim was raised in defendant's previous motion for a writ of error coram nobis (see, supra, Affirmation in Opposition to Motion to Vacate Judgment ¶ 10). See C.P.L. § 440.10(3)(b). Furthermore, the claim is meritless because Bass

In any event, defendant's claims are meritless. Pursuant to C.P.L. § 60.35(1), "[w]hen, upon examination by the party who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove the position of such party, such party may introduce evidence that such witness has previously made either a written statement signed by him or an oral statement under oath contradictory to such testimony." A material issue in this case was defendant's identity as the robber. Thus, Bass's testimony at trial -- that defendant was not the person whom he had picked out of a lineup (Bass: A-174-75) -- clearly tended to disprove the position of the People. Therefore, the People were properly allowed to introduce the limited portion of Bass's Grand Jury testimony that he had identified defendant in a lineup as the person who had robbed him (Bass: A-176-78). See People v. Hislop, 303 A.D.2d 334, 335 (1st Dep't 2003); People v. Busiello, 234 A.D.2d 557 (2d Dep't 1996); People v. Huber, 144 A.D.2d 583, 584 (2d Dep't 1988). Accordingly, because the prosecutor's impeachment of Bass was proper, counsel was not ineffective for failing to "launch a vicious attack" on the impeachment. People v. Lane, 60 N.Y.2d 748, 753 (1983) (counsel not required to make objection, which would have been futile).

---

testified that he never called the prosecutor or the police to report seeing the "other man" and he did not talk to the prosecutor about the recantation letter until after he had been subpoenaed (Bass: A-186-89).

Defendant claims that the prosecutor elicited false testimony from Bass at trial, that August 5, 2002, was the first date that the case was called for trial, because the first date of trial was April 15, 2003 (Def.'s Argument at 7). Defendant also claims that counsel was ineffective for failing to object to that testimony (Def.'s Argument at 7). As a preliminary matter, both of these claims are based on matters apparent from the record, and are therefore mandatorily procedurally barred from the Court's review because defendant could have raised the claims on direct appeal, but unjustifiably failed to do so. See C.P.L. § 440.10(2)(c); Cuadrado, 9 N.Y.3d at 364-65; Louree, 8 N.Y.3d at 546; Cochrane, 27 A.D.3d at 660; Gonzalez, 158 A.D.2d at 615. In any event, the record of the Court conclusively refutes and contradicts defendant's claim that the prosecutor elicited false testimony from Bass is. Although the trial did not begin until April 15, 2003, the prosecutor did correctly elicited from Bass that the first date that the case was called for trial was August 5, 2002, the same date on Bass's recantation letter (Bass: A-193). See People's Exhibit 5, Court Action sheet in file of Supreme Court, Kings County (indicating on May 30, 2002, case adjourned on consent to August 5, 2002, for hearing and trial). Thus, defendant's claim should be rejected. See C.P.L. § 440.30(4)(c), (d). Accordingly, because the prosecutor did not elicit false testimony from Bass, defense counsel was not ineffective for failing to object to Bass's testimony. See Lane, 60 N.Y.2d at 753 (counsel not required to make objection, which would have been futile).

Defendant's claims that the trial court erroneously denied his motion to relieve counsel (Def.'s Affidavit ¶ 43; Def.'s Argument at 16), is mandatorily procedurally barred from review because the claims are based on facts appearing in the record (see A-66), and defendant could have raised the claims on direct appeal, but unjustifiably failed to do so. See C.P.L. § 440.10(2)(c). Furthermore, defendant's claim that the prosecutor's impeachment of Bass was improper should not be reviewed because it was raised in defendant's prior motion for a writ of error coram nobis in the Appellate Division (see, supra, Affirmation in Opposition to Motion to Vacate Judgment ¶ 10). In his motion for a writ of error coram nobis, defendant claimed that his appellate counsel was ineffective for failing to argue that the trial court erroneously denied his motion to relieve counsel. The Appellate Division found that defendant had not been denied the affective assistance of appellate counsel. Bethea, 54 A.D.3d at 420. In order for the Appellate Division to find that counsel was not ineffective for failing to raise the claim, the Appellate Division likely determined the claim on the merits. Therefore, this Court should decline to review the claim. See C.P.L. § 440.10(3)(b).

In any event, defendant's claim is meritless. At trial, just before jury selection, defendant requested "at least" a three-week adjournment in order to retain private counsel (A-66). The court denied the motion (A-66). The court properly denied the motion because "the constitutional right to defend by counsel of one's own choosing does not bestow upon a criminal defendant

the absolute right to demand that his trial be delayed while he selects another attorney to represent him at trial." People v. Arroyave, 49 N.Y.2d 264, 271 (1980). Furthermore, "[w]hether a continuance should be granted is largely within the discretion of the [t]rial [j]udge and the question whether a defendant has been denied his right to retain counsel of his own choosing can only be answered by examining the particular facts of each case." Id. (internal citations omitted). In this case, defendant had ample opportunity to retain counsel of his choice during the fourteen months between his indictment and the time of trial, which included a four-month delay after the suppression hearing and before the commencement of trial (A-16, 59). Nevertheless, defendant chose to wait until the day of the trial, just before jury selection, to request "at least" a three-week adjournment in order to retain private counsel (A-66). With respect to requests for adjournments made on the eve of or during trial, "it is incumbent upon the defendant to demonstrate that the requested adjournment has been necessitated by forces beyond his control and is not simply a dilatory tactic." Arroyave, 49 N.Y.2d at 270-271. Here, defendant did not articulate any reason why the adjournment was necessary and he did not identify any aspect of his counsel's representation with which he was dissatisfied. Therefore, the court properly denied defendant's request for an adjournment. See People v. Goodwine, 46 A.D.3d 702, 702 (2d Dep't 2007); People v. Persad, 306 A.D.2d 359, 359 (2d Dep't 2003); People v. Davis, 299 A.D.2d 420, 421 (2d Dep't 2002).

Furthermore, defendant's claims that the trial court allegedly failed to conduct an adequate inquiry of certain chosen jurors who had allegedly claimed, off-the-record, that it would be difficult for them to render an impartial verdict due to their negative experience as crime victims (Def.'s Affidavit ¶¶ 17-18; Def.'s Argument at 24-26). The Court should decline to review this claim because facts in support of the claim could, with due diligence by defendant, have readily been made to appear on the record in a manner providing adequate basis for review of the claims upon an appeal from the judgment, but defendant unjustifiably failed to adduce the matters prior to sentencing and the claim in question was not subsequently determined upon appeal. See C.P.L. § 440.10(3)(a). Defendant was present during the voir dire of the prospective jurors and defendant did not waive his Antommarchi right to be present at bench conferences with prospective jurors (A-63). Therefore, if, as defendant alleges, the court failed to conduct an adequate inquiry of certain jurors off-the-record, defendant would have known about such a failure and he could, with due diligence, have brought that fact to the court's attention and made the fact appear on the record. Indeed, defendant does not claim that he only learned of the deficiency after sentence was imposed and he offers no explanation or justification for his failure to alert the court to the alleged error. See Brown, 2005 N.Y. Slip Op. 50319U, at *2. Thus, the claim should be rejected on this procedural ground. See C.P.L. § 440.10(3)(a).

In any event, the claim is meritless. "[A] presumption of regularity attaches to all judicial proceedings, and the defendant bears the burden of rebutting that presumption". People v. Mack, 293 A.D.2d 762, 762 (2d Dep't 2002); see People v. Marcano, 199 A.D.2d 86 (1st Dep't 1993). The law "presumes that no official or person acting under an oath of office will do anything contrary to his official duty, or omit anything which his official duty requires to be done." People v. Dominique, 90 N.Y.2d 880 (1997); People v. Richetti, 302 N.Y. 290, 298 (1951). Moreover, the presumption of regularity can be overcome only by substantial evidence. Dominique, 90 N.Y.2d at 880; Richetti, 302 N.Y. at 298. Absent any evidence to rebut the presumption of regularity, a defendant's claim cannot be sustained. People v. Keyes, 291 A.D.2d 571 (2d Dep't 2002).

Here, defendant claims that the trial court allegedly failed to conduct an adequate inquiry of certain chosen jurors who had allegedly claimed that it would be difficult for them to render an impartial verdict due to their negative experience as crime victims. However, "[w]here an issue is raised concerning the ability of a prospective juror to be fair and impartial, the prospective juror must state unequivocally that his or her prior state of mind will not influence his or her verdict, and that he or she will render an impartial verdict based solely on the evidence." People v. Rose, 901 N.Y.S.2d 375 (2d Dep't 2010). The trial court is presumed to have followed this rule and defendant fails to present any evidence, other than his own self-serving allegations, to rebut that presumption. Furthermore, the

record supports a contrary conclusion. At many points during voir dire, the court questioned the prospective jurors about whether their prior experiences with law enforcement would affect their ability to be fair (A-83-85, 102-08, 114-15). Thus, defendant's claim should be rejected as it is unsubstantiated, made solely by him, and there is no reasonable possibility that the allegation is true. See C.P.L. § 440.30(4)(b) (d). Accordingly, because defendant fails to substantiate his claim that the jurors did not adequately state that they could be impartial, defendant's claim that defense counsel failed to challenge the jurors (Def.'s Affidavit ¶ 18; Def.'s Argument at 25-26), is meritless. See Caban, 5 N.Y.3d at 152 ("[t]here can be no denial of effective assistance of trial counsel arising from counsel's failure to make a motion or argument that has little or no chance of success") (internal quotation marks and citation omitted).

Defendant contends that his trial attorney, Philip Sicks entered a "guilty plea" on April 9, 2003, and that therefore Mr. Sicks should have been relieved as defendant's counsel at that time (Def.'s Affidavit ¶¶ 38-39, 46-47, 52-53; Def.'s Argument at 16). However, Mr. Sicks did not plead guilty in his case until July 13, 2004, more than one year after defendant's conviction. Therefore, defendant's claim is conclusively refuted and contradicted by the minutes of Mr. Sick's plea allocution. See C.P.L. § 440.30(4)(c), (d). Defendant also claims that Mr. Sicks filed false vouchers for work he did not perform on defendant's case (Def.'s Affidavit ¶¶ 44-46; Def.'s Argument at 12-13, 27),

that the trial judge and prosecutor knew about criminal charges pending against Mr. Sicks (Def.'s Affidavit ¶¶ 40-42; Def.'s Argument at 16), and that defense ensured defendant's conviction so that counsel could get his own favorable plea bargain (Def.'s Affidavit ¶ 53; Def.'s Argument at 14, 17, 27). However, defendant provides absolutely no support for these allegations, which are made solely by him, and there is no reasonable possibility that the allegations are true. See C.P.L. § 440.30(4)(b) (d).

Defendant further claims that he was denied the effective assistance of counsel because he was prejudiced by the lack of notice concerning the possibility of criminal charges being filed against counsel, in that he was denied the opportunity to move for reassignment of counsel on that ground (Def.'s Affidavit ¶¶ 28-31, 33-34, 38-39; Def.'s Argument at 16). Defendant's claim is unsubstantiated because defendant fails to show that he was denied meaningful representation. Furthermore, defendant does not state any substantive allegations of how he was prejudiced. Indeed, defendant does not allege, that but for the lack of notice, defendant would have been acquitted at trial, nor would any such claim be successful. Therefore, defendant's unsubstantiated claim should be rejected. See C.P.L. § 440.30(4)(b).

Finally, defendant claims that the pending criminal case against defense counsel created a conflict of interest between counsel and defendant (Def.'s Affidavit ¶¶ 32, 34, 45; Def.'s Argument at 13). This claim should be rejected as it is

unsubstantiated, made solely by defendant, and there is no reasonable possibility that the allegation is true. See C.P.L. § 440.30(4)(b) (d). Furthermore, defendant's claim is meritless. Under the United States and New York Constitutions, a defendant's right to counsel encompasses a right to conflict-free counsel. U.S. Const. amends. VI, XIV; N.Y. Const. Art. I, § 6; see Wood v. Georgia, 450 U.S. 261, 271 (1981); People v. Ortiz, 76 N.Y.2d 652, 655-56 (1990); People v. McDonald, 68 N.Y.2d 1, 8 (1986). Under the New York Constitution, a defendant's right to conflict-free counsel is violated when a defendant demonstrates that there was a significant possibility that a conflict of interest existed, and also demonstrates that the potential conflict affected, operated upon, or bore a substantial relationship to the conduct of the defense. People v. Ortiz, 76 N.Y.2d at 655-57; People v. Recupero, 73 N.Y.2d 877, 879 (1988). Here, defendant has neither demonstrated a significant possibility that a conflict of interest existed, nor that the potential conflict affected, operated upon, or bore a substantial relationship to the conduct of the defense. Therefore, defendant's claim should be rejected. See People v. Hall, 28 A.D.3d 678, 679 (2d Dep't 2006) ("defendant only speculated that his prior counsel's conflict of interest affected his defense, which is insufficient to establish ineffective assistance of counsel on this ground").

For the above reasons, defendant's motion with respect to the above claims should be denied without a hearing. Moreover, the People dispute all of defendant's claims of ineffective assistance of counsel and claims of error committed by the trial

court and prosecutor. Defendant's allegations with respect to these issues concern either confidential communications between defendant and his attorney or off-the-record matters for which the People have no specific information. Therefore, if the Court considered the truth of defendant's allegations to be an issue that is material to the determination of defendant's motion (and if the court did not reject that allegations without a hearing, pursuant to C.P.L. § 440.30[4]), then defendant should be required to prove those allegations at a hearing by a preponderance of the evidence. See C.P.L. § 440.30(3), (5) (if allegation of fact essential to support motion to vacate judgment is in dispute, then court must conduct hearing); C.P.L. § 440.30(6) (at hearing, defendant has burden of proof by preponderance of the evidence); People v. Gruden, 42 N.Y.2d 214, 217-18 (1977) (when facts alleged by defendant in support of motion to dismiss are "solely within the knowledge or possession of the defendant," prosecutor may dispute defendant's allegations by "simply ask[ing] the court to put the defendant to his proof").

## POINT III

THE COURT SHOULD CONDUCT A HEARING FOR DEFENDANT TO PROVE HIS ALLEGATION THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN THAT COUNSEL ALLEGEDLY FAILED TO INVESTIGATE AND PROFFER AN ALIBI DEFENSE.

Defendant claims that defense counsel, Philip Sicks, was ineffective for failing to investigate and proffer an alibi defense and, more specifically, for counsel's failure to interview Kyonte Walker and Angienette Walker and present them as alibi witnesses at the pretrial hearing and trial (Def.'s Affidavit ¶¶ 13-14, 21, 23; Def.'s Argument at 3-6). Defendant attaches to his motion papers, an affidavit purportedly written by Kyonte Walker, his current wife, stating that defendant had been with her and her now deceased mother, Angienette Walker, at the time of the robberies, and that she had contacted defense counsel who had allegedly stated that he would send an investigator to interview them, but counsel failed to do so (see Def.'s Exhibit D).

The People dispute defendant's allegations that defense counsel rendered ineffective assistance due to counsel's failure to investigate and proffer defendant's alleged alibi defense at the pretrial hearing and trial. Therefore, defendant should be required to prove those allegations at a hearing by a preponderance of the evidence. See C.P.L. § 440.30(3), (5) (if allegation of fact essential to support motion to vacate judgment is in dispute, then court must conduct hearing); C.P.L. § 440.30(6) (at hearing, defendant has burden of proof by

preponderance of the evidence); see also Gruden, 42 N.Y.2d at, 217-18 (when facts alleged by defendant in support of motion to dismiss are "solely within the knowledge or possession of the defendant," prosecutor may dispute defendant's allegations by "simply ask[ing] the court to put the defendant to his proof").

## CONCLUSION

FOR THE AFORMENTIONED REASONS, THE COURT SHOULD CONDUCT A HEARING WITH RESPECT TO DEFENDANT'S CLAIM THAT DEFENSE COUNSEL FAILED TO INVESTIGATE AND PROFFER DEFENDANT'S ALLEGED ALIBI DEFENSE, AND THE COURT SHOULD SUMMARILY DENY DEFENDANT'S REMAINING CLAIMS.

Dated: Brooklyn, New York
July 2, 2010

Respectfully submitted,

CHARLES J. HYNES
District Attorney
Kings County

LEONARD JOBLOVE
JODI L. MANDEL
TERRY-ANN LLEWELLYN
Assistant District Attorneys
of Counsel

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GUS BETHEA,

Petitioner,

-against-

JAMES WALSH, Superintendent of Sullivan Correctional Facility,

Respondent.

EXHIBITS TO SUPPLEMENTAL AFFIDAVIT IN OPPOSITION TO PETITION FOR A WRIT OF HABEAS CORPUS

CV 09-5037 (NGG)

EXHIBIT K

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS : CRIMINAL TERM, PART 9

THE PEOPLE OF THE STATE OF NEW YORK,

-against-

GUS BETHEA,

10 JUL 22 AM 1:57

Defendant.

DEFENDANT'S OPPOSITION TO PEOPLE'S AFFIRMATION IN OPPOSITION TO MOTION TO VACATE JUDGMENT

Kings County
Indictment No. 1237/02

GUS BETHEA, defendant herein, hereby submit a defendant's opposition to People's affirmation in opposition to motion to vacate judgment, dated July 2, 2010, as follows:

1. Defendant vehemently takes STANDING OBJECTION to the <LEGAL CHICANERY> concocted by the People solely designed with the [u]lterior motive to manipulate and undermine the Court and severely prejudice the defendant with fraudulent misrepresentation.

2. Defendant consents to an evidentiary hearing. However, defendant objects to the hearing being limited to his alibi defense. Due to the fact that defendant's motion to vacate judgment presents numerous issues of factual dispute germane to the overwhelming evidence of the gross ineffectiveness of trial counsel, defendant respectfully requests the Court to grant a full and fair evidentiary hearing whereby the defendant may cross-examine Sicks with respect to his criminal conduct of stealing over $150,000 from the Assigned Counsel Plan and submitting [FALSE] vouchers relevant to defendant's case of work that he never performed, his "GUILTY PLEA" to criminal conduct

at the disciplinary hearing conducted by the Assigned Counsel Plan and Advisory Committee for the Second Judicial Department on April 9, 2003 before the trial date was set, and Sicks complete failure to conduct any investigation of all the facts and circumstances of the case.

3. Defendant adamantly asserts his claim of <ACTUAL INNOCENCE> that at the time of the robberies on October 31, 2001, he had been with his girlfriend, Kyonte Walker, and her mother, Angienette Walker, at their apartment at 777 Franklin Avenue from 3:00 p.m. to 11:30 p.m., watching Halloween movies and preparing candy for Halloween treats, and therefore it was |IMPOSSIBLE| for him to have committed the robberies in front of 60 Glenmore Avenue at approximately 4:00 p.m., pursuant to CPL § 440.10(1)(h).

4. In People v. Wheeler-Whichard, 884 N.Y.S.2d 304 (Sup.Ct. Kings Co. July 30, 2009), the Kings County Supreme Court did permit a claim of actual innocence pursuant to CPL § 440.10(1)(h), based upon defense counsel's failure to investigate defendant's alibi defense constituted ineffective assistance of counsel and denial of a fair trial, and the indictment was **DISMISSED WITH PREJUDICE.**

5. Defendant's case stands on all four squares as the Wheeler-Whichard case, which necessitates that Kings County Indictment Number 1237/02 hereby be DISMISSED WITH PREJUDICE as a matter of law: <STARE DECISIS> in accordance with the Court's ruling in People v. Wheeler-Whichard, supra.

6. In People v. Bermudez, 25 Misc.3d 1226A, 2009 N.Y. Slip Op. 52302U, *23 (Sup.Ct. N.Y. Cty. Nov. 9, 2009)(*State Constitution provides a state prisoner alleging actual innocence with greater protection than the federal constitution, by enabling a freestanding claim of actual innocence to be raised by post-conviction motion"). In the case at bar, the defendant is <COMPLETELY INNOCENT> of any involvement in the October 31, 2001 robberies in front of 60 Glenmore Avenue at approximately 4:00 p.m., and thus, the continued incarceration of an "INNOCENT" man constitutes CRUEL & UNUSUAL PUNISHMENT in blatant violation of the Eighth Amendment to the Constitution of the United States and New York State Constitution.

7. Pursuant to CPL Article 440, in general, a defendant can prevail on a motion to vacate judgment by proving the facts essential to his claim by a preponderance of the evidence. In this case, defendant's moving papers have unequivocally presented a preponderance of the evidence in support of his claim of actual innocence and alibi defense which was never investigated or presented at trial by trial counsel. Defendant has submitted a sworn affidavit in support of his alibi defense from one of his alibi witnesses, Kyonte Walker. The People's Opposition is wholly without merit and completely devoid of any documentary evidence which refutes defendant's alibi defense.

8. Defense counsel was grossly ineffective for his failure to investigate defendant's alibi defense, interview alibi witnesses and call alibi witnesses to trial. Had Sicks called the alibi witnesses to trial to give credible testimony that at the time of the crime defendant was with them at their apartment

and he never left their apartment between the hours of 3:00 p.m. and 11:30 p.m., it is a great probability that their credible testimony would have raised a reasonable doubt in the minds of the jurors, and thereby, resulted in an <ACQUITTAL> for the defendant. But for the deficient performance of Sicks, defendant who has consistently maintained his <COMPLETE INNOCENCE> for the past several years of his wrongful conviction, an "INNOCENT" man has been subjected to CRUEL & UNUSUAL PUNISHMENT for a crime he did NOT commit! Such a travesty of justice is ATROCIOUS! The sole remedy to rectify this grave miscarriage of justice is to DISMISS THE INDICTMENT WITH PREJUDICE!

9. Defendant has unquestionably established his claim of actual innocence and is entitled to relief, pursuant to CPL § 440.10(1)(h) and Indictment #1237/02 must be DISMISSED WITH PREJUDICE.

10. Contrary to the People's claim that defendant's general claim of ineffective assistance of counsel is subject to a mandatory procedural bar from collateral review because defendant raised, on direct appeal, a claim of ineffective assistance of counsel is without merit, because the issues with respect to defendant's claim of ineffective assistance of counsel in his motion to vacate judgment is completely different than the issues raised on his direct appeal, and therefore, appropriate for collateral review. See Federal Court Order, dated June 1, 2010.

11. Defendant fervently contends that Sicks was despicable <CRIMINAL> who filed false vouchers for work he did not perform on defendant's case, which is substantiated by the false vouchers Sicks filed with the Assigned Counsel Plan, and constituted a PER

SE VIOLATION of the Sixth Amendment's right to the effective assistance assistance of counsel, pursuant to CPL § 440.10(1)(h), and mandates relief to vacate the judgment. Defendant need not prove that the conflict adversely affected Sicks's performance as erroneously claimed by the People. See, **United States v. Fulton**, 5 F.3d 605 (2nd Cir. 1993)("[T]he per se rule applies when the attorney's alleged criminal activity is sufficiently related to the charged crimes"). The Assigned Counsel Plan has in its possession the false vouchers that Sicks filed for work he did not perform on defendant's case as well as the hundreds of indigent clients he was assigned to represent between January 2000 and January 2003.

12. Defendant respectfully requests the Court to grant permission for him to call as a defense witness the current administrator of the Assigned Counsel Plan at the evidentiary hearing to give credible testimony that Sicks filed false vouchers on defendant's case and to produce these false vouchers for the Court's in camera inspection.

13. Sicks was grossly ineffective for his failure to conduct any investigation of the case. Sicks was in possession of the police reports which alleged that the robberies were committed in front of 60 Glenmore Avenue and there was a group of about six people present during the alleged robberies. The address 60 Glenmore Avenue is located within a housing project where people tend to look out their windows. However, Sicks failed to canvass the building of 60 Glenmore Avenue to interview potential defense witnesses who may have witnessed the alleged robberies and failed to ascertain the names of the group of

six people whom were present during the alleged robberies. Had Sicks canvassed the building at 60 Glenmore Avenue and other buildings in the housing project and interviewed potential defense witnesses, he would have encountered material witnesses whom could have testified that the defendant was NOT present at the sceneof the crime.

14. Sicks had a legal obligation to undertake adequate investigation of all the facts and circumstances relevant to defendant's case, which constituted an [un]ethical dereliction of the ABA Defense Function Standard 4-4.1(a) which mandates: "Defense counsel should conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the the prosecution and law enforcement authorities."

15. Sicks made fraudulent misrepresentations to the defendant that he would conduct a prompt investigation of his alibi defense and the crime scene and interview potential defense witnesses. Throughout the entire representation of the defendant by Sicks, he consistently engaged in [un]ethical conduct and deliberately violated all the canons of the Code of Professional Responsibility. Sicks complete failure to conduct any investigation was reflected in his lack of preparation for trial, his failure to understand the applicable law, communicate with defendant, and present a compelling and persuasive alibi defense in support of the defense of actual innocence. Instead, Sicks

presented no defense and did not call any defense witnesses.

16. In People v. Hobot, 84 N.Y.2d 1021, 1022 (1995), the New York State Court of Appeals ruled that a <single> substantial error by counsel which seriously compromises a defendant's right to a fair trial can constitute ineffective representation.

17. In People v. Fogle, 10 A.D.3d 618 (A.D. 2 Dept. 2004), the Appellate Division, Second Department, held that trial counsel's failure to investigate the crime scene and search for additional witnesses constituted ineffective assistance of counsel.

18. Defendant's case is on all squares with the Fogle case. In Fogle, the defendant was convicted of Murder 2° and Criminal Possession of a Weapon 2°. Appeal by the defendant, by permission, from an order of the Supreme Court, Kings County (Tomei, J.), dated September 11, 2000, which, after a hearing, denied his motion pursuant to CPL § 440.10 to vacate a judgment of conviction of the same court rendered February 13, 1997, convicting him of the aforesaid crimes. By Decision & Order of the Second Department dated July 14, 2003, the appeal was held in abeyance and the matter was remitted to the Supreme Court, Kings County, for "further findings of fact and credibility determinations" on the issue of trial counsel's effectiveness (People v. Fogle, 307 A.D.2d 299). The Supreme Court, Kings County, conducted a hearing and filed its "Decision & Order" dated March 5, 2004, with the Second Department, which GRANTED the defendant's motion to vacate judgment and ordered a new trial.

19. In the instant case, there was a complete failure to investigate by Sicks, there was no strategic reason for this lack of investigation, and that an investigation of the crime scene and a search for additional defense witnesses would likely have revealed evidence favorable to the defense which could have been utilized at trial. Defendant respectfully submit that Sicks complete failure to investigate constitutes ineffective assistance of counsel in direct violation of the Sixth Amendment to the Constitution of the United States and New York Constitution, Article I, § 6, which warrants favorable relief for the Court to grant defendant's motion to vacate judgment and DISMISS THE INDICTMENT WITH PREJUDICE.

20. Therefore, Sicks's complete failure to conduct an investigation compels the conclusion that the defendant was denied the effective assistance of counsel. See, People v. Smith, 237 A.D.2d 388 (A.D. 2 Dept. 1997)(defense counsel's lack of preparation and his failure to understand the applicable law, communicate with defendant, investigate the facts of the case, constitutes ineffective counsel); People v. Droz, 39 N.Y.2d 457; People v. Donovan, 184 A.D.2d 654 (A.D. 2 Dept. 1992)(defense counsel failed to conduct adequate pretrial investigation resulting in ineffective assistance); People v. Bussey, 6 A.D.3d 621 (same).

21. Although Sicks is a [d]eplorable criminal and disgrace to the New York State Bar Association, it is despicable how the People consistently glorify Sicks as a competent attorney. The ~~Kings County~~ District Attorney's Office has the legal obligation and authority to prosecute all crimes committed in Kings County.

Between January 2000 to January 2003, Sicks committed the crimes of grand larceny, embezzlement, fraud, and conspiracy with his wife to commit the aforesaid crimes. Sicks was never held accountable for the hundreds of indigent clients' cases that he sabotaged. Why?

22. The People stated that Sicks was not charged with a crime until July 12, 2004, the date of the prosecutor's information. First, Sicks entered a "GUILTY PLEA" that he stole over $150,000 from the Assigned Counsel Plan on April 9, 2003 before the Assigned Counsel Plan and Advisory Committee. As an Officer of the Court, Sicks had a legal obligation to immediately move the Court to relieve him as defense counsel based upon his "GUILTY PLEA". Secondly, the overwhelming evidence that Sicks maliciously sabotaged defendant's case in exchange for favorable treatment with his own criminal case is substantiated by the "Prosecutor's Information (one count of grand larceny") with no prison time. Under normal circumstances, for a criminal defendant who stole over $150,000 over a three year period between January 2000 and January 2003 would have been indicted with a hundred (100) count indictment with charges of grand larceny, embezzlement, fraud and conspiracy with separate criminal acts for each indigent client with consecutive sentences of imprisonment. However, Sicks received "SPECIAL TREATMENT" from the District Attorney's Office. Why? It belies sound rationale that the People would allude that Sicks received "SPECIAL TREATMENT" without making a deal with the prosecutor. Upon information and belief, Sicks maliciously sabotaged all the hundreds of indigent clients' cases with a conviction for the

prosecutor in exchange for "SPECIAL TREATMENT" with his own criminal case. Defendant respectfully requests the Court to subpoena the dispositions of all of Sicks's clients between January 2000 and January 2003 as documentary evidence to corroborate the fact that Sicks maliciously sabotaged his clients' cases. Sicks knew that it was inevitable that he would get caught with his spree of grand larceny and he diabolically devised a scheme to provide the People with numerous convictions for "SPECIAL TREATMENT" for his own plea bargain. Evidently, the People were in <cahoots> with Sicks.

23. An instance of <PROSECUTORIAL MISCONDUCT> is demonstrated, to wit: ADA Irslinger made a <FALSE> statement in her affirmation/affidavit for a Material Witness Order by the Honorable Judge Albert Tomei, Justice of the Supreme Court, dated April 17, 2003. In ADA Irslinger's sworn statement she states: "On April 16, 2003 she had a conversation with Mr. Emmanuel Davis which she was lead to believe that Mr. Davis would not cooperate and she requested that a warrant be issued to a police officer, directing such police officer, to take Emmanuel Davis into custody and bring him before the Court."

24. Defendant is in possession of a tape recorded interview between ADA Irslinger and Mr. Davis that completely contradicts information contained in ADA Irslinger's Material Witness Order request. On the tape recorded interview Copy #A03-0204, dated April 17, 2003, which took place at the Kingsbrook Jewish Medical Center, Mr. Davis gave voluntary testimony that was the saving grace of the prosecution's entire case. However, on that same date, April 17, 2003, ADA Irslinger made a <FALSE> statement in a

sworn affidavit/affirmation to Justice Tomei requesting a Material Witness Order to compel the production of Mr. Davis at court. Contrary to the <FALSE> statement made by ADA Irslinger in her Material Witness Order request, ADA Irslinger never had a conversation with Mr. Davis on April 16, 2003; the interview took place on April 17, 2003 and Mr. Davis gave voluntary sworn testimony that saved the People's case. Therefore, ADA Irslinger deliberately made a fraudulent misrepresentation to Justice Tomei in order to obtain a Material Witness Order for Mr. Davis in blatant violation of the Code of Professional Responsibility, and severely undermines the <veracity> of ADA Irslinger.

25. In the direct testimony of Mr. Davis, page 17, lines 23-24, Mr. Davis was asked the question: "And did you come to court today under a subpoena?" And Mr. Davis replied: "Yes". ADA Irslinger intentionally elicited testimony from Mr. Davis with respect to a subpoena when she was already fully cognizant of the fact that his appearance in Court was secured by a Material Witness Order that she requested. Due to the fact that ADA Irslinger maliciously withheld the fact that Mr. Davis was produced by a Material Witness Order, this was an [un]ethical tactic to prevent Sicks from challenging the validity and legality of the Material Witness Order in Court, and thereby effectively depriving defendant of his constitutional right to a fair trial.

26. Furthermore, the People's Material Witness Order for Mr. Davis was never admitted into evidence at trial or provided to the defense. The People included the Material Witness Order as their exhibit which made defendant aware of it for the first time on July 12, 2010. Another instance of **<LEGAL CHICANERY>?**

27. Contrary to the People's claim on page 33 of the People's Opposition: "the fact that Mr. Sicks was being investigated by the 18-B Assigned Counsel Plan did not mean that the court system or the district attorney was aware of that investigation," upon information and belief the court system and the district attorney knew or should have known that on April 9, 2003 Sicks "PLEAD GUILTY" under oath to committing countless felony offenses and violating numerous codes of ethical conduct, thereby maliciously undermining the constitutional rights of numerous indigent clients whom he took an oath to defend. Moreover, the Assigned Counsel Plan had a legal obligation to immediately suspend Sicks and notify the court system and district attorney of Sicks's ""GUILTY PLEA" to the commission of the crime of stealing over $150,000 from the Assigned Counsel Plan. The <GROSS NEGLIGENCE> and dereliction of official duties by the Assigned Counsel Plan to immediately suspend Sicks upon his "GUILTY PLEA" on April 9, 2003 and failure to immediately notify the court system and district attorney, effectively forced defendant to go to trial with a <HORRENDOUS CRIMINAL> as his trial counsel, which severely prejudiced defendant and deprived him of his rights to the effective assistance of counsel and right to a fair trial.

28. In Strickland v. Washington, 466 U.S. 678, the United States Supreme Court ruled that the Sixth Amendment imposes on counsel a duty to investigate, because reasonably effective assistance must be based upon professional decisions and informed legal choices can be made only after investigation of options. Thus, Sicks failure to investigate defendant's claim of actual

innocence and alibi defense emphatically violates the Sixth Amendment, which compels relief for the Court to grant defendant's motion to vacate judgment pursuant to CPL § 440.10(1)(h) as a matter of law.

29. In accordance with CPL § 440.30(5), an evidentiary hearing must be conducted to RESOLVE ISSUES OF FACTUAL DISPUTE. Defendant respectfully requests that Your Honor grant an evidentiary hearing at the Court's earliest convenience to resolve the following issues of factual dispute: (i) defendant asserts that Sicks submitted false vouchers directly connected to defendant's case; the People refute this assertion, but failed to adduce any documentary evidence in support of their rebuttal; (ii) defendant asserts that Mr. Davis was brought directly from the hospital while under the influence of <PSYCHOTROPIC MEDICATION> and <SEVERE PSYCHOLOGICAL DAMAGE> as a result of a <CRACK-COCAINE> induced stroke which adversely effected the reliability of his recollection; the People's Exhibit 3, Field Investigation Request, does not provide unquestionable proof for their rebuttal; the request merely contains handwritten notes without any signature from the investigator and supervisor and sworn statement under oath; (iii) defendant avers that Sicks failed to secure expert witnesses to present a psychological analysis of the state of mind of Davis and medical prognosis of the extreme mind-altering effects of <PSYCHOTROPHIC MEDICATION> as well as severe side effects on Davis to the jury, which there is a great probability would have raised a reasonable doubt in the minds of the jurors as to the reliability and credibility of Davis's testimony; the People failed to provide any documentary

evidence in support of their rebuttal; (iv) defendant contends that the trial court failed to conduct an adequate inquiry of certain chosen jurors who had claimed that it would be difficult for them to render an impartial verdict due to their negative experience as crime victims, pursuant to CPL § 270.20(1)(b), which effectively deprived him of his right to a fair trial and Sicks was grossly ineffective for his failure to vigorously challenge the aforesaid procedural due process violation. The trial record is completely devoid of the trial court made an inquiry of the specific jurors in question and Sicks had the legal obligation to challenge the impropriety and legality of the Voir Dire and failed to do so; the People failed to produce any documentary evidence in support of their rebuttal; (v) defendant avers that he moved the Court to relieve Sicks as defense counsel for his failure to conduct any investigation of the case, failure to visit him, communicate with him and prepare a trial strategy and moved for a continuance to retain private counsel; defendant's motion was denied; in spite of an <IRREPARABLE BREAKDOWN> in the attorney/client relationship and defendant lacked confidence in Sicks's ability to represent him to the best of his ability, defendant was [f]orced to proceed to trial with a <DEVIOUS VILE SELF-CONFESSED CRIMINAL> as his trial counsel, which effectively deprived defendant of his rights to the effective assistance of counsel and right to a fair trial; the People failed to adduce any documentary evidence in support of their rebuttal.

30. Defendant asserts that his claim of actual innocence is also supported by the lack of physical evidence (no weapon, no

stolen property) and no eyewitnesses to the robberies. Moreover, the People's case was extremely weak with no eyewitnesses to the alleged robberies who witnessed defendant at the crime scene. Evidently, defendant is a victim of [mis]identification. Especially since there was a young black teenager who had a close resemblance to defendant used to "hang out" in front of 60 Glenmore Avenue on a regular basis. Defendant is <COMPLETELY INNOCENT> of any involvement in the alleged robberies.

31. Defendant respectfully requests that Your Honor take judicial notice that he received the People's Opposition on July 12, 2010, ten (10) days after the return date of July 2, 2010.

32. Defendant further respectfully requests Your Honor to take judicial notice of the fact that the People sent an investigator from the Kings County District Attorney's Office, who persistently stalked and harassed defendant's alibi witness wherein the alibi witness is very concern for her safety and security. Accordingly, defendant respectfully requests Your Honor to issue an **ORDER OF PROTECTION** for defendant's alibi witness directing the People not to have any contact or communication with defendant's alibi witness.

**WHEREFORE**, defendant respectfully prays that Your Honor grant a full and fair evidentiary hearing to resolve all issues of factual dispute, assign 18-B attorney: Barry Scheck, Esq., Cochran, Neufeld & Scheck, 99 Hudson Street, New York, NY 10013, (212) 965-9081 as defense counsel for the hearing, or, in the alternative, another 18-B attorney outside of Kings County to prevent any unethical influence, affluence or manipulation; grant

that the Innocent Project, 100 Fifth Avenue, New York, New York, be allowed to work as co-counsel with assigned 18-B counsel; grant that defendant reserves the right to present a list of defense witnesses to be called at the hearing upon his appearance before the Court; grant that defendant be permitted to wear personal civilian clothing at the hearing; upon hearing all evidence and facts that support defendant's claim of actual innocence and denial of the effective assistance of counsel that Your Honor grant defendant's motion to vacate judgment and DISMISS INDICTMENT #1237/02 WITH PREJUDICE; and for such other and further relief as the Court may deem just and proper.

DATED: Fallsburg, New York
July 19, 2010

Respectfully submitted,

GUS BETHEA #03A2735
Defendant, Pro Se
Sullivan Correctional Facility
325 Riverside Drive
P. O. Box 116
Fallsburg, New York 12733-0116

SWORN TO BEFORE ME THIS

19th day of July, 2010.

NOTARY PUBLIC

CHARLES A. GRAMLICH
Notary Public, State of New York
Sullivan County Clerk's #2086
Commission Expires September 5, ~~199~~ 2013

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GUS BETHEA,

Petitioner,

-against-

JAMES WALSH, Superintendent of Sullivan Correctional Facility,

Respondent.

EXHIBITS TO SUPPLEMENTAL AFFIDAVIT IN OPPOSITION TO PETITION FOR A WRIT OF HABEAS CORPUS

CV 09-5037 (NGG)

EXHIBIT L

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS : CRIMINAL TERM PART 9

---

THE PEOPLE OF THE STATE OF NEW YORK

-against-

GUS BETHEA

---

By: Hon. Raymond Guzman

Date: January 7, 2011

DECISION & ORDER

Indictment No. 1237/2002

Defendant moves, *pro se*, for an order vacating his judgment of conviction pursuant to CPL § 440.10 on the grounds of actual innocence, ineffective assistance of counsel and other alleged violations of his constitutional rights. For the following reasons, the motion is denied in part and a hearing is granted.

On October 31, 2001, in Brooklyn, defendant approached Kendrick Bass with a gun and demanded money and property. Defendant reached into Bass's pocket and took his wallet, money and cell phone. Emmanuel Davis, who had no connection to Bass, happened to be walking nearby at the time. Defendant approached Davis with the gun and demanded his money and property as well. Defendant took Davis's money and cell phone from his pocket along with his ring, chain and coat. Davis recognized defendant from the neighborhood. The day after the robbery, defendant approached Davis, apologized and returned the ring.

On November 26, 2001, Bass informed Detective Paul Parsekian that his assailant's nickname was "Pop," that his first name was "Gus," and that his address was 300 Stone Avenue. On February 23, 2002, Bass identified defendant as his assailant in a lineup. Davis did not view

the lineup. Following the lineup, defendant asked to make a telephone call to his aunt. Detective Parsekian heard defendant tell her to ask someone to reach out to the cousin of the person pressing charges against him. Defendant then told Parsekian that the victim would not appear in court.[1]

For his crimes, defendant was charged with two counts each of robbery in the first degree (PL § 160.15[4]), robbery in the third degree (PL § 160.05), grand larceny in the fourth degree (PL § 155.30[5]), and petit larceny (PL § 155.25). On March 4, 2002, the court appointed John Stella, Esq. to represent defendant. On October 15, 2002, the court granted Mr. Stella's ex parte motion to be relieved as counsel and in his place assigned Philip Sicks, Esq., who represented defendant at the pre-trial hearing and trial.[2] Defendant was convicted by a jury of two counts of robbery in the first degree (PL § 160.15[4]). On May 13, 2003, defendant was sentenced to concurrent terms of imprisonment of twenty-five years for each count (Starkey, J., at trial and sentence).

On appeal from his judgment of conviction, defendant claimed that (1) the trial court erred in failing to afford defendant a hearing on the admissibility of evidence of uncharged crimes; (2) defendant was deprived of constitutionally adequate counsel; and (3) the sentence imposed was harsh and excessive. The Appellate Division, Second Department, affirmed

---

[1]According to the People, Bass was first subpoenaed for trial on August 5, 2002. He failed to appear. That same day Bass gave a letter to one of defendant's family members stating that defendant was not the person who had robbed him and that he wished to drop all charges against defendant. The People also state that, in December 2002 or January 2003, a friend of defendant called Davis and told him not to go to court.

[2] Mr. Sicks was disbarred on January 24, 2005, after his September 21, 2004 conviction of grand larceny in the fourth degree. Sicks pleaded guilty to submitting false vouchers to the assigned counsel plan.

defendant's judgement of conviction on November 8, 2006, finding that, *inter alia*, defendant was not denied his right to effective assistance of counsel and that the imposed sentence was not excessive (*People v Bethea*, 34 AD3d 489 [2d Dept. 2006]). Defendant's application for leave to appeal to the Court of Appeals was also denied (*People v Bethea*, 9 NY3d 840 [2007]).

Subsequently, on March 28, 2008, defendant moved the Appellate Division for a writ of error *coram nobis* on the ground that he was denied the effective assistance of appellate counsel. Defendant argued that his attorney had improperly raised a mischaracterized and unpreserved *Ventimiglia* claim and that counsel should have raised five additional arguments on appeal. The Appellate division denied defendant's motion on August 19, 2008, finding that defendant had failed to establish that he was denied the effective assistance of appellate counsel (*People v Bethea*, 54 AD3d 420 [2d Dept. 2008]). Leave to appeal to the Court of Appeals was again denied (*People v Bethea*, 13 NY3d 834 [2009]).

Defendant then made a *pro se* petition for a writ of *habeas corpus* in the United States District Court for the Eastern District of New York on November 2, 2009. Defendant raised the same claims that he had raised on direct appeal and in his motion for a writ of error *coram nobis*. Before the District Court rendered a decision, defendant moved on February 12, 2010 to hold his *habeas corpus* petition in abeyance while the instant motion to vacate the judgment of conviction was pending before this court. The District Court denied the motion without prejudice and ordered defendant to amend his *habeas corpus* petition to include the claims from his CPL § 440.10 motion before the Court would address the abeyance issue. Accordingly, defendant moved to amend his *habeas* petition on June 14, 2010. That motion is still pending in the District Court.

In the instant motion to vacate the judgment of conviction, defendant claims that he is actually innocent because his was with his then-girlfriend, Kyonte Walker, and her mother, Angienette Walker, at their apartment in Brooklyn at the time the charged crimes were committed. Defendant argues that his trial counsel was ineffective for failing to investigate and proffer this alleged alibi defense and for failing to offer Kyonte and Angienette Walker as alibi witnesses. He then recites a long litany of complaints against his attorney, the prosecutor and the court. In particular, defendant alleges that counsel was ineffective for failing to:

(1) conduct any investigation
(2) interview the victims and call them to testify at the pre-trial hearing
(3) introduce Bass's recantation letter at the pre-trial hearing
(4) call any witnesses to testify on defendant's behalf at trial
(5) challenge certain jurors during jury selection
(6) present a medical and psychological expert at trial to challenge the mental health condition of Davis, who, according to defendant, testified while under the influence of medication after having suffered a stroke
(7) effectively cross-examine the victims at trial
(8) vigorously object to the prosecutor's impeachment of Bass, who recanted at trial
(9) inform defendant about counsel's pending criminal case which, defendant alleges, created a conflict of interest
(10) and by allegedly filing vouchers for work not actually performed on defendant's case

Additionally, defendant alleges that during voir dire the trial court failed to conduct an adequate inquiry of certain jurors who had stated that their experience as crime victims would make it difficult for them to be impartial; that the trial court improperly denied defendant's *in limine* motion to relieve counsel; and that the prosecutor elicited false testimony from Bass at trial and failed to investigate Bass's recantation.

In support of his allegations, defendant has attached an affidavit by Kyonte Walker, claiming that defendant was with her and her mother at the time of the robberies and that although she had contacted defense counsel, counsel had failed to send an investigator to

interview them. Defendant also includes an affidavit by Kevin Hinkson, a private investigator, who states that he interviewed Princess Donaldson, Davis's sister-in-law, and learned that Davis had suffered a drug-induced stroke and was taken to court directly from the hospital in order to testify against defendant.

The People dispute defendant's allegations that counsel was ineffective for failing to investigate and proffer an alibi defense at the hearing and trial. Nevertheless, the People consent to a hearing on this sole issue. The court thus grants a hearing with respect to this branch of defendant's motion (CPL § 440.30[5]). In this hearing defendant must prove his allegations by a preponderance of the evidence (CPL § 440.30[6]; *People v Gruden*, 42 NY2d 214, 217-18 [1977]). The People reserve the right to file supplemental papers after the hearing in order to respond to defendant's actual innocence claim based on the evidence presented after the hearing. The court notes, however, that the scope of the hearing is limited to counsel's handling of the alibi material and that the question of innocence is ultimately a matter reserved for determination by the jury at trial.

With respect to the claim that he is actually innocent, defendant has failed to establish that CPL § 440.10(1)(h) entitles him to relief. In New York, the law does not explicitly recognize a free-standing claim of actual innocence that may be addressed within the parameters of CPL § 440.10(1)(h) (*see People v Tankleff*, 49 AD3d 160, 182 [2d Dept 2007]; *see People v Bermudez*, 26 Misc.3d 1226A [Sup. Ct. N.Y. City 2009] *and People v People v Wheeler-Whichard*, 25 Misc.3d 690 [Sup. Ct. Kings County 2009] [collateral review of actual innocence claims related only to specific facts of the relevant cases]). Defendant has thus failed to state a legal basis for his claim (CPL § 440.30 [4][a]). Moreover, in light of the overwhelming evidence

of guilt at defendant's trial, defendant's evidence, consisting solely of an affidavit drafted long after trial, is entirely unreliable.

Defendant's citations in his reply papers to *People v Wheeler-Whichard* and *People v Bermudez* are also unavailing in light of defendant's failure to bring forward any competent evidence to support his claims. In *Wheeler-Whichard,* in which the court granted a CPL § 440.10 motion on the grounds of actual innocence, the court stated:

> This court acknowledges that as of yet no New York appellate court has expressly recognized "actual innocence" as a ground under CPL 440.10 (1)(h). However, I am now prepared to rule that, at least under the circumstances of this case, such a claim of actual innocence may be brought and the standard of proof for determining it is "by clear and convincing evidence" (*Wheeler-Whichard* at 702, *citing People v Cole* at 543).

The court's decision to grant the defendant's actual innocence claim in *Wheeler-Whichard* was based upon new evidence that clearly established the defendant's innocence, and which applied only to the unique factual circumstances of that case. *Bermudez* was likewise decided upon new evidence. These decisions, rendered by a court of concurrent jurisdiction, are limited to the narrow confines of the facts of those cases. The fact that a defendant in an unrelated case was found to be actually innocent has no bearing on the instant defendant's own guilt or innocence especially where defendant has not demonstrated why he did not present his alibi sooner. Based on these considerations, defendant's claim of actual innocence is meritless.

To the extent that they rely on matters appearing on the record, defendant's second through ninth claims of ineffective assistance of counsel are procedurally barred from collateral review because defendant raised a claim of ineffective assistance of counsel on appeal, which the Appellate Division found to be meritless (*People v Bethea*, 34 AD3d 489, 490 [2d Dept 2006]). This court need not reconsider his record-based allegations of ineffective assistance of counsel

because the appellate court already addressed and rejected them on the merits (CPL § 440.10 [2][a]).

The specific claims that counsel failed to investigate, interview the victims, effectively cross-examine the victims at trial, to call any defense witnesses and to impeach Davis with expert testimony are also procedurally barred because defendant has failed to substantiate them (CPL § 440.30[4][b] [the court may deny claims that are unsubstantiated, made solely by defendant and are not supported by any other affidavit or evidence]; *People v Session*, 34 NY2d 254, 256 [1974] ["it is not enough to make conclusory allegations of ultimate facts"]). Defendant fails to state what information counsel should have uncovered in his investigation and what favorable credible testimony the victims and potential witnesses could have provided at trial. Defendant even fails to identify what witnesses he believes counsel should have called.

With respect to the claim that Davis testified while under the influence of "psychotropic medication and severe psychological damage," neither the record nor defendant's papers contain any evidence to substantiate defendant's speculative allegations (*see* CPL § 440.30[4][b]). Consequently, counsel cannot be deemed ineffective for failing to challenge Davis's condition at trial or to present an expert witness to testify about Davis's health (*see People v Caban*, 5 NY3d 143, 152 [2005] ["There can be no denial of effective assistance of trial counsel arising from counsel's failure to make a motion or argument that has little or no chance of success"]).

Defendant's remaining claims of ineffective assistance of counsel, notwithstanding the matter of the alibi defense, are also without merit. A defendant in a criminal proceeding is constitutionally entitled to effective assistance of counsel (*Strickland v Washington*, 466 U.S. 668; *People v Linares*, 2 NY3d 507, 510 [2004]; *see* U.S. Const., 6th Amend.; N.Y. Const., art. 1,

§6). To prevail on an ineffective assistance of counsel claim under the federal standard, the defendant must be able to show that counsel's conduct was outside the "wide range of professionally competent assistance" (*Strickland v Washington* at 690). Defendant also must be able to show that, but for counsel's errors, the outcome of the trial would have been different (*id.* at 694).

Under New York law, the constitutional standard of effective assistance of counsel will be satisfied when "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (*People v Flores*, 84 NY2d 184, 187 [1994]; *People v Baldi*, 54 NY2d 137, 147 [1981]). Moreover, "[t]his protection does not guarantee a perfect trial, but assures the defendant a fair trial" (*Flores* at 187). Accordingly, the reviewing court must separate ineffectiveness from "mere losing tactics" and the defendant must "demonstrate the absence of strategic or other legitimate explanation" for counsel's conduct (*People v Baldi* at 146; *People v Rivera*, 71 NY2d 705, 709 [1988]). Defense counsel's choice of strategy, even if unsuccessful, does not rise to the level of ineffective assistance as long as it is reasonable under the circumstances (*People v Benevento*, 91 NY2d 708, 713 [1998]). Defendant must also show that his right to a fair trial was prejudiced by the unfairness of the proceedings as a whole (*People v Stulz*, 2 NY3d 277, 284 [2004]).

The record indicates that counsel provided a competent performance, including appropriate objections, based upon a reasonable defense strategy. Defendant was afforded meaningful representation under the circumstances (*see People v Satterfield*, 66 NY2d 796, 799-800 [1985]). Counsel employed legitimate strategy in deciding when to make objections and

what evidence to present (*Benevento* at 713). Defendant has also failed to establish that he was prejudiced either by counsel's performance or by the unfairness of the proceedings as a whole (*Strickland* at 694; *Stulz* at 284). Defendant's claims of ineffectiveness, which amount merely to quarrels over strategy, are therefore meritless.

In a case where there was no question that the robbery occurred, counsel strategically maintained a theme of misidentification of defendant throughout the trial. In support of this defense, counsel questioned Davis's ability to recall the facts of the robbery and attempted to undermine his credibility. Counsel also elicited testimony from Bass that he had incorrectly identified defendant as the robber, and counsel then offered Bass's recantation letter into evidence. Finally, counsel challenged the fairness of the lineup procedure and attempted to impeach Detective Parsekian's credibility by questioning him about a civilian complaint filed against him and a resulting Internal Affairs investigation.

While the matter of counsel's subsequent conviction and disbarment brings counsel's integrity into question, defendant has nevertheless failed to establish that the pending criminal charges rendered his attorney incompetent or that counsel actually submitted false vouchers in defendant's own particular case. The court also notes that Sicks pleaded guilty on July 13, 2004, a significant time after defendant's own trial. Even if, *arguendo*, Sicks did submit false vouchers for work not actually performed on defendant's case, defendant fails to show that counsel's alleged conduct affected the representation and prejudiced the outcome of the case (*see Strickland* at 691). Accordingly, defendant's claims regarding Sicks' criminal conduct are rejected for lack of factual substantiation (CPL § 440.30[4][b]).

Defendant further argues that the prosecutor's impeachment of Bass was improper and

that counsel, having already objected, should nevertheless have "launch[ed] a vicious attack" against the impeachment. He also alleges that the prosecutor elicited false testimony from Bass at trial. These claims are based on matters appearing in the record and are procedurally barred from review because defendant could have raised them on appeal, yet he unjustifiably failed to do so (CPL § 440.10[2][c]; *People v Williams*, 5 AD3d 407 [2d Dept 2004]; *People v Cooks*, 67 NY2d 100, 500 [1986]).

The claims concerning the prosecutor's examination of Bass are also without merit. Pursuant to CPL § 60.30(1), when that witness gives testimony upon a material issue that tends to disprove a party's position, that party may impeach his own witness by introducing proof of a prior contradictory statement. Here, Bass's testimony that defendant was not the person he had chosen from a lineup tended to disprove the People's position on the material issue of defendant's identity as the robber. Thus, the People properly introduced a portion of Bass's Grand Jury testimony in which he identified defendant in a lineup as the person who had robbed him. Counsel accordingly had no grounds to launch a "vicious attack" on the impeachment (*People v Lane*, 60 NY2d 748, 753 [1983] [counsel not required to make an objection that would have been futile]). Moreover, the claim that the prosecutor elicited false testimony from Bass is refuted by the court record (CPL § 440.30[4][d]).

The claim that the prosecutor failed to investigate Bass's recantation is unfounded. Bass testified that he never called the prosecutor or the police to report seeing the alleged other perpetrator, and that he did not talk to the prosecutor about the recantation letter until after he had been subpoenaed. Accordingly, defendant's claim is unsubstantiated and contradicted by Bass's own testimony on the court record (CPL § 440.30[4][b], [d]).

Defendant's challenges to the court's voir dire proceedings and denial of his motion to relieve counsel, both on-the-record claims, are barred by defendant's failure to raise them on appeal (CPL § 440.10[2][c]). Defendant also failed to register any objection to the court's rulings on the record. For instance, defendant alleges that the court failed to conduct an adequate inquiry of certain chosen jurors who had allegedly claimed, off-the-record, that it would be difficult for them to render an impartial verdict due to their negative experience as crime victims. Again, this claim is procedurally rejected because defendant could have, with due diligence, made facts appear on the record in order to permit review of this claim on appeal, but defendant unjustifiably failed to adduce the matter prior to sentencing and it was not subsequently determined on appeal (CPL § 440.10[3][a]). Defendant was present during the voir dire of prospective jurors. Thus, if the court's inquiry was indeed inadequate, defendant could have brought that fact to the court's attention. Defendant now offers no justification for his failure to alert the court to the alleged error.

Finally, the court properly denied defendant's motion to relieve counsel. Defendant had adequate opportunity to retain counsel of his choice during the fourteen months between his indictment and the time of trial, but he waited until the day of the trial to request "at least" a three-week adjournment in order to retain private counsel. Here, the court properly exercised its discretion in denying the motion as defendant failed to provide any reason why he needed an adjournment or to identify any way in which he was dissatisfied with his counsel's representation (*see People v Goodwine*, 46 AD3d 702 [2d Dept 2007]; *People v Persad*, 306 AD2d 359 [2d Dept 2003]). The timing of defendant's request reflects little more than a dilatory tactic (*People v Arroyave*, 49 NY2d 264, 271 [1980] ["Although a defendant has the constitutionally

guaranteed right to be defended by counsel of his own choosing, this right is qualified in the sense that a defendant may not employ such right as a means to delay judicial proceedings"]).

Accordingly, the motion is denied in part and a hearing is ordered with respect to the issue of whether counsel was ineffective for failing to investigate and proffer an alibi defense at the hearing and trial.

This decision constitutes the order of the court.

The defendant is hereby advised pursuant to 22 NYCRR § 671.5 of his right to apply to the Appellate Division, Second Department, 45 Monroe Place, Brooklyn, New York 11201 for a certificate granting leave to appeal from this determination. This application must be made within 30 days of service of this decision. Upon proof of his financial inability to retain counsel and to pay the costs and expenses of the appeal, the defendant may apply to the Appellate Division for the assignment of counsel and for leave to prosecute the appeal as a poor person and to dispense with printing. Application for poor person relief will be entertained only if and when permission to appeal or a certification granting leave to appeal is granted.

ENTERED
JAN 10 2011
NANCY T. S
COUNTY

ENTER:

RAYMOND GUZMAN, J.S.C.