UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

GUS BETHEA,

                            Petitioner,                           **MEMORANDUM & ORDER**

        -against-                                     **09-CV-5037 (NGG)**

JAMES WALSH, Superintendent,
Sullivan Correctional Facility,

                            Respondent.

-----------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner Gus Bethea ("Bethea" or "Petitioner") brings this pro se Petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his state conviction on two counts of

first-degree robbery. (Pet. for Writ of Habeas Corpus ("Pet.") (Dkt. 1).) Petitioner asserts

multiple grounds for relief, based on: (1) ineffective assistance of trial counsel; (2) violation of

his constitutional rights by the trial court; (3) violation of his constitutional rights by the

prosecutor; (4) violation of his constitutional rights at sentencing; (5) ineffective assistance of

appellate counsel; and (6) a claim of actual innocence. For the following reasons, Bethea's

Petition is DENIED in its entirety.

## I.    BACKGROUND

### A.    Facts

On October 31, 2001, complainants Kendrick Bass and Emmanuel Davis were robbed at

gunpoint in front of 60 Glenmore Avenue, located within the Howard Housing Development in

Kings County, New York. (Br. of Def.-Appellant, People v. Bethea, No. 2003-4626

(N.Y. App. Div. Dec. 1, 2005) ("Def.-Appellant Br.") (Pet. at 84) at 2.)[1] The perpetrator

---

[1] Citations to pages of court exhibits correspond to the page numbering assigned by the court's electronic docketing
system (ECF).

approached Bass with a gun and took his wallet, money, and cellphone. (Decision & Order, Bethea, No. 1237/2002 (N.Y. Sup. Ct. Jan. 7, 2011) ("Pre-Hr'g Decision") (Suppl. Resp. to Order to Show Cause ("Suppl. Resp.") (Dkt. 28), Ex. L (Dkt. 28-2) at 69) at 1.) The perpetrator also approached Davis with the gun and took his money, cell phone, ring, chain, and coat. (Id.)

Each complainant separately reported the crime to the New York City Police Department ("NYPD") at the 73rd Precinct, and each was interviewed by NYPD Detective Paul Parsekian. (Resp't's Br., Bethea, No. 2003-4626 (N.Y. App. Div. Feb. 27, 2006) (Resp. to Order to Show Cause ("Resp.") (Dkt. 4), Ex. B (Dkt. 4-1) at 32) at 4.) Detective Parsekian drove Davis and Bass around the neighborhood, but they could not find the perpetrator. (Id. at 5.)

On November 1, 2001, the day following the robberies, Petitioner approached Davis and returned the stolen ring. (Apr. 21 & 22, 2003, Trial Tr. (Resp., Ex. C-2 (Dkt. 4-4) at 2) at 15:10-16.) Petitioner apologized to Davis (id. at 16:1-11), told him that he was "going through problems with his family," and promised to return Davis's other property (id. at 15:17-25). Petitioner never returned any of Davis's other stolen property, however, and Davis testified that he later saw Petitioner wearing the stolen coat. (Id. at 15:17-25, 16:15-20.)

On November 26, 2001, Bass spoke to Detective Parsekian on the telephone and told him that the robber went by the nickname "Pop" and lived at 300 Stone Avenue, which was Petitioner's address at the time.[2] (See id. at 42:15-43:1.)

On February 16, 2002, Bass told Detective Parsekian that he had run into Petitioner roughly two weeks prior and that Petitioner had told him, "Sorry for what happened to you." (Id. at 44:11-16.) At trial, Bass denied telling Detective Parsekian that Petitioner had apologized for

---

[2] Detective Parsekian testified that Bass had told him during this same conversation that the person who had robbed Bass was named "Gus." (Apr. 21 & 22, 2003, Trial Tr. at 57:22-58:1.) Bass denied this at trial. (Id. at 43:2-6.)

robbing him, suggesting instead that Petitioner had only expressed condolences for what had happened. (See id. at 45:16-21.)

Detective Parsekian later located Petitioner and arranged a lineup on February 23, 2002, in which Petitioner was the subject. (See id. at 59:4-8.) Bass viewed the lineup and identified Petitioner as the man who had robbed him. [3] (Id. at 45:22-25.)

After the lineup, Petitioner asked to make a telephone call to his aunt. (See id. at 66:9-16.) During the telephone call, Detective Parsekian heard Petitioner tell someone to "reach out to Shatog," and to "go to the building behind his grandmother's house, because it's the person's cousin that is pressing charges against him." (Id. at 67:5-10.) Approximately twenty-five minutes after the phone call, Petitioner told Detective Parsekian, "You don't know how much that phone call helped me out. I'm not worried about this that the C/W wouldn't show up for court." (Id. at 67:17-24.)

On August 5, 2002, Bass wrote a letter, signed by a Notary Public, that recanted his identification of Petitioner as the robber. (See id. at 46:1-7.) Bass gave this letter to Petitioner's family (id. at 46:8-14), but he claimed that he was never contacted by them (id. at 49:25-25). Bass stated in the letter that that he had come to realize that he had seen the real perpetrator in Brownsville several times after the robbery and, through "personal investigation," realized that Petitioner was not the individual who robbed him. (See id. at 46:18-47:1.) Bass never contacted the District Attorney's office or Detective Parsekian about these sightings. (Id. at 47:2-8.)

---

[3] Bass would later testify to the grand jury on February 25, 2002, that Petitioner was the individual who robbed him. (Id. at 45:22-25.) However, at trial, Bass insisted that he had identified Petitioner during the lineup in error. (See id. at 34:21-35:3.) The trial court allowed the prosecutor to question Bass as a hostile witness, using Bass's grand jury testimony. (See id. at 35:4-36:3.)

3

Around December of 2002, or January of 2003, Davis received a phone call from people whose voices he recognized as friends of Petitioner. (See id. at 20:19-21, 27:15-17.) Davis testified that the individuals on the phone asked him not to come to court. (Id. at 20:21-25.)

## B.    Trial Court Proceedings

Petitioner was charged in New York Supreme Court, Kings County, with two counts each of first-degree robbery, third-degree robbery, fourth-degree grand larceny, and petit larceny. (See Indictment, People v. Bethea, No. 1237/2002 (N.Y. Sup. Ct.) (Resp., Ex. C-1 (Dkt. 4-3)) at 7.)

On March 4, 2002, the trial court appointed John Stella, Esq. to represent Petitioner. (Pre-Hr'g Decision at 2.) On October 15, 2002, the trial court granted Mr. Stella's ex parte motion to be relieved as counsel and, in his place, assigned Phillip Sicks, Esq., who represented Petitioner at the pre-trial hearing and trial.[4] (Id.) Subsequently, Petitioner requested an adjournment of at least three weeks so that he could retain private counsel. (Apr. 15, 2003, Trial Tr. (Resp., Ex. C-1 at 62) at 8:8-10.) The court denied Petitioner's request without any further inquiry. (Id. at 8:11.)

Petitioner's jury trial began on April 15, 2003. (Id. at 8:1.) At trial, Bass and Davis, along with Detective Parsekian, testified as witnesses for the prosecution.

On April 22, 2003, the jury convicted Petitioner of two counts of first-degree robbery.[5] (Apr. 22, 2003, Trial Tr. (Resp., Ex. C-3 (Dkt. 4-4) at 1) at 155:16-156:7.) On May 12, 2003, the court sentenced Petitioner to two concurrent terms of imprisonment of twenty-five years. (See May 12, 2003, Sentencing Tr. ("Sentencing Tr.") (Resp., Ex. C-3 at 60) at 5:14-6:11.)

---

[4] Sicks was later disbarred on January 24, 2005, after his September 21, 2004, conviction of grand larceny in the fourth degree. (Opinion & Order (Not. of Mot. to Vacate J. (Ltr.-Mot. to Stay (Dkt. 6-2) at 3) at 81).) Sicks pled guilty to submitting false vouchers in connection with this work as court-appointed counsel. (Id.)

[5] The jury was instructed to deliberate on the other charges only in the event that they reached a verdict of not guilty on both counts of first-degree robbery. (Apr. 22, 2003, Trial Tr. at 148:24-149:7.)

4

## C.    Direct Appeal

On June 11, 2003, Petitioner, represented by new counsel, Daniel F. Lynch, Esq., appealed his judgment of conviction to the New York Supreme Court, Appellate Division, Second Department. (Not. of Appeal, Bethea, No. 1237/2002 (N.Y. Sup. Ct. June 11, 2003) (Resp., Ex. C-1) at 4.)  In his appeal, Petitioner argued: (1) that the trial court erred in failing to grant him a hearing on the admissibility of evidence of uncharged crimes pursuant to People v. Ventimiglia, 420 N.E.2d 59 (N.Y. 1981) (Def.-Appellant Br. at 13-16); (2) that he was deprived of constitutionally adequate trial counsel insofar as counsel: (i) failed to request a hearing and limiting instructions on the admission of evidence of uncharged crimes, (ii) inadequately cross-examined key prosecution witnesses, (iii) made only a perfunctory closing argument, and (iv) made only perfunctory comments during sentencing (id. at 17-19); and (3) that the sentence imposed was harsh and excessive (id. at 19-24).

On November 8, 2006, the Appellate Division affirmed Petitioner's conviction. People v. Bethea, 824 N.Y.S.2d 128 (App. Div. 2006). With respect to Petitioner's Ventimiglia claim, the court observed that he had failed to preserve it for appellate review. Id. at 129. The court further concluded that "in any event, such testimony was properly introduced as some evidence of the defendant's consciousness of guilt," and that the trial court issued the proper limiting instructions to the jury. Id. In addition, the court found that Petitioner was not denied the right to effective assistance of counsel, and that his sentence was not excessive. Id.

On June 19, 2007, Petitioner was denied leave to appeal to the New York Court of Appeals. People v. Bethea, 872 N.E.2d 880 (N.Y. 2007) (table decision).

5

**D.     Application for Writ of Error Coram Nobis**

On March 28, 2008, Petitioner applied pro se for a writ of error coram nobis from the
Appellate Division on the ground that he was denied the effective assistance of appellate
counsel. (See Not. of Appl. for Writ of Error Coram Nobis, People v. Bethea, No. 1237/2002
(N.Y. App. Div.) (Resp. Ex. D (Dkt. 4-6)).) Petitioner claimed his appellate counsel was
ineffective for raising a mischaracterized and unpreserved Ventimiglia claim. (Aff. of Gus
Bethea in Supp. of Appl. for Writ of Error Coram Nobis ("Bethea Coram Nobis Aff.") (Resp.,
Ex. D at 4) ¶¶ 11, 12, 15-18.) Petitioner also argued that appellate counsel should have raised
the following additional claims: (1) the evidence was legally insufficient to establish his guilt
beyond a reasonable doubt; (2) the trial court erroneously allowed the prosecution to impeach
one of its witnesses with his grand jury testimony and failed to immediately issue corresponding
limiting instructions to the jury; (3) the prosecutor engaged in misconduct that deprived
Petitioner of a fair trial; (4) Petitioner was denied his right to choice of counsel through the trial
court's summary denial of his request for a three-week adjournment to retain private counsel;
and (5) the hearing court improperly denied Petitioner's motion to suppress his pre-Miranda
statements. (See generally Mem. of Law in Supp. of Def.'s Appl. for Writ of Error Coram Nobis
("Def.'s Coram Nobis Mem.") (Resp., Ex. D at 11).)

On August 19, 2008, the Appellate Division denied Petitioner's application, concluding
that he had failed to establish that he was denied effective assistance of appellate counsel.
People v. Bethea, 862 N.Y.S.2d 296 (App. Div. 2008) (mem. decision).  Pursuant to New York's
Criminal Procedure Law, Petitioner had 30 days from the date that he received notice of the
Appellate Division's decision by which to seek leave to appeal to the New York Court of
Appeals. See N.Y. Crim. Proc. Law § 460.10(5)(a). Since Petitioner received the Appellate

Division's decision by August 21, 2008 (see Pet. ¶ 14), his deadline to request leave to appeal was September 22, 2008.

It was not until July 24, 2009, however, that Petitioner applied pro se for leave to appeal the Appellate Division's denial. (See Not. of Appl. for Leave, People v. Bethea, No. 1237/2002 (N.Y.) (Resp., Ex. G (Dkt. 4-7) at 2).) In his application, Petitioner stated that on May 21, 2008, his wife, Kyonte Bethea, had retained attorney Muhammad Ibn Bashir to represent Petitioner with respect to his collateral appeals, but Mr. Bashir had failed to do so. (Aff. of Gus Bethea in Supp. of Leave Appl. ("Bethea Leave Aff.") (Resp., Ex. G at 3) ¶¶ 4-7.) Petitioner appended to his application a decision from the New Jersey District Fee Arbitration Committee, which determined that although Bashir was hired by Petitioner, he failed to do any work or return telephone calls, falsely advised Petitioner's wife that work was continuing on the matter, and failed to return any of the documents sent by Petitioner. (See Bethea v. Bashir, No. XII-09-020f (N.J. Dist. Fee Arb. Comm. June 30, 2009) (Bethea Leave Aff., Ex. A (Resp., Ex. G at 7)) slip op. at 5-6.) Petitioner asserted that Bashir's failure, as acknowledged by the Arbitration Committee, prevented Petitioner from filing a timely application for leave to appeal the Appellate Division's denial. (See Bethea Leave Aff. ¶ 10.)

On September 2, 2009, Respondent opposed Petitioner's application for leave to appeal. (Resp. to Def.'s Appl., Bethea, No. 1237/2002 (Resp., Ex. H (Dkt. 4-6)).)[6] On October 30, 2009, the New York Court of Appeals denied Petitioner's application for leave to appeal. People v. Bethea, 918 N.E.2d 965 (N.Y. 2009) (table decision).

---

[6] Due to Petitioner's allegations regarding Bashir's misconduct, Respondent did not oppose Petitioner's application on the basis of timeliness. (Id.)

### E. Motion to Vacate Judgment

On January 5, 2010, Petitioner filed a motion in New York Supreme Court, Kings County, to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. (Not. of Mot. to Vacate J. (Ltr.-Mot. to Stay (Dkt. 6-2) at 3).) In his § 440.10 motion, Petitioner asserted the following grounds for relief: (1) actual innocence; (2) ineffective assistance of trial counsel insofar as counsel: (i) failed to investigate and proffer Petitioner's alleged alibi defense, (ii) failed to conduct any investigation, (iii) failed to interview the victims and call them to testify at a pre-trial hearing, (iv) failed to introduce Bass's recantation letter at the pre-trial hearing, (v) failed to challenge certain jurors during jury selection, (vi) failed to present a medical and psychological expert at trial to testify regarding Davis's mental health, (vii) failed to call any witnesses to testify on Petitioner's behalf at trial, (viii) failed to effectively cross-examine the victims at trial, (ix) failed to vigorously object to the prosecution's impeachment of Bass, who recanted at trial, (x) failed to inform Petitioner about counsel's pending criminal case, which Petitioner alleges created a conflict of interest, and (xi) allegedly filed vouchers for work not actually performed on Petitioner's case; (3) error by the trial court not to conduct an adequate inquiry of certain jurors who claimed it would be difficult for them to render an impartial verdict, and for improperly denying his motion to relieve counsel; (4) error by the prosecutor for failing to investigate Bass's recantation and eliciting false testimony at trial. (Aff. of Gus Bethea in Supp. of Mot. to Vacate J. ("Bethea § 440.10 Aff.") (Ltr.-Mot. to Stay at 4); Def.'s Mem. of Law in Supp. of C.P.L. § 440.10 Mot. to Vacate J. ("Mem. in Supp. of § 440.10 Mot.") (Ltr.-Mot. to Stay at 26).)

On July 2, 2010, Respondent opposed Petitioner's § 440.10 motion. (Aff. of Terry-Ann Llewellyn in Opp'n to Mot. to Vacate J. (Suppl. Resp., Ex. J (Dkt. 28-2) at 2).) Respondent

8

opposed relief and urged the summary denial of the motion on all claims, except Petitioner's claim alleging that trial counsel knew of and disregarded an available alibi witness. (Id. ¶ 19.) With respect to Petitioner's alibi claim, Respondent consented to a hearing. (Id.) On January 7, 2011, the New York State Supreme Court, Kings County, denied Petitioner's § 440.10 motion in part, and ordered a hearing regarding Petitioner's ineffective assistance of counsel claim based on counsel's alleged failure to investigate and proffer an alibi defense at the pre-trial hearing and trial. (Pre-Hr'g Decision at 12.)

By notice dated February 7, 2011, Petitioner applied for leave to appeal the § 440.10 court's January 7, 2011, pre-hearing decision to the Appellate Division. (Not. of Appl. for Leave to Appeal, Bethea, No. 1237/2002 (N.Y. App. Div.) (Suppl. Resp., Ex. M (Dkt. 28-3) at 2).) Respondent opposed Petitioner's application. (Answer, People v. Bethea, No. 2011-01956 (N.Y. App. Div. Apr. 8, 2011) (Suppl. Resp., Ex. M at 29).) On July 27, 2011, the Appellate Division denied Petitioner's application for leave to appeal the § 440.10 court's January 7, 2011, pre-hearing decision.[7] (Decision & Order on Appl., Bethea, No. 2011-01956 (Suppl. Resp., Ex. M at 30).)

More than two-and-a-half years later, on February 27, 2014, and again on March 3, 2014, the § 440.10 court held hearings on Petitioner's remaining claim—that trial counsel provided ineffective assistance in failing to investigate and proffer an alleged alibi witnesses.[8] (See Hr'g

---

[7] The fact that Petitioner did not subsequently apply for leave to the Court of Appeals is of no issue for this court's exhaustion requirements. If the Appellate Division affirms the New York Supreme Court's denial of a § 440.10 motion on the merits, a petitioner may seek further review in the New York Court of Appeals. See N.Y. Crim. Proc. Law § 450.90. However, if the Appellate Division denies leave to appeal, as was the case here, a petitioner will have reached "the end of the road within the state system," Klein v. Harris, 667 F.2d 274, 284 (2d Cir. 1981) (internal citation and quotation marks omitted), and he must then file his federal habeas petition. Lebron v. Lee, No. 13-CV-1852 (ARR), 2013 WL 2120648, at *1 n.1 (E.D.N.Y. May 14, 2013).

[8] Petitioner argued that he was actually innocent of the crimes because at the time the robberies occurred he was with his then-girlfriend, Kyonte Walker (now Kyonte Bethea) and her mother, Angienette Walker, at their apartment in Brooklyn. (Pre-Hr'g Decision at 4.) In support of his alleged alibi, both Petitioner and Kyonte Walker testified to this fact at the hearing. (See Hr'g Tr. at 60:15-61:5, 91:16-92:5.) Petitioner also submitted an affidavit from Kyonte

Tr., Bethea, No. 1237/2002 (N.Y. Sup. Ct.) (Suppl. Resp., Ex. N (Dkt. 28-3) at 31).) On

May 13, 2014, the § 440.10 court denied Petitioner's claim that his trial counsel was ineffective

for failing to investigate and proffer the alleged alibi. (Decision & Order, Bethea,

No. 1237/2002 (N.Y. Sup. Ct. May 13, 2014) ("Post-Hr'g Decision") (Suppl. Resp. Ex. Q

(Dkt. 28-4) at 41) at 7-8.) In its decision, the court rejected Petitioner's and his wife's versions

of events in their entirety, and determined that their testimony was not credible. (Id. at 6.)

Specifically, the court found it incredible: (1) that Petitioner's wife was completely unaware of

his situation when he "simply disappeared for approximately six months," after having seen him

on a "near daily basis"; and (2) that once Petitioner's wife was aware of the charges and

Petitioner's innocence, she would not have more strenuously followed up with Petitioner's

attorney, or even attended Petitioner's trial until after the jury began deliberating. (Id.) In

addition, the court noted that Petitioner made no mention of an alibi to the trial court before or

during trial, or at sentencing, and that Petitioner failed to mention the alibi defense when he

raised a claim of ineffective assistance of trial counsel on direct appeal. (Id.)

On June 10, 2014, Petitioner sought leave to appeal the § 440.10 court's May 13, 2014,

decision to the Appellate Division. (Not. of Appl., People v. Bethea, No. 1237/2002 (N.Y. App.

Div.) (Suppl. Resp., Ex. R (Dkt. 28-4) at 50).) Respondent opposed Petitioner's application.

(Aff. of Diane R. Eisner in Opp'n to Appl. for Leave to Appeal Denial of § 440.10 Mot., Bethea,

No. 1237/2002 (N.Y. App. Div. July 29, 2014) (Suppl. Resp., Ex. S (Dkt. 28-4) at 66) at 68.) On

August 29, 2014, the Appellate Division denied Petitioner's application. (Decision & Order on

Appl., People v. Bethea, No. 2014-06923 (N.Y. App. Div. Aug. 29, 2014) (Suppl. Resp., Ex. T

(Dkt. 28-4) at 71).)

---

Walker testifying that Petitioner was innocent of the crimes for the same reasons she testified at the hearing. (See Aff. of Kyonte Walker ("Walker Aff.") (Suppl. Resp., Ex. I at 81).)

## F.    Federal Habeas Petition

On November 3, 2009—after the Court of Appeals had denied Petitioner leave to appeal the denials of both his direct appeal and motion for writ of error coram nobis, but before Petitioner had filed his motion to vacate judgment—Bethea, again proceeding pro se, filed the instant Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Pet.) In his § 2254 Petition, Bethea asserts the same claims he previously raised on direct appeal and in his application for writ of error coram nobis. (See id.; supra Part I.C-D.) As Bethea acknowledged, his § 2254 Petition was untimely[9]; nonetheless, he requested that the court grant him permission to proceed based on the "exceptional circumstances" presented by Bashir's ineffectiveness.[10] (See Pet. ¶ 14.)

In response to the court's December 3, 2009, Order to Show Cause (Dkt. 2), Respondent opposed Petitioner's motion for a writ of habeas corpus, but did not oppose the Petition on the basis of timeliness, due to Petitioner's allegations regarding Bashir's misconduct. (See Aff. of Terry-Ann Llewellyn in Opp'n to Pet. for Writ of Habeas Corpus ("Llewellyn Aff.") (Dkt. 4) ¶ 20.)

On February 12, 2010, Petitioner moved for this court to hold his § 2254 Petition in abeyance pending decision on the § 440.10 motion to vacate judgment that he had recently filed in state court. (See Ltr.-Mot. to Stay.) On June 1, 2010, the court denied Petitioner's motion without prejudice. (June 1, 2010, Order (Dkt. 7).) In doing so, the court explained that the claims Petitioner asserted in his motion to vacate were not asserted in his § 2254 Petition. (Id.

---

[9] When Petitioner failed to file his application for leave to appeal to the New York Court of Appeals by September 22, 2008 (see supra Part I.D), his collateral motion was no longer pending, and therefore the remaining time to file his § 2254 Petition began to run. See 28 U.S.C. § 2244(d).

[10] The Second Circuit has determined that attorney malfeasance, "if it is sufficiently egregious, may constitute the sort of 'extraordinary circumstances' that would justify the application of equitable tolling to the one-year limitations period of AEDPA," provided that a petitioner acts with reasonable diligence. Baldayaque v. United States, 338 F.3d 145, 152-53 (2d Cir. 2003).

at 2.) His was therefore not a "mixed petition" under Rose v. Lundy, 455 U.S. 509 (1982), and a motion to hold the Petition in abeyance was premature. (June 1, 2010, Order at 2.) As a result, the court advised Petitioner that before it could address a motion to stay, he needed to file a motion to amend his Petition to add the new, unexhausted claims he was pursuing in his motion to vacate. (Id.) The court instructed Petitioner that if he wished to pursue these claims in his Petition, he must move to amend the Petition within 30 days. (Id. at 2-3.)

Consequently, on June 21, 2010, Bethea moved to amend his § 2254 Petition. (Mot. to Amend Pet. (Dkt. 8).) Respondent did not oppose (Resp. to Mot. to Amend Pet. (Dkt. 10)), and the court granted the motion (Jan. 12, 2011, Order (Dkt. 13)). On January 26, 2011, on consent of Respondent, the court ordered a stay of the proceedings, allowing Petitioner to exhaust his new claims in state court. (See Order Staying Case (Dkt. 16) at 1-2.) The court conditioned the stay on Petitioner's return to federal court within 30 days of exhausting his new claims. (Id. at 2.)

After the Appellate Division's August 29, 2014, decision denying Petitioner leave to appeal the denial of his motion to vacate, Petitioner timely moved to reopen this case on September 25, 2014. (See Mot. to Reopen Case (Dkt. 24).) The court granted Petitioner's motion. (See Nov. 12, 2014, Order to Show Cause (Dkt. 27).)

In his Amended Petition, Petitioner seeks a writ of habeas corpus based on the claims he originally asserted in his original Petition, as well as the claims he raised in his motion to vacate. (Compare Pet., with Am. Pet. (Dkt. 26).) He therefore asserts the following grounds for relief: (1) the trial court erred in failing to conduct an adequate inquiry of certain jurors who claimed it would be difficult for them to render an impartial verdict; (2) the trial court improperly denied his motion to relieve counsel; (3) the trial court erred in failing to grant him a hearing on the

12

admissibility of evidence of uncharged crimes; (4) the prosecutor erred in failing to investigate a complainant's recantation; (5) the prosecutor erred in eliciting false testimony from a claimant at trial; (6) trial counsel rendered constitutionally ineffective assistance because counsel: (i) failed to investigate and proffer Petitioner's alibi defense, (ii) failed to conduct any investigation, (iii) failed to challenge certain jurors during jury selection, (iv) failed to interview the victims and call them to testify at a pre-trial hearing, (v) failed to introduce Bass's recantation letter at the pre-trial hearing, (vi) failed to request a hearing and limiting instruction on evidence of uncharged crimes, (vii) failed to adequately cross-examine key witnesses, (viii) failed to vigorously object to the prosecution's impeachment of Bass, who recanted at trial, (ix) failed to call any witnesses to testify on Petitioner's behalf at trial, (x) failed to present a medical and psychological expert at trial to testify regarding Davis's mental health, (xi) failed to inform Petitioner about counsel's pending criminal case, which created a conflict of interest, (xii) made only a perfunctory closing argument, (xiii) made only perfunctory comments during sentencing, and (xiv) allegedly filed vouchers for work not actually performed on Petitioner's case; (7) the sentence imposed was: (i) harsh and excessive, (ii) "cruel and unusual" within the meaning of the Eighth Amendment, and (iii) given as a penalty for exercising his right to trial; (8) appellate counsel rendered constitutionally ineffective assistance because counsel failed to raise the additional claims that: (i) the evidence was legally insufficient to establish his guilt beyond a reasonable doubt, (ii) the trial court erroneously allowed the prosecution to impeach one of its witnesses with his grand jury testimony and failed to immediately issue corresponding limiting instructions, (iii) the prosecutor engaged in misconduct that deprived Petitioner of a fair trial, (iv) Petitioner was denied his right to choice of counsel, and (v) the hearing court improperly

denied Petitioner's motion to suppress his pre-<u>Miranda</u> statements; and (9) a claim of actual innocence.[11] (<u>Id.</u>)

In response to the court's second Order to Show Cause, Respondent filed a Response in Opposition to the Amended Petition on December 9, 2014. (<u>See</u> Suppl. Aff. of Diane R. Eisner in Opp'n to Pet. for Writ of Habeas Corpus ("Eisner Aff.") (Suppl. Resp. at 1); Resp't's Suppl. Mem. of Law in Opp'n to Am. Pet. (Suppl. Resp. at 13).) Petitioner filed a reply on December 26, 2014. (Aff. of Gus Bethea in Opp'n to Suppl. Aff. in Opp'n to Pet. (Dkt. 29).)

## II.   FEDERAL HABEAS CORPUS STANDARDS

Pursuant to 28 U.S.C. § 2254(a), a district court "shall entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." In order to obtain habeas relief, however, a person in custody pursuant to a state court judgment must generally meet three requirements: (1) exhaustion; (2) absence of procedural bar; and (3) satisfaction of the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). <u>See, e.g.</u>, <u>Pearson v. Rock</u>, No. 12-CV-3505 (NGG) (LB), 2015 WL 4509610, at *5 (E.D.N.Y. Jul. 24, 2015). Under the deferential AEDPA standard, a petitioner who has satisfied the requirements of exhaustion and absence of procedural bar must then show that the state court decision, having been adjudicated on the merits, was either "contrary to, or involved

---

[11] The submissions of a pro se litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest." <u>Pabon v. Wright</u>, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks and citation omitted). The claims found in Petitioner's Amended Petition are general allegations. (<u>See</u> Am. Pet. ¶ 14 (alleging "improper and prejudicial conduct not appearing in the record" and that the judgment was "obtained in violation of defendant's rights under the State and Federal Constitutions").) However, this court will give "special solicitude" to Petitioner's submissions as he proceeds pro se. <u>See</u> <u>Ruotolo v. I.R.S.</u>, 28 F.3d 6, 8 (2d Cir. 1994). Petitioner's allegations are "susceptible to various readings," and they are "broad enough to cover" all of the bases of relief he has previously raised in state court, and the court therefore will consider each of them, so long as they are not procedurally barred. <u>See</u> <u>Coulthurst v. United States</u>, 214 F.3d 106, 109-10 (2d Cir. 2000).

an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## A. Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." Id. § 2254(b)(1). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts," meaning that the petitioner "informed the state court of both the factual and the legal premises of the claim he asserts." Daye v. Att'y Gen. of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc). Every claim that a petitioner raises in his § 2254 application must first have been raised in state court in order for the petition to be considered exhausted. This "total exhaustion" rule requires that a district court dismiss habeas petitions containing both unexhausted and exhausted claims. Rose, 455 U.S. at 513, 522.

## B. Procedural Bar

"It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." Cone v. Bell, 556 U.S. 449, 465 (2009) (citations and internal quotation marks omitted). "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." Id. However, "the adequacy of state procedural bars to the assertion of federal questions . . . is not within the State's prerogative finally to decide; rather,

adequacy is itself a federal question." Id. (alteration in original) (internal quotation marks and citation omitted). As a result, a federal court has "an independent duty to scrutinize the application of state rules that bar [its] review of federal claims." Id. at 468.

As an exception to the procedural default doctrine, a court may consider a procedurally barred claim on the merits if the petitioner demonstrates either: (1) "cause" for failing to comply with the state procedural rule and "prejudice" from the procedural bar; or (2) failure to consider the claim will result in a "fundamental miscarriage of justice." Murray v. Carrier, 477 U.S. 478, 495-96 (1986).

The Supreme Court has consistently held that both "cause" and "actual prejudice" are necessary in order to be exempt from the procedural default rule under the cause-and-prejudice exception. Francis v. Henderson, 425 U.S. 536, 542 (1976); see also Carrier, 477 U.S. at 494. In order to show cause for a procedural default, the prisoner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Carrier, 477 U.S. at 479.

> The question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, [] we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.

Id.

In order to establish prejudice a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. 668, 694 (1984). "The habeas petitioner must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they

16

worked to his _actual_ and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" _Carrier_, 477 U.S. at 495 (emphasis in original) (quoting _United States v. Frady_, 456 U.S. 152, 170 (1982)).

Similarly, a petitioner "may use his claim of actual innocence as a 'gateway,' or a means of excusing his procedural default, that enables him to obtain review of his constitutional challenges to his conviction." _Doe v. Menefee_, 391 F.3d 147, 161 (2d Cir. 2004) (citing _Schlup v. Delo_, 513 U.S. 298, 315-17 (1995)). However, "[a] federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." _Dretke v. Haley_, 541 U.S. 386, 393-94 (2004); _see also_ _Carrier_, 477 U.S. at 495-96 (finding that, "for the most part, 'victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard.'" (quoting _Engle v. Isaac_, 456 U.S. 107, 135 (1982))).

To establish a credible claim of actual innocence, a petitioner must provide "'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" _Doe_, 391 F.3d at 161 (quoting _Schlup_, 513 U.S. at 324). Because the habeas court's concern is with "factual innocence," _Bousley v. United States_, 523 U.S. 614, 623 (1998), the court must evaluate all the available evidence without regard to its admissibility, _Schlup_, 513 U.S. at 327-28. To evaluate whether the new evidence is reliable, the habeas court must consider the evidence "both on its own merits and, where appropriate, in light of the pre-existing evidence in the record." _Doe_, 391 F.3d at 161 (citing _Schlup_, 513 U.S. at 327-28). Finally,

> [The habeas court must not] make an independent judgment of whether reasonable doubt exists, but instead [must make] a probabilistic determination about what reasonable, properly instructed jurors would do. This probabilistic analysis must

determine not merely [whether] . . . a reasonable doubt exists in the light of the new evidence, but rather whether it is more likely than not that no reasonable juror would have found the defendant guilty.

Id. at 163 (internal quotation marks and citation omitted).

## C.   AEDPA Deference

When a state court has reached the merits of a claim asserted in a § 2254 habeas petition, the state court's decision is reviewed under the deferential standard set forth in AEDPA, which provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'" Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005) (internal quotation marks and citations omitted). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

18

Thus, the standard is whether the state court was "objectively unreasonable in doing so," and not merely "incorrect or erroneous." Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002) (emphasis in original) (citation and internal quotation marks omitted). In other words, the petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011).

"[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." Id. at 98. In such an instance where "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id.

Additionally, the fact that a state court does not explicitly refer to specific constitutional amendments, or relevant federal case law, is of no consequence in determining whether a state court adjudicated the claim on the merits. See Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001) (holding federal habeas court must defer to state court decision on the federal claim "even if the state court does not explicitly refer to either the federal claim or to relevant federal case law"); Taylor v. Connelly, 18 F. Supp. 3d 242, 252 (E.D.N.Y. 2014). Furthermore, after AEDPA, "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. DISCUSSION

### A. Ineffective Assistance of Trial Counsel

Petitioner argues that his trial counsel provided him with ineffective assistance, in violation of the Sixth Amendment as applied to the states through the Fourteenth Amendment. Petitioner argued on direct appeal from his conviction that his trial counsel was ineffective because counsel: (1) failed to request a hearing and limiting instruction on evidence of uncharged crimes; (2) gave only a perfunctory closing argument; (3) inadequately cross-examined witnesses; and (4) gave only perfunctory comments during sentencing. (Def.-Appellant Br. at 17-19.) The Appellate Division found these claims to be meritless. Bethea, 824 N.Y.S.2d at 128 ("The defendant was not denied his right to effective assistance of counsel." (citations omitted)).

In his motion to vacate judgment, Petitioner again raised a claim of ineffective assistance of trial counsel, alleging that counsel: (1) failed to investigate and proffer an alleged alibi defense; (2) failed to conduct any investigation; (3) failed to interview the victims and call them to testify at a pre-trial hearing; (4) failed to introduce Bass's recantation letter at the pre-trial hearing (5) failed to call any witnesses to testify on Petitioner's behalf at trial; (6) failed to challenge certain jurors during jury selection; (7) failed to present a medical and psychological expert at trial to testify regarding Davis's mental health; (8) failed to effectively cross-examine the victims at trial; (9) failed to vigorously object to the prosecutor's impeachment of Bass, who recanted at trial; (10) failed to inform Petitioner about counsel's pending criminal charges, creating a conflict of interest; and (11) allegedly filed vouchers for work not actually performed on Petitioner's case. (Mem. in Supp. of § 440.10 Mot.) The § 440.10 court held that Petitioner's ineffective assistance claims (3) through (10) were "procedurally barred from collateral review"

20

to the extent that they relied on matters appearing on the record, since the Appellate Division had found such claims to be meritless. (See Pre-Hr'g Decision at 6-7 (citing Bethea, 824 N.Y.S.2d at 129; N.Y. Crim. Proc. Law § 440.10(2)(a) (providing that court "must deny a motion to vacate a judgment when . . . [t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment")).)

The § 440.10 court further held that Petitioner's claims that counsel failed to investigate, interview the victims, effectively cross-examine the victims at trial, call any witnesses, and impeach Davis with expert testimony, were also "procedurally barred because [Petitioner] failed to substantiate them." (Id. at 7 (citing N.Y. Crim. Proc. Law § 440.30(4)(b) ("Upon considering the merits of the motion, the court may deny it without conducting a hearing if . . . [t]he motion is based upon the existence or occurrence of facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts.")).) With the exception of Petitioner's claims related to an alibi defense, the court found his remaining claims of ineffective assistance of trial counsel to be "without merit." (Id. at 7 (citing Strickland, 466 U.S. 668; People v. Linares, 813 N.E.2d 609 (N.Y. 2004)).)

As previously noted, the § 440.10 court did grant Petitioner a hearing with respect to his claim regarding trial counsel's alleged failure to investigate and proffer an alibi defense. (Id. at 5.) After conducting the hearing, however, the § 440.10 court denied this claim as well. (See Post-Hr'g Decision at 7.) In reaching this conclusion, the § 440.10 court also made findings of fact (see id. at 6-7), which are entitled to deference from this court, see supra Part II.C.

For the reasons stated below, this court concludes that none of Petitioner's alleged claims of ineffective assistance of trial counsel warrant the relief he seeks.

1.   Procedural Bar

The § 440.10 court dismissed most of Petitioner's claims of ineffective assistance of trial counsel on the grounds that they were "procedurally barred" under New York Criminal Procedure Law §§ 440.10(2)(a),(c) or 440.30(4)(b).  As noted above, however, this court has "an independent duty to scrutinize" whether the state court's decision constitutes an adequate procedural bar to the assertion of these claims in a federal habeas proceeding under § 2254. Cone, 556 U.S. at 468.

a.   Section 440.10(2)(a)

The § 440.10 court determined that Petitioner's ineffective assistance of trial counsel claims (3) through (10) were barred by New York Criminal Procedure Law § 440.10(2)(a) "to the extent they rely on matters appearing on the record."  (Pre-Hr'g Decision at 6-7.) Respondent argues that these claims are also procedurally barred in the instant proceeding "because the claims were record-based and were, or could have been, raised on direct appeal." (Suppl. Resp. at 1.)

Section 440.10(2)(a) provides that a court "must" deny a motion to vacate judgment when "[t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue."  The Second Circuit has long held, however, that a federal habeas court may assess the merits of claims denied by a post-judgment motion court under that provision.  See Silverstein v. Henderson, 706 F.2d 361, 368 (2d Cir. 1983) (finding that denial of relief on the basis of § 440.10(2)(a) "does not constitute a finding of procedural default that would bar federal consideration of [the petitioner's] claims"); see also Velazquez v. Poole, 614 F. Supp. 2d 284, 321 n.29 (E.D.N.Y. 2007) (adopting report and recommendation); Guzman v. Couture, No. 99-CV-11316

.    22

(RMB) (HBP), 2003 WL 165746, at *11 (S.D.N.Y. Jan. 22, 2003) ("[S]ince the trial court expressly relied on CPL § 440.10(2)(a) to deny petitioner's application, it cannot be said that the court relied on a procedural bar, and this court is not precluded from turning to the merits of [the] claims."). Therefore, to the extent Respondent argues that the § 440.10 court's reliance on § 440.10(2)(a) constitutes an independent and adequate procedural bar to this court's review of those claims, that argument is rejected.

### b.      Section 440.30(4)(b)

Similarly, the § 440.10 court's reliance on N.Y. Crim. Proc. Law § 440.30(4)(b) does not operate to bar this court's review of the merits of Petitioner's claims of ineffective assistance of trial counsel. The § 440.10 court found that Petitioner's claims based on trial counsel's alleged failure to investigate, interview victims, effectively cross-examine victims at trial, call defense witnesses, and impeach Davis with expert testimony were barred under § 440.30(4)(b). Section 440.30(4)(b) states that, "[u]pon considering the merits of the motion [to vacate judgment], the court may deny it without conducting a hearing if . . . [t]he motion is based upon the existence or occurrence of facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts." N.Y. Crim. Proc. Law § 440.30(4)(b) (emphasis added). While Respondent does not suggest this provision serves as a procedural bar in Petitioner's § 2254 proceeding, the court's independent analysis is warranted, particularly because the Second Circuit has yet to address this precise question. See also Cone, 556 U.S. at 468.

The Second Circuit has, however, interpreted a different provision of the same subsection, and that analysis is instructive here. In Garcia v. Portuondo, the Second Circuit held that the denial of a motion to vacate judgment pursuant to New York Criminal Procedure Law § 440.30(4)(c) is not a procedural bar, citing the "plain language" of the statute. 104

23

F. App'x 776, 779 (2d Cir. 2004) (summary order). Section 440.30(4)(c) provides that "[u]pon considering the merits of the motion [to vacate judgment], the court may deny it without conducting a hearing if . . . [a]n allegation of fact essential to support the motion is conclusively refuted by unquestionable documentary proof." The Second Circuit reasoned that "[e]ven aside from the fact that the provision opens with an explicit reference to 'considering the merits of the motion,' subsection (c) implicitly requires a balancing of the evidence presented by the parties." Id. at 779. As a result, the Second Circuit concluded that the trial court's dismissal of a claim pursuant to § 440.30(4)(c) constitutes a "judgment on the merits." Id.

After Garcia, a number of district courts within the Second Circuit have applied a similar analysis to § 440.30(4)(b). See, e.g., Hirsh v. McArdle, 74 F. Supp. 3d 525, 538 (N.D.N.Y. 2015); Giraldo v. Bradt, No. 11-CV-2001 (JFB), 2012 WL 3835112, at *8 (E.D.N.Y. Sept. 5, 2012) ("[I]t is clear that any decision issued pursuant to Section 440.30(4) should be considered a 'judgment on the merits.'" (quoting Garcia, 104 F. App'x at 779)); Edwards v. Mazzuca, No. 00-CV-2290 (RJS) (KNF), 2007 WL 2994449, at *15 (S.D.N.Y. Oct. 15, 2007) (adopting report and recommendation) (holding that denial of a motion pursuant to § 440.30(4)(b) constitutes a decision on the merits); Gonzalez–Pena v. Herbert, 369 F. Supp. 2d 376, 389 (W.D.N.Y. 2005) (holding that denial of a motion pursuant to § 440.30(4) "is a merits-based decision, not a procedural bar").[12] The court agrees.

First, because the introductory language of § 440.30(4) applies to both subsections (b) and (c), the interpretation offered by the Second Circuit is directly applicable to subsection (b). See Garcia, 104 F. App'x at 779. As the court pointed out in Garcia, the plain meaning of the

---

[12] Other courts within this circuit, however, have reached the opposite conclusion. See e.g., Marsh v. Ricks, No. 02-CV-3449 (NRB), 2003 WL 145564, at *7 (S.D.N.Y. Jan. 17, 2003) ("[B]ecause the denial of a motion to vacate a conviction pursuant to Crim. Proc. Law § 440.30(4) constitutes reliance on an independent and adequate state law ground, our review of petitioner's claim is barred by this procedural default absent a showing of a valid excuse." (citing Roberts v. Scully, 875 F. Supp. 182, 193 n.7 (S.D.N.Y.), aff'd, 71 F.3d 406 (2d Cir. 1995) (table decision))).

phrase "upon considering the merits of the motion," suggests that a court must consider the merits of the motion before dismissing it pursuant to one of the following subsections. See id. Furthermore, just as subsection (c) calls upon the court to balance the evidence presented, subsection (b) also requires the court to decide whether the moving papers contain sworn allegations of fact "substantiating or tending to substantiate all the essential facts." N.Y. Crim. Proc. Law § 440.30(4)(b). Thus, a court must first decide which facts are essential to a motion and then consider whether the sworn allegations tend to, or do in fact, support those essential facts. This determination is necessarily a "judgment on the merits." See Garcia, 104 F. App'x at 779.

The context of § 440.30(3) is also relevant to this analysis. Pursuant to § 440.30(3), "[u]pon considering the merits of the motion [to vacate judgment], the court must grant it without conducting a hearing" under certain circumstances. Other courts in this circuit have noted that "the fact that [] § 440.30(3) requires a court to grant a [] § 440 motion without a hearing if certain requirements are met strongly suggests that [] § 440.30(4)'s provisions are not procedural," particularly because both provisions begin with the same introductory language. Skinner v. Duncan, No. 01-CV-6656 (DAB) (AJP), 2003 WL 21386032, at *28 (S.D.N.Y. June 17, 2003) (report and recommendation), adopted, Order (S.D.N.Y. May 7, 2004) (Dkt. 21). The court finds this reasoning to be persuasive.

Accordingly, the § 440.10 court's denial of claims under § 440.30(4)(b) does not constitute a procedural bar. Instead, this provision merely permits the § 440.10 court to rule on the merits of a motion to vacate judgment without conducting a hearing, in the event that the movant fails to substantiate the facts alleged with sworn allegations or other evidence. This reflects a decision on the merits for the purpose of 28 U.S.C. § 2254(d). See Lopez v. Graham,

No. 10-CV-468 (NGG), 2012 WL 1865502, at *12 (E.D.N.Y. May 22, 2012), aff'd, 519 F. App'x 52 (2d Cir. 2013) (summary order).

Thus, to the extent that the § 440.10 court denied Petitioner's claims of ineffective assistance of trial counsel on the basis of either §§ 440.10(2)(a) or 440.30(4)(b), this court will proceed to consider the merits, bearing in mind the deferential standard of review imposed by AEDPA.[13] See 28 U.S.C. § 2254(d).

### c.    *Subsection 440.10(2)(c)*

Petitioner raised a claim of ineffective assistance on the basis of trial counsel's failure—despite objecting—to launch a "vicious attack" when the prosecutor impeached Bass, a prosecution witness. (See Am. Pet ¶ 14; Mem. in Supp. of § 440.10 Mot. at 33-34; see also Apr. 21 & 22, 2003, Trial Tr. at 34:21-38:15.) Petitioner concedes that Sicks made an objection, but he attributes Sicks's failure to more strenuously object to the fact that Sicks allegedly failed to conduct an investigation and interview Bass. (Mem. in Supp. of § 440.10 Mot. at 33.)

Although Petitioner raised this issue below, the § 440.10 court found his claim to be procedurally barred pursuant to § 440.10(2)(c). (See Pre-Hr'g Decision at 9-10 (finding claim was "based on matters appearing in the record and are procedurally barred from review because defendant could have raised them on appeal, yet he unjustifiably failed to do so") (citing N.Y. Crim. Proc. Law § 440.10(2)(c)).) For the following reasons, Petitioner is procedurally barred from asserting this claim in his § 2254 Petition as well.

New York courts typically "refuse[] to apply subsection (2)(c) to bar an ineffective assistance claim where 'sufficient facts do not appear on the record of the proceedings underlying the judgment to have permitted' adequate review of the issue on direct appeal." Murden v. Artuz, 497 F.3d 178, 196 (2d Cir. 2007) (quoting People v. Harris, 491

---

[13] Whether Petitioner has exhausted his claims in state court is not in contention.

N.Y.S.2d 678, 687 (App. Div. 1985)). But "[w]here the basis for a claim of ineffective assistance of counsel is well established in the trial record, a state court's reliance on subsection (2)(c) provides an independent and adequate procedural bar to federal habeas review." Id. (citing Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003)).

Here, the alleged error on which Petitioner bases his claim—counsel's failure to "mount a fierce attack" against the prosecution's impeachment of its own witness (see Mem. in Supp. of § 440.10 Mot. at 33)—was clearly well-established in the trial record. (See Apr. 21 & 22, 2003, Trial Tr. at 34:21-38:15.) As the § 440.10 court observed, this record—which fully captures Bass's direct examination, as well as trial counsel's objection and the trial court's subsequent evidentiary inquiry—is more than sufficient to serve as a basis for raising this claim on direct appeal. See Sweet, 353 F.3d at 139-40 (finding ineffective assistance claim procedurally defaulted under § 440.10(2)(c) where counsel "plainly failed to object" to jury charge and petitioner offered no reason why appellate counsel "would have needed a new evidentiary hearing to develop this claim"); Reyes v. Keane, 118 F.3d 136, 139-40 (2d Cir. 1997) (finding ineffective assistance claim procedurally defaulted under § 440.10(2)(c) where trial counsel's failure to object to jury charge had sufficient basis in the trial record). Petitioner chose to bring other ineffective assistance claims on direct appeal, "so he cannot claim that he was consolidating all of his Sixth Amendment claims for one collateral attack with the benefit of a new evidentiary record for those other claims." Sweet, 353 F.3d at 140.

Accordingly, the court concludes that because Petitioner failed to raise this claim on direct appeal, despite having sufficient basis in the record, his waiver of this claim pursuant to § 440.10(2)(c) constitutes a procedural bar to review in his §2254 proceeding. Furthermore,

Petitioner sets forth no reason why this claim should be excepted from the procedural bar.[14] Thus, Petitioner's claim will not be reviewed on the merits in this context. But see infra Parts III.C.2 and D.2.

>    2.    Merits

Ineffective assistance of counsel claims are governed by the Supreme Court's decision in Strickland. See Williams v. Taylor, 529 U.S. 362, 390 (2000). In Strickland, the Court established a two-pronged test to determine whether a defendant's Sixth Amendment right to effective assistance of counsel has been violated. 466 U.S. at 687.

First, under Strickland's "performance" prong, Petitioner must show that trial counsel's representation "fell below an objective standard of reasonableness," measured under "prevailing professional norms." Id. at 688. The notion of "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Thus, a court must "not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential

---

[14] The Second Circuit has held that "the Supreme Court's rationale, grounded in the principle of comity, [] compels the conclusion that a claim of cause for procedural default is not itself excepted from the doctrine of procedural default. Thus, a petitioner may not bring an ineffective assistance claim as cause for a default when that ineffective assistance claim itself is procedurally barred." Reyes, 118 F.3d at 140. As discussed in Part III.D infra, Petitioner raised several claims regarding ineffective assistance of appellate counsel in his petition for a writ of error coram nobis. However, Petitioner did not argue that his appellate counsel was ineffective for failing to raise any argument regarding the ineffectiveness of his trial counsel. Thus, even if Petitioner were to argue cause and prejudice due to ineffective assistance of appellate counsel, the claim is procedurally defaulted itself and cannot act as a claim of cause for default. Furthermore, Petitioner raises no claim of actual innocence as an exception to procedural default.

downside," or if the lawyer otherwise had "a reasonable justification for the decision." Greiner, 417 F.3d at 319 (citations and internal quotation marks omitted).

Second, under Strickland's "prejudice" prong, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "It is not enough . . . to show that the errors had some conceivable effect on the outcome of the proceeding"; rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Thus, establishing a claim for ineffective assistance of counsel is a "heavy burden" that, in the context of a § 2254 petition, is "enhanced by the added hurdle posed by the highly deferential review accorded [to] state court adjudications under [AEDPA]." Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003); see also Harrington, 562 U.S. at 105 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (internal citations and quotation marks omitted)). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly"; instead, Petitioner must show that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 698-99 (2002). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 122 (2009).

### a. Failure to Investigate and Proffer Alleged Alibi Defense

Petitioner argues that his trial counsel failed to pursue his alibi defense, interview alibi witnesses, and call such alibi witnesses to trial. (See Am. Pet. ¶ 17.) This claim fails because the state court's factual determination on this issue was not "unreasonable . . . in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Miller-El v.

Cockrell, 537 U.S. 322, 340 (2003) (noting that "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary").

The § 440.10 court made certain findings of fact after conducting a hearing in which Petitioner, his wife, and both of Petitioner's former trial attorneys (Stella and Sicks) testified. At the hearing, Petitioner testified that he had informed Stella that he had two alibi witnesses, and that Mrs. Bethea would be willing to testify on his behalf. (Post-Hr'g Decision at 3.) Petitioner further testified that he had told Sicks about his alibi as soon as he had replaced Stella as his counsel. (Id.) Both Stella and Sicks testified that they were never alerted to a potential alibi, and the court found their testimony to be "credible." (Id. at 7.)

The court based this determination on findings that: (1) both Stella and Sicks testified that Petitioner's theory of the case from its early stages was based on the recantation by one of the complaining witnesses (Bass); (2) Petitioner had many opportunities to address the trial court and made no mention of any disregarded alibi evidence—in fact, the first time Petitioner raised the issue of an alibi was in 2010, more than seven years after his conviction; (3) Petitioner also failed to mention a disregarded alibi when he raised claims of ineffective assistance of counsel on direct appeal; (4) it was "incredible" to think that Petitioner's wife (his then-girlfriend) would not have more strenuously followed up with Petitioner's attorney after becoming aware of Petitioner's charges and, as she testified, his innocence; and (5) Petitioner's wife testified that she did not attend any part of Petitioner's trial until the jury began deliberating, and admitted that she never contacted any of the attorneys who represented Petitioner after his conviction and sentencing. (Id. at 6-7.)

Petitioner's conclusory statements, as well as unsubstantiated allegations that "both defense Counsel Stella and trial counsel Sicks ha[d] vested interests in making fraudulent

30

misrepresentations to the hearing court" (Aff. of Gus Bethea in Supp. of Leave Appl. of § 440.10 Post-Hr'g Decision, People v. Bethea, No. 1237/2002 (N.Y. App. Div.) (Resp., Ex. R (Dkt. 28-4) ¶ 25)), fall far short of the "clear and convincing evidence" needed to rebut the presumption of correctness given to the state court's findings. See 28 U.S.C. § 2254(e)(1). Thus, in light of the findings made by the state court, as well as the generally deferential standard under Strickland, Petitioner has failed to meet his burden of demonstrating that the § 440.10 court's conclusion was an unreasonable determination of the facts. See id. § 2254(d)(2).

### b.     Failure to Conduct Any Investigation

Petitioner next argues that his trial counsel provided constitutionally ineffective assistance by failing to conduct "any investigation" of his case, failing to "adequately prepare himself for trial," and failing to consult with Petitioner "with respect to his claim of actual innocence and trial strategy." (Am. Pet. ¶ 17.)

As many courts in this circuit have observed, "'undetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation have consistently been held insufficient to satisfy either Strickland prong.'" Paige v. Lee, 99 F. Supp. 3d 340, 349 (E.D.N.Y. 2015) (quoting Powers v. Lord, 462 F. Supp. 2d 371, 381 (W.D.N.Y. 2006)); see also Lamberti v. United States, No. 95-CV-1557 (PNL), 1998 WL 118172, at *2 (S.D.N.Y. Mar. 13, 1998) (Leval, Circuit J.) (rejecting Sixth Amendment claim based on failure to investigate or communicate as "vague and conclusory" where allegations "[did] not identify counsel's asserted failings with any specificity or show how any different conduct might have changed the result"); Madarikan v. United States, No. 95-CV-2052 (SJ), 1997 WL 597085, at *1 (E.D.N.Y. Sept. 24, 1997) (denying ineffective assistance claim based on failure to investigate or "listen to [petitioner's] version of events" where petitioner's allegations of ineffective assistance were

"conclusory, and [gave] no indication as to what exculpatory evidence may have been revealed by an investigation").

In this case, Petitioner likewise fails to substantiate his claims. Indeed, he suggests no information that his attorney should have uncovered by further investigation. Other than his claimed disregarded alibi defense, which the court has already addressed, see supra Part III.A.2.a., Petitioner offers no additional evidence or witnesses that should have been pursued. Petitioner's allegations that Sicks failed adequately to prepare himself for trial and "fail[ed] to have any defense theory whatsoever" are not only conclusory, but are contradicted by state court determinations. (Mem. in Supp. of § 440.10 Mot. at 26; see also Pre-Hr'g Decision at 8 ("The record indicates that counsel provided a competent performance, including appropriate objections, based upon a reasonable defense strategy." (emphasis added)).) Thus, Petitioner's claim of ineffective assistance of trial counsel based on the failure to investigate, communicate, or otherwise prepare for trial is simply too vague and conclusory to warrant habeas relief under either Strickland prong. See Paige, 99 F. Supp. 3d at 349. Furthermore, because of the § 440.10 court's adjudication of these claims on the merits, this court owes that decision deference and does not find it to be unreasonable. (See Pre-Hr'g Decision at 7-8.)

### c. *Failure to Interview and Call Victims to Testify*

Next, Petitioner argues that trial counsel failed to investigate and interview the robbery victims—Bass and Davis—in advance of the pre-trial hearing, and failed to elicit their testimony at that hearing. (See Am. Pet. ¶ 17; see also Mem. in Supp. of § 440.10 Mot. at 22.) Petitioner argues that had trial counsel interviewed the victims and secured their testimony at the pre-trial hearing, Petitioner's indictment would have been dismissed with prejudice. (Mem. in Supp. of § 440.10 Mot. at 22-23.) Specifically, Petitioner argues that if Sicks would have called Bass as a defense witness at the pre-trial hearing, there was a "great probability that the hearing court

would have suppressed the identification evidence relevant to Bass." (Id. at 22.) Petitioner further argues that Sicks agreed to interview Davis and call him as a defense witness at the pre-trial hearing, and committed "fraudulent misrepresentation" by failing to do so. (Id. at 23.) The § 440.10 court found these claims to be unsubstantiated and barred pursuant to § 440.30(4)(b), which this court has found to be a determination on the merits. (See Pre-Hr'g Decision at 7.) As such this court owes that determination deference pursuant to § 2254(d).

Courts applying Strickland are especially deferential to defense attorneys' decisions about which witnesses to call. "The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam). Thus, "counsel's decision as to 'whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation.'" United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) (quoting United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997)); cf. Bell, 535 U.S. at 700.

The Second Circuit has held that "deference is particularly apt where . . . an attorney decides not to call an unfriendly witness to the stand and has precious little means of determining how the witness might testify." Greiner, 417 F.3d at 323; see also Lou v. Mantello, No. 98-CV-5542 (JG), 2001 WL 1152817, at *10 (E.D.N.Y. Sept. 25, 2001) ("Habeas claims based on complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified [to] are largely speculative." (citations and internal quotation marks omitted)). This precedent is directly applicable to the situation at hand, where Petitioner argues his counsel should have called the complainants who had previously testified against him. Accordingly, this

court finds that Sicks's decision not to call Bass or Davis at the pre-trial hearing was "within the range of acceptable strategic and tactical alternatives" from which counsel was permitted to choose. Luciano, 158 F.3d at 660.

More importantly, the § 440.10 court rejected this claim on the merits, a determination that is entitled to double deference. See Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (noting that a doubly deferential judicial review applies to a Strickland claim evaluated under the § 2254(d)(1) standard (citing Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003) (per curiam))). The § 440.10 court held that Petitioner had failed to show what favorable credible testimony the victims would have provided, thus failing to establish "prejudice." (See Pre-Hr'g Decision at 7.) This court declines to conclude that the § 440.10 court's determination was an "unreasonable application" of clearly established federal law, under the doubly deferential framework.

Petitioner provides no other basis in which he could have suffered prejudice by Sicks's alleged failure to interview the victims. Thus, Petitioner fails to meet his burden of demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Therefore, the court denies both of Petitioner's claims regarding counsel's failure to interview victims or to call them to testify at the pre-trial hearing.

> ### d.    *Failure to Introduce Bass's Recantation Letter at Pre-trial Hearing*

A pre-trial suppression hearing was held on January 22, 2003. (See Pre-Trial Tr. at 2:11-12.) The only witness to testify at the hearing was Detective Parsekian. (See Pre-Trial Tr. at 37:16-24.)

Petitioner argues that counsel was constitutionally ineffective in failing to present Bass's recantation letter at the pre-trial hearing. (See Am. Pet. ¶ 17; Bethea § 440.10 Aff. ¶ 6.)

Petitioner maintains that if counsel had presented Bass's recantation letter and called Bass as a defense witness at the pre-trial hearing, Petitioner's motion to suppress identification evidence would have been granted. (See Bethea § 440.10 Aff. ¶ 7.) Petitioner claims that without the identification evidence from Bass, the prosecution's case would have been fatally flawed, thus necessitating dismissal. (Id. ¶ 8.)

The § 440.10 court ultimately found that Petitioner had failed to establish that he was prejudiced by Sicks's performance, and such a determination is entitled to deference. (See Pre-Hr'g Decision at 9 (citing Strickland, 466 U.S. at 694; People v. Stultz, 810 N.E.2d 883, 887-88 (N.Y. 2004)).) See also 28 U.S.C. § 2254(d)(1).

Although Petitioner's counsel did not introduce Bass's recantation letter at the pre-trial hearing, counsel did in fact introduce the letter at trial during his cross-examination of Bass. (See Apr. 21 & 22, 2003, Trial Tr. at 51:7-52:7.) Given that counsel ultimately introduced Bass's letter, and the jury nonetheless found Petitioner guilty of the robbery, Petitioner has failed to demonstrate " a reasonable probability that" but for counsel failing to introduce Bass's recantation at the pre-trial hearing, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The § 440.10 court's determination that Petitioner failed to establish prejudice from his counsel's performance with respect to Bass's recantation is entitled to double deference, see Harrington, 562 U.S. at 105, and this court finds that that decision was not an unreasonable application of clearly established federal law.

> e.  *Failure to Request a Hearing and Limiting Instruction on Evidence of Uncharged Crimes*

Petitioner argues that his trial counsel provided ineffective assistance in failing to request a Ventimiglia hearing on "crucial uncharged crimes evidence," and for failing to request limiting instructions. (Def.-Appellant Br. at 18; see also Am. Pet. ¶ 1.) In support of this claim,

Petitioner asserts that the uncharged crimes evidence ultimately received "varied significantly from the People['s] initial proffer, and thus "unfolded differently in front of the jury than had been previously suggested by the Prosecutor." (Def.-Appellant Br. at 18.) The evidence at issue was Davis's testimony regarding the telephone call in which individuals whom he concluded were friends of Petitioner told him not to come to trial. (See id. at 14; Apr. 21 & 22, 2003, Trial Tr. at 16-21:25, 20:19-21, 27:15-17.)

First, a Ventimiglia hearing was unnecessary because the trial court properly determined that the testimony was admissible as evidence of Petitioner's consciousness of guilt. See Charles v. Fischer, 516 F. Supp. 2d 210, 217 (E.D.N.Y. 2007) ("Courts will admit evidence of a defendant's conduct that reveals a guilty mind including evidence of coercion and harassment of a witness."); People v. Plummer, 325 N.E.2d 161, 163-64 (N.Y. 1975) (finding that defendant's associates' threatening behavior toward witness was admissible as evidence of defendant's consciousness of guilt (citing People v. Shilitano, 112 N.E. 733, 739 (N.Y. 1916))). Here, the evidence of the telephone conversation properly came in "as part of the total picture." Plummer, 325 N.E.2d at 162. The telephone call was "indicative of an effort to coerce [Davis] and suppress evidence against [Petitioner]." Shilitano, 112 N.E. at 739. The trial court properly concluded that "such efforts may have some tendency to prove a consciousness of guilt . . . and therefore they were properly received in evidence." Id. Furthermore, Petitioner would have had, at most, a slim chance of success at a Ventimiglia hearing, and trial counsel cannot be deemed deficient for failing to pursue a strategy that likely would have been unsuccessful. See Killimayer v. Rock, No. 12-CV-6328 (NSR) (LMS), 2013 WL 5586651, at *12 (S.D.N.Y. Oct. 9, 2013) ("[A] motion to dismiss . . . would likely have been unsuccessful, and his trial counsel was not ineffective for declining to make such a motion."); Middleton v. Ercole, No. 07-

CV-2810 (JG) (VVP), 2007 WL 4264578, at *14 (E.D.N.Y. Dec. 3, 2007) (finding that a reasonable attorney could conclude that the likelihood of success on a particular motion was too slim to pursue, and thus counsel was not ineffective for failing to make such a motion).

Second, regardless of whether Petitioner's attorney actually requested it, the trial court did in fact issue an extensive limiting instruction regarding the admission of this evidence. (Apr. 22, 2003, Trial Tr. at 128:25-130:10.) The court's instruction emphasized that evidence of consciousness of guilt was of slight probative value; informed the jury that, standing alone, such evidence could never be the basis for a finding of guilt; and explained the circumstances under which the jury should disregard it as evidence. (See id.)

Therefore, because trial counsel did not commit any error in failing to request a Ventimiglia hearing, and the trial court did in fact instruct the jury as to the limited use of this evidence, Petitioner's claim of ineffective assistance is plainly contradicted by the record. Furthermore, because the Appellate Division adjudicated this claim on the merits, see Bethea, 824 N.Y.S.2d at 129, this court cannot grant relief unless that decision was an "unreasonable application" of clearly established federal law. 28 U.S.C. § 2254(d)(1). The court determines that it was not.

f.    *Failure to Challenge Certain Jurors during Jury Selection*

Petitioner also argues that he was denied effective assistance of trial counsel when his attorney failed to challenge potential jurors who gave reason to believe they could not be impartial. (See Am. Pet. ¶ 14; Mem. in Supp. of § 440.10 Mot. at 25-26.) Petitioner alleges that, off the record, several prospective jurors "emphatically stated that due to their negative experience as a crime victim it would be very difficult for them to render an impartial verdict based upon the evidence adduced at trial." (Mem. in Supp. of § 440.10 Mot. at 25.) Petitioner

37

argues that his trial counsel's failure to challenge these jurors resulted in the empanelment of jurors who could not be impartial, in violation of his Sixth Amendment right.

On the record, the trial judge asked one set of potential jurors, "Has anyone been the victim of a crime, or do you have a close friend or relative who has?" (Apr. 15, 2003, Trial Tr. at 29:2-3.) He asked another set, "Has anyone been a victim of a crime, including car thefts, car break-ins? Or do you have a close friend or relative who has?" (Id. at 51:11-13.) Several prospective jurors, including three who were ultimately selected for the petit jury, answered in the affirmative. In particular, Melanie Usher, who was selected as juror four (id. at 37:23), explained that her car had been burglarized (id. at 29:15-16); Elzbieta Blazinska, who was selected as juror six (id. at 37:25), indicated that someone had attempted to steal a chain from her (id. at 29:18-19); and Archibald Nicholson, who was selected as juror ten (id. at 62:16), stated that he was the victim of a gun robbery, and that "the person was not caught" (id. at 51:15-16). Petitioner argues that because these jurors "had a state of mind that precluded them from rendering an impartial verdict," he was deprived of a fair trial, and counsel's failure to challenge these jurors constituted constitutionally ineffective assistance. (Mem. in Supp. of § 440.10 Mot. at 25-26.)

The Sixth Amendment guarantees criminal defendants a "fair trial by a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722 (1961). As for what that means in practice, "[t]he Supreme Court has held that the question of whether jurors have opinions that disqualify them is one of historical fact to which [§ 2254(e)(l)'s] presumption of correctness applies." Garrido-Valdez v. Poole, 384 F. Supp. 2d 591, 597 (W.D.N.Y. 2005).

> To rebut this presumption of correctness, the petitioner must come forward with clear and convincing evidence of the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality. In addition to 2254(e)(l)'s presumption

> of factual correctness, 2254(d)(2) provides that this [c]ourt cannot grant [defendant's] habeas petition unless it determines that the state court's decision of law was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

Boston v. Brown, No. 10-CV-1494 (CBA), 2014 WL 726683, at *17 (E.D.N.Y. Feb. 24, 2014) (internal quotations marks and citations omitted).

Petitioner has failed to show "clear and convincing evidence" of partiality on the part of the three jurors he has identified. Petitioner's claim that these jurors made remarks concerning their impartiality "off-the-record" is self-serving and unsubstantiated. (See Mem. in Supp. of § 440.10 Mot. at 25-26.) Moreover, as Respondent pointed out in state court, an examination of the record supports the opposite finding—that the jurors in fact confirmed that they would be impartial. (Mem. of Law, Bethea, No. 1237/2002 (N.Y. Sup. Ct. July 2, 2010) ("Resp't's § 440.10 Resp.") (Suppl. Resp., Ex. J (Dkt. 28-2)) at 34-35.) The trial judge specifically asked each of these jurors whether their prior experiences with the criminal justice system would affect their ability to be impartial; none indicated that it would. (See Apr. 15, 2003, Trial Tr. at 26:13-15 (Usher); id. at 26:13-15, 26:25-27:1 (Blizinska); id. at 44:8-19 (Nicholson).)[15]

As a result, this court finds that Petitioner has failed to overcome the presumption of correctness to which the trial court was entitled with regard to its conclusion that the jury was impartial. See Fama, 235 F.3d at 813. Furthermore, even if Petitioner were able to satisfy Strickland's "performance" prong, he has failed to demonstrate any prejudice with respect to this claim. See 466 U.S. at 694.

---

[15] The record does not indicate whether the trial judge specifically inquired as to whether these jurors' prior experience as victims would affect their ability to be impartial. However, there is nothing in the record to suggest that these jurors made statements raising "a serious doubt regarding [their] ability to be impartial." Cf. People v. Chambers, 766 N.E.2d 953, 955 (N.Y. 2002) (per curiam) (requiring unequivocal assertion of impartiality from jurors whose statements did raise "a serious doubt").

g.   *Failure to Present a Medical Expert to Challenge the Mental Health Condition of Davis*

Petitioner argues that trial counsel was constitutionally ineffective because he failed to present a medical expert witness in order to impeach Davis's credibility. (See Am. Pet. ¶ 14; Mem. in Supp. of § 440.10 Mot. at 28-29.) According to Petitioner, Davis's sister-in-law, Princess Donaldson, provided a statement to a private investigator indicating that "Davis suffered a stroke related to crack-cocaine" use only a few days before trial. (Mem. in Supp. of § 440.10 Mot. at 28.) Donaldson further alleged that Davis was taken directly from the hospital to the Supreme Court in Brooklyn, where he then testified against Petitioner, and that Davis was "under the influence of a heavy dosage of medication at the time of his trial testimony." (Id. at 28-29.) In support of this claim, which he originally raised in his § 440.10 motion, Petitioner attached an affidavit from private investigator Kevin Hinkson, who interviewed Donaldson. (See Aff. of Kevin W. Hinkson ("Hinkson Aff.") (Resp., Ex. I (Dkt. 28-1)).)

The § 440.10 court found that Petitioner's claim that Davis testified while under the influence of medication was speculative and unsubstantiated by anything in the record. (See Pre-Hr'g Decision at 7 (citing N.Y. Crim. Proc. Law § 440.30(4)(b)).) Consequently, the court held that trial counsel was not ineffective for failing to present an expert witness or to challenge Davis's condition at trial, at least on the basis of Hinkson's affidavit. (Id. (citing People v. Caban, 833 N.E.2d 213, 220 (N.Y. 2005) ("There can be no denial of effective assistance of trial counsel arising from counsel's failure to make a motion or argument that has little or no chance of success." (citation and internal quotation marks omitted))).) This was not an unreasonable determination of the facts, nor was it contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1)-(2).

Hinkson's affidavit is the only evidence Petitioner has submitted in support of this claim. In the affidavit, which is dated February 11, 2010, Hinkson affirmed that he interviewed Princess Donaldson on August 26, 2008. (Hinkson Aff.) Hinkson wrote that Donaldson reported that Davis was a "crack cocaine drug abuser." (Id.) Donaldson indicated that "sometime in or around April 2003," Davis suffered a stroke "that she suspect[ed] was induced by his abuse of crack cocaine." (Id.) Donaldson further reported that Davis "was rushed to the hospital where he received treatment and rehabilitation," but that he was then "taken from that hospital to the Supreme Court in Brooklyn, New York, where he testified against Gus Bethea." (Id.)

Neither the Hinkson affidavit nor Petitioner's other unsubstantiated allegations are sufficient to meet Petitioner's burden under § 2254(d). First, the affidavit—in which Hinkson attests facts alleged by Donaldson about Davis—constitutes double-hearsay, which is particularly unreliable and thus deserving of little weight. Second, the affidavit contains no other indication of reliability: Donaldson does not indicate the date Davis suffered the alleged stroke, the hospital to which he allegedly was brought, or the type of treatment or medication he received, other than her allegation that "he was taking daily medication as a result of the stroke." (See id.) Moreover, as Respondent argued below, Donaldson's allegations were directly controverted by "unquestionable documentary proof." (Resp't's § 440.10 Resp. at 25.) The prosecution obtained Davis's testimony at trial through the execution of an April 17, 2003, material witness order, which was served upon Davis at his girlfriend's house, and which stated that Davis had just been released from the hospital. (See id.) Lastly, Petitioner fails to point to any evidence in the record suggesting that Davis was under the influence of medication or was suffering from severe psychological trauma at the time of his testimony.

41

Petitioner fails to explain why expert testimony was necessary to aid the jury in reaching its verdict, or why the trial court would have admitted this expert on the basis of double-hearsay speculation that Davis suffered from severe psychological trauma. (See id.) As a result, this court finds that Petitioner's claim of ineffective assistance based on trial counsel's failure to present a medical expert to impeach Davis is meritless, and, therefore, the § 440.10 court was not unreasonable in reaching a similar conclusion. See Strickland, 466 U.S. at 690 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."); 28 U.S.C. § 2254(d)(1); see also Harrington, 562 U.S. at 105 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (internal citations and quotation marks omitted)).

> h.    *Failure to Call Any Witnesses to Testify on Defendant's Behalf*

Petitioner further argues that trial counsel was constitutionally ineffective for failing to call any witnesses to testify on Petitioner's behalf at trial. (See Am. Pet. ¶¶ 1, 14; Mem. in Supp. of § 440.10 Mot. at 26.) As Respondent noted below, however, other than Petitioner's separate claims related to alibi evidence, see supra Part III.A.2.a., and medical expert testimony, see supra Part III.A.2.g., Petitioner does not identify any other witnesses whom counsel improperly failed to call. (See Resp't's § 440.10 Resp. at 22.) The § 440.10 court found this claim to be meritless and unsubstantiated. (Pre-Hr'g Decision at 7.) The court specifically noted that Petitioner failed to state "what favorable credible testimony . . . potential witnesses could have provided at trial" and further "fail[ed] to identify what witnesses he believ[ed] counsel should have called." (Id.)

"Self-serving conclusory allegations . . . are insufficient to establish ineffective assistance of counsel." Sturdivant v. Barkley, No. 04-CV-5659 (DLI), 2007 WL 2126093, at *7 (E.D.N.Y. July 24, 2007). Here, Petitioner's allegations are conclusory, as he gives "no indication as to

42

which witnesses counsel should have presented, much less how any of these unidentified individuals would have changed the result of the proceeding." Id. (citing Madarikan, 1997 WL 597085, at *1). Moreover, Petitioner fails to demonstrate that counsel was, or should have been, aware of any witnesses who should have been called, or what testimony those witnesses would have provided. Unsubstantiated allegations of this sort are insufficient to establish that trial counsel's assistance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Furthermore, because the § 440.10 court made an adjudication of this claim on the merits, this court finds that Petitioner has not satisfied the "heavy burden" that, in the context of a § 2254 petition, is "enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under [AEDPA]." Eze, 321 F.3d at 112.

### i. *Ineffective Cross-examination*

Petitioner next argues that trial counsel was constitutionally ineffective because his "cross-examination of the lead Detective in the case consisted of a mere seven (7) pages in the transcript." (Def.-Appellant Br. at 18; see Am. Pet. ¶ 1.) Petitioner raised this claim during his direct appeal, and the Appellate Division subsequently found the claim to be meritless. See Bethea, 824 N.Y.S.2d at 129.

The entirety of Petitioner's argument in support of this claim is focused on the brief length of counsel's cross-examination of Detective Parsekian. Petitioner fails to suggest any substantive inadequacy in counsel's questioning, or how a more vigorous cross-examination would have produced useful testimony. Indeed, Petitioner "does not substantiate his argument that counsel was ineffective in failing to mount an adequate defense on his behalf by pointing to . . . any testimony of a government witness that went substantially unchallenged." Polanco v. United States, Nos. 99-CV-5739 (CSH), 94-CR-453 (CSH), 2000 WL 1072303, at *11 (S.D.N.Y. Aug. 3, 2000). Such "generalized criticism" attacking only the length of the cross-

examination "falls short of a colorable Sixth Amendment violation." Id.; see also

Lamberti, 1998 WL 118172, at *2 (rejecting Sixth Amendment claim where allegations "[did]

not identify counsel's asserted failings with any specificity or show how any different conduct

might have changed the result"). Petitioner's claim of ineffective cross-examination, supported

only by the transcript length of cross-examination, fails to satisfy the "heavy burden" that

Petitioner must meet under Strickland. See Eze, 321 F.3d at 112. Furthermore, as the Appellate

Division decided this claim on the merits, the Strickland standard is "enhanced by the added

hurdle posed by the highly deferential review accorded state court adjudications under

[AEDPA]." Id.

### j. Perfunctory Closing Argument

Petitioner argued during his direct appeal, and argues before this court, that trial counsel

was constitutionally ineffective because his closing argument "was a mere four (4) pages in the

transcript." (Def.-Appellant Br. at 18; see Am. Pet. ¶ 1.) The Appellate Division found this

claim to be meritless. See Bethea, 824 N.Y.S.2d at 129.

Although counsel's summation was brief, it addressed "all the important points the jury

should consider." Rickenbacker v. Warden, 550 F.2d 62, 66 (2d Cir. 1976). The very first issue

that counsel addressed was the fact that Bass recanted his identification of Petitioner as the

person who robbed him. (See Apr. 21 & 22, 2003, Trial Tr. at 95:23-96:17.) Counsel also

emphasized that Bass denied identifying the robber as "Gus" to Detective Parsekian. (Id.

at 97:7-8.) But counsel did not simply identify gaps in the prosecution's case. In fact, counsel

suggested to the jury that after Bass told Detective Parsekian that the robber's nickname was

"Pops," Parsekian supplied the name "Gus" as retribution for the complaint against Parsekian

filed by Petitioner's mother. (See id. at 96:21-97:9.)

44

Counsel also challenged Davis's testimony in closing. He underscored Davis's claims regarding his prior relationship with Petitioner, and he pointed out that Davis's story regarding the number of people present at the robbery had changed over time. (Id. at 97:17-98:6.) Thus, counsel raised arguments that effectively served to "sharpen and clarify the issues," as well as "point out the weaknesses of [his] adversar[y's] positions." Herring v. New York, 422 U.S. 853, 862 (1975). Consequently, trial counsel's performance cannot be said to have fallen "below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

Moreover, Petitioner has failed to substantiate his ineffectiveness claim by pointing to anything other than the length of counsel's statements in the transcript as evidence of constitutional inadequacy. (See Def.-Appellant Br. at 18.) Without identifying any subject that counsel neglected to explore, or explaining how a lengthier summation would have altered the outcome, Petitioner fails to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Therefore, this court agrees with the Appellate Division's determination that Petitioner's claim is meritless.

### k. Perfunctory Comments during Sentencing

Petitioner claims that trial counsel rendered ineffective assistance at sentencing because he "presented no mitigating circumstances, no report regarding [Petitioner], and counsel's statement on behalf of [Petitioner] consisted of ten (10) lines of text in the transcript." (Def.-Appellant Br. at 18-19; see Am. Pet. ¶ 1.) Petitioner claims counsel's performance was even more egregious because counsel's "pre-sentence report contain[ed] virtually no personal information." (Def.-Appellant Br. at 19 n.4.) Petitioner raised this claim on his direct appeal, and the Appellate Division found this claim to be meritless. See Bethea, 824 N.Y.S.2d at 129.

While counsel's remarks were brief by any measure—as were, in fact, the prosecution's—counsel argued for a sentence of "8 or 10 years" (compared to the 25 years Petitioner was facing on each charge, and ultimately received), on the basis of two clear arguments. (See Sentencing Tr. at 4:19-21.) Counsel first argued that in light of one victim's recantation and subsequent testimony that he had misidentified Petitioner as the robber, the prosecution had "tr[ied] the wrong person." (Id. at 4:15-17.) Second, counsel pointed out that Petitioner had "strong family support," that his family had always been there for him, and that "his family can help him readjust," allowing him to "become a productive citizen." (Id. at 4:18-22.)

The comments made at sentencing show that counsel's conduct did not fall below "an objective standard of reasonableness." Strickland, 466 U.S. at 688; see, e.g., United States v. Caicedo-Zamora, 96 F. App'x 46, 48 (2d Cir. 2004) (summary order) (finding counsel's performance was not constitutionally inadequate when it reflected a "reasonable strategic decision to urge the best result for his client" rather than to "encourage the court to consider lesser alternatives"); Perez v. Greiner, No. 01-CV-5522 (AKH), 2002 WL 31132872, at *8 (S.D.N.Y. Sept. 25, 2002) (noting that counsel "[f]aced with a judge who was thoroughly convinced of his client's guilt . . . wisely chose not to further alienate the judge with unsupportable and self-serving allegations"). In addition, Petitioner's suggestion that counsel failed to offer any mitigating evidence is flatly contradicted by the record. Not only did counsel explain that Petitioner was about to get married, but one of the major arguments counsel offered pertained directly to Petitioner's family, the support he would receive, and the resulting likelihood this presented him of becoming a productive member of society upon release. (Sentencing Tr. at 4:18-22.) Petitioner does not identify any other mitigating factors counsel

46

failed to raise, and "it does not appear that [P]etitioner had any particularly persuasive mitigating factors to offer at sentencing." Perez, 2002 WL 31132872, at *8.

Furthermore, Petitioner is unable to demonstrate "a reasonable probability" that his sentence would have been any lower but for counsel's allegedly ineffective assistance. Considering that counsel's remarks had the effect of persuading the sentencing court not to impose consecutive 25-year sentences on each of Petitioner's counts of conviction—which the court was authorized to do—Petitioner offers nothing to demonstrate what counsel could have done to have the sentence further reduced. (See Sentencing Tr. at 5:25-6:4.)

Thus, due to the "heavy burden" that Petitioner must meet under Strickland, in conjunction with Appellate Division's determination that this claim was meritless, this court is unable to grant Petitioner relief. See Eze, 321 F.3d at 112 (noting that a claim for ineffective assistance of counsel is a "heavy burden" that, in the context of a § 2254 petition, is "enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under [AEDPA]").

### *l.*     *Alleged Filing of False Vouchers for Work on Defendant's Case*

Petitioner argues that Sicks submitted false vouchers for work on Petitioner's case that he did not perform. (Mem. in Supp. of § 440.10 Mot. at 10, 12.) Petitioner argues that the submission of false vouchers in relation to his case rendered counsel ineffective and prejudiced his case. (Id. at 12-13.)

The § 440.10 court found Petitioner's allegations of false vouchers to be unsubstantiated, and even assuming, arguendo, that false vouchers had been filed, Petitioner had not demonstrated how that prejudiced the outcome of his own case. (See Pre-Hr'g Decision at 9.) Consequently, the § 440.10 court found the claim to be meritless. (Id.)

47

"It is not enough for [Petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding"; rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The § 440.10 court found that Petitioner failed to substantiate his claim by connecting Sicks's conduct to any prejudice in the outcome of his case. This court also finds that Petitioner is unable to show a "reasonable probability" that absent Sicks's alleged wrongful conduct, the result of the proceeding would have been different. Id. Therefore, considering the deference owed to the § 440.10 court's decision of a claim on the merits, see 28 U.S.C. § 2254(d), this court finds that the § 440.10 court was not unreasonable in finding that Petitioner had failed to satisfy the prejudice prong of Strickland.

### m.     *Alleged Conflict of Interest*

Petitioner argues that his Sixth Amendment right to effective assistance of counsel was violated due to an alleged per se or actual conflict of interest between Petitioner and Sicks, which adversely affected Sicks's performance. (Am. Pet. ¶ 16; Aff. in Supp. of Mot. to Vacate J. ¶¶ 52, 53; Mem. in Supp. of § 440.10 Mot. at 12-13.) Petitioner maintains that Sicks's testimony at an April 9, 2003, disciplinary hearing before the Advisory Council of the Appellate Division, demonstrates that Sicks was aware that the same prosecutor's office that was trying Petitioner was about to, or had already begun, prosecuting Sicks himself. (Aff. in Supp. of Mot. to Vacate J. ¶ 53; see also Tr. of Dep. of Eileen K. Ayvazian ("Ayvazian Dep.") (Not. of Mot. to Vacate J. at 66).) Petitioner argues that Sicks therefore had an ulterior motive to curry favor with that same office, causing Sicks to intentionally lose Petitioner's case in order to obtain favorable consideration for his own impending criminal case. (Aff. in Supp. of Mot. to Vacate J. ¶ 53.)

The earliest the alleged conflict of interest could have arisen was on April 9, 2003, when Sicks admitted before the Advisory Council that he had billed for services he did not perform,

received money as a result of that billing, and then kept such unearned money totaling in excess of $1,000. (Ayvazian Dep. at 2.) Petitioner's jury trial was conducted from April 15, 2003, until April 22, 2003. See supra Part I.B. It was not until July 13, 2004, more than one year after Petitioner's conviction, that Sicks pled guilty to criminal charges. (Sicks Plea Tr. (Not. of Mot. to Vacate J. at 68).)[16] Following his conviction of fourth-degree Grand Larceny on September 21, 2004, Sicks was disbarred on January 24, 2005. (Aff. in Opp'n to Mot. to Vacate J. at 3 n.2.)

The right to counsel under the Sixth Amendment entails "a correlative right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271 (1981) (citing Cuyler v. Sullivan, 446 U.S. 335 (1980); Holloway v. Arkansas, 435 U.S. 475 (1978)). Conflicts of interest fall into three categories: (1) per se conflicts; (2) actual conflicts; and (3) potential conflicts. See Martinez v. Kirkpatrick, 486 F. App'x 158, 160 (2d Cir. 2012) (summary order) (citing United States v. Williams, 372 F.3d 96, 102 (2d Cir. 2004)). Per se conflicts are so severe that they are deemed per se violations of the Sixth Amendment. Such conflicts are nonwaivable and do not require a showing that the defendant was prejudiced by the representation. Williams, 372 F.3d at 102 (citations omitted). Actual conflicts of interest occur when the interests of a defendant and his attorney "diverge with respect to a material factual or legal issue or to a course of action." Sullivan, 446 U.S. at 356 n.3 (internal quotation marks and citation omitted). "Potential conflicts of interest arise if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." Martinez, 486 F. App'x at 160

---

[16] The criminal complaint appended to Petitioner's memorandum in support of his motion to vacate judgment is signed by Eileen K. Ayvazian, who was then an Assistant District Attorney for the Kings County District Attorney's Office. (See Ayvazian Dep.) That complaint was dated July 12, 2004. Petitioner also appended the transcript of Sicks's guilty plea hearing on July 13, 2004. (See Sicks Plea Tr.) However, the guilty plea transcript shows that Robert T. Johnson, District Attorney, Bronx County, was representing the People at that plea. (Id.) This discrepancy between offices is of no matter for this court's analysis because the criminal complaint is sufficient to demonstrate that Sicks was prosecuted by the same office as Petitioner at some point in time.

(internal quotation marks and citation omitted). "To violate the Sixth Amendment, an actual conflict must adversely affect the attorney's performance, while a potential conflict must result in prejudice to the defendant." Id. at 160 (citing United States v. Levy, 25 F.3d 146, 152 (2d Cir. 1994)).

The Supreme Court has established different standards that defendants must meet in order to show a potential conflict, depending on whether an objection concerning the alleged conflict was raised at trial. When no objection was presented to the trial court, "a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel." Sullivan, 446 U.S. at 348. The Court went on to hold that in order to establish constitutionally ineffective assistance of counsel based upon an alleged conflict of interest, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Id. at 348 (emphasis added). The Second Circuit has held that "[t]he burden of proof rest[s] on [the petitioner] to show a conflict of interest by a preponderance of the evidence." Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000) (proceeding under § 2255). Furthermore, a petitioner cannot meet this burden with "speculative assertions of bias or prejudice." Triana, 205 F.3d at 41. Therefore, because Petitioner did not raise an objection at trial concerning a conflict of interest, he may not succeed on his claim merely by showing a potential or speculative conflict. Accordingly, the court will address only Petitioner's per se and actual conflict claims.

### i. Per Se Conflict of Interest

Petitioner argues that Sicks's criminal conduct was such that it created a per se conflict, and therefore Petitioner is not required to prove that he was prejudiced by Sicks's representation in order to establish a Sixth Amendment violation. (See Mem. in Supp. of § 440.10 Mot. at 13.) Specifically, Petitioner maintains that a per se conflict arose when Sicks testified to "engaging in

illegal conduct involving moral turpitude, engaging in conducting involving dishonesty, fraud, deceit, [etc.] . . . thereby [becoming] morally unfit to practice law and cease[ing] to be an attorney." (Aff. in Supp. of Mot. to Vacate J. ¶ 52.)

Although a defendant who raised no objection at trial must generally "demonstrate that an actual conflict of interest adversely affected his lawyer's performance," Sullivan, 446 U.S. at 348, a defendant need not make such a showing if the circumstances of the representation gave rise to a per se conflict of interest, see Holloway, 435 U.S. at 488-91. See also Martinez, 486 F. App'x at 160 ("Per se conflicts of interest are 'so severe' that they cannot be waived, and 'do not require a showing that the defendant was prejudiced by his representation.'" (quoting Williams, 372 F.3d at 102)).

The Second Circuit has observed that the per se conflict rule applies "when an attorney is implicated in the crimes of his or her client" because "the attorney cannot be free from fear that a vigorous defense should lead the prosecutor or the trial judge to discover evidence of the attorney's own wrongdoing." United States v. Fulton, 5 F.3d 605, 611 (2d Cir. 1993) (citations and internal quotation marks omitted). Petitioner attempts to analogize his case with Fulton. (See Mem. in Supp. of § 440.10 Mot. at 12-13.) This analogy fails because Fulton involved counsel who was criminally involved in the same enterprise as his client. 5 F.3d at 611. In this case however, Petitioner's counsel was at most involved in criminal activity that subsequently affected Petitioner's case; he was not criminally involved with Petitioner. Additionally, the burden is on Petitioner to demonstrate by a preponderance of the evidence that a conflict existed, and Petitioner offers no evidence to suggest that false vouchers were actually submitted in relation to his own case, or how that in itself would constitute a conflict of interest. In fact, the

51

§ 440.10 court determined that Petitioner failed to demonstrate such criminal activity in his own case, and this court does not find that ruling to be unreasonable. See 28 U.S.C. § 2254(d)(2).

Furthermore, the question for this court is whether the state court's decision unreasonably applied Supreme Court precedent. Petitioner cannot obtain habeas relief by establishing that the state court unreasonably applied Second Circuit precedent. Mask v. McGinnis, 252 F.3d 85, 90 (2d Cir. 2001). In contrast to the Second Circuit, the Supreme Court has recognized a per se conflict of interest in only one circumstance: "where defense counsel is forced to represent codefendants over his timely objection." Mickens, 535 U.S. at 168. The Court has not extended the per se rule to other conflicts. See id. at 173-74; see also Cardoza v. Rock, 731 F.3d 169, 183 n.8 (2d Cir. 2013). Therefore, "insofar as [Petitioner] argues that the state court's decision denying this claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" Cardoza, 731 F.3d at 183 n.8 (quoting 28 U.S.C. § 2254(d)(1) (emphasis added)), his argument fails.

Petitioner further argues that, after Sicks's testimony before the Advisory Council in conjunction with his criminal conduct, Sicks was no longer qualified as an attorney, thus rendering meaningful representation impossible. (Aff. in Supp. of Mot. to Vacate J. ¶ 52.)

The right to counsel is intended to ensure "representation by a licensed practitioner." Solina v. United States, 709 F.2d 160, 167 (2d Cir. 1983). When a defendant has been represented by someone who has never been licensed to practice law, that representation is per se ineffective. See United States v. Novak, 903 F.2d 883, 887 (2d Cir. 1990). The Second Circuit has cabined the scope of this per se conflict, however, holding that the "per se ineffectiveness rule is limited . . . to representation by any individual who, before representation in question, has

been disbarred in all jurisdictions where he or she was once admitted." Elfgeeh v. United States, 681 F.3d 89, 92-93 (2d Cir. 2012).

The record and Petitioner's own account demonstrate that Sicks was not disbarred until January 24, 2005, long after the end of Petitioner's trial. (Opinion & Order (Not. of Mot. to Vacate J. at 81).) Therefore, Petitioner's claim that there was a per se conflict—due to Sicks's "null and void" status as an attorney—is meritless as Sicks was licensed at the time of his representation of Petitioner.

ii.    Actual Conflict of Interest

In Sullivan, the Supreme Court held that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." 446 U.S. at 349-50. However, this presumption of prejudice has not been extended beyond the context of "multiple concurrent representation," where the conflict arises out of one lawyer's representation of multiple clients facing the same charges. Mickens, 535 U.S. at 174-75. Therefore, application of the Sullivan presumption to conflict-of-interest cases other than those involving multiple concurrent representation, is not clearly established federal law. See Torres v. Donnelly, 554 F.3d 322, 326 (2d Cir. 2009) ("Though the Sullivan presumption has been 'unblinkingly' applied to 'all kinds of alleged attorney ethical conflicts,' Sullivan's discussion of it does not support this expansive application." (quoting Mickens, 535 U.S. at 174)); United States v. Young, 315 F.3d 911, 914-15 n.5 (8th Cir. 2003) (holding that Sullivan applies to cases of "multiple or serial" representation, while Strickland applies to all other conflicts); Smith v. Hofbauer, 312 F.3d 809, 816 (6th Cir. 2003) (remarking that Sullivan has "never been extended by the Supreme Court to conflicts other than joint representation at trial" (citing Mickens, 535 U.S. at 175-76)); Corniel v. N.Y.S. Div. of Parole, No. 04-CV-2577 (KMW) (RLE), 2007 WL 1649895, at *8 (S.D.N.Y. June 6, 2007) (finding that conflict-of-

interest cases involving "multiple concurrent representation" are the only conflicts requiring application of the Sullivan presumption).

"[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." White v. Woodall, 134 S. Ct. 1697, 1706-07 (2014) (quoting Harrington, 562 U.S. at 103). Accordingly, on habeas review, conflict-of-interest claims involving counsel under indictment or investigation must satisfy the Strickland standard for proving prejudice, i.e., the petitioner must show "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Mickens, 535 U.S. at 166 (quoting Strickland, 466 U.S. at 694). The court therefore will determine whether: (1) an actual conflict existed; (2) the alleged conflict had an adverse effect on performance; and (3) the alleged conflict prejudiced Petitioner's case.

### 1. Alleged Actual Conflicts

Petitioner first contends that an actual conflict arose when Sicks became aware of the fact that he faced a criminal conviction and disbarment, coinciding with his April 9, 2003, "guilty plea" to the Advisory Council. (Mem. in Supp. of § 440.10 Mot. at 13.) According to Petitioner, it "belies sound rationale" how one could "conceive of Sicks's providing any meaningful representation at trial when he anticipated criminal conviction, disbarment and possible prison sentence." (Am. Pet. ¶ 18.) The court does not agree.

As with all habeas claims that have been adjudicated on the merits, Petitioner must establish that the state adjudication of this claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court . . . ." 28 U.S.C. § 2254(d)(1). However, there is no Supreme Court precedent

establishing that the concurrent prosecution of counsel and client for separate and independent charges is an actual conflict. See Martinez v. Kirkpatrick, No. 9:09-CV-900 (MAD), 2013 WL 2250372, at *13 (N.D.N.Y. May 22, 2013) (citing Corniel, 2007 WL 1649895, at *6). Furthermore, the record does not show any such concurrent criminal charges against Sicks and Petitioner at the time of trial, and Petitioner alleges only that criminal prosecution of Sicks was "inevitable." (Mem. in Supp. of § 440.10 Mot. at 10.) Additionally, the Second Circuit has held that "[p]rosecution or investigation by the same office, standing alone . . . is not grounds for finding an actual conflict." Skinner, 2003 WL 21386032, at *43 (citing United States v. Armienti, 313 F.3d 807, 814 (2d Cir. 2002)). As such, even if Sicks had faced criminal charges by the same office as Petitioner at the time of trial (which the record does not indicate was the case), this would not be sufficient to show an actual conflict of interest. Armienti, 313 F.3d at 814, 824-25.

Petitioner next argues that his and Sicks's interests "diverge[d] with respect to a material factual or legal issue or to a course of action" so as to create an actual conflict. Winkler, 7 F.3d at 307. (See Mem. in Supp. of § 440.10 Mot. at 13-14.) Petitioner alleges that Sicks "sold out defendant's case to give the prosecutor a conviction in exchange for a favorable consideration for probation." (Id. at 14.) Although Sicks was ultimately charged by the same district attorney's office that prosecuted Petitioner, the court finds that Sicks did not have an actual conflict of interest during his representation of Petitioner.

An actual conflict may arise when defense counsel is targeted for criminal investigation by the same prosecutor's office that is prosecuting his or her client. See Armienti 313 F.3d at 813 (finding fact that petitioner's attorney was "the target of a pending grand jury investigation" was one relevant factor to an actual conflict analysis, but was insufficient on its

own); cf. Moss v. United States, 323 F.3d 445, 472 (6th Cir. 2003) ("It is well-established that a conflict of interest may arise where defense counsel is subject to a criminal investigation."). However, the record in this case gives no indication that Sicks was actually under criminal investigation at the time of Petitioner's trial. In fact, the record shows that Sicks was not prosecuted until over one year after Petitioner's conviction. (See Ayvazian Dep.; Sicks Plea Tr.) Compare Levy, 25 F.3d at 156 ("[T]he pendency of the charges against [counsel] created a conflict for the lawyer in properly representing [defendant] during the pretrial stage of [defendant's] case."), with Skinner, 2003 WL 21386032, at *44 (citing fact that petitioner's counsel was not under indictment at the time of petitioner's trial as a reason not to find an actual conflict). See also United States v. Peterson, 233 F. Supp. 2d 475, 490 (E.D.N.Y. 2002) ("[I]n the instant case the government began its investigation of the defendant after [his counsel] was sentenced. In Levy, the Second Circuit highlighted this crucial distinction explaining that the conflict existed when charges were pending against trial counsel . . . ."). Furthermore, even if Sicks had been under criminal investigation at the time of Petitioner's trial, the record does not indicate that Sicks was aware of any such investigation that would have induced him to curry favor with the prosecutor's office. See Armienti, 313 F.3d at 813-14 ("[Counsel] did not believe himself to be under investigation at the time of the trial, making him no more or less likely" to attempt to influence the prosecution). Accordingly, the court determines that Petitioner has failed to demonstrate an actual conflict under this theory as well.

### 2. Adverse Effect

Assuming, arguendo, that Petitioner had been able to show an actual conflict, he would also have to show by a preponderance of the evidence that the conflict "actually affected the adequacy of his representation." Mickens, 535 U.S. at 168 (internal quotation marks and citation

omitted).  Petitioner must establish that the conflict "affected counsel's performance, as opposed to a mere theoretical division of loyalties." Id. at 171; see also Sullivan, 446 U.S. at 350 ("[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.").  "To prove the lapse in representation a defendant must demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." United States v. Fevrer, 333 F.3d 110, 116 (2d Cir. 2003) (internal quotation marks and citation omitted); cf. United States v. Blount, 291 F.3d 201, 211-12 (2d Cir. 2002) (rejecting a Sixth Amendment claim where a member of defendant's attorney's law firm had represented the government's witness in an unrelated matter, finding that defendant failed to show that the prior representation "had any effect" on defense counsel's performance); United States v. Salerno, 868 F.2d 524, 541 (2d Cir. 1989) (denying claim that counsel's involvement in two Department of Justice investigations created conflict of interest, where defendant "has not . . . in any way indicated what possible effect there may have been upon his lawyer's trial performance, or how these investigations were in any way related to the present case"); Skinner, 2003 WL 21386031, at *46 (finding that even assuming an actual conflict, there was no deficiency in performance that was caused by that conflict).

Petitioner's allegations that Sicks "sold out" Petitioner's case and "devised a diabolical scheme to present an offer to the prosecutor" are insufficient to demonstrate a nexus between the alleged conflict and his claims of ineffectiveness.  Cf. Levy, 25 F.3d at 157 (finding an actual conflict had an adverse effect on performance where "the defendant's attorney would have a strong personal desire to refrain from inquiring at the defendant's trial into certain matters that

57

were directly relevant to, and potentially exculpatory of, his client" because those inquiries could have potentially incriminated counsel). Furthermore, the court has already found Petitioner's assertions of Sicks's alleged ineffectiveness to be meritless. Accordingly, Petitioner has failed to establish that Sicks labored under an actual conflict or that any such conflict actually affected Sicks's performance.

### 3. Prejudice to Petitioner's Case

There is no "clearly established federal law, as determined by the Supreme Court of the United States" requiring a presumption of prejudice involving an attorney's conflict because of his or her own legal problems. See Skinner, 2003 WL 21386032, at *47. Thus, under the Strickland standard, Petitioner must show "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Mickens, 535 U.S. at 166 (quoting Strickland, 466 U.S. at 694).

Even assuming, arguendo, that Sicks had an actual conflict, there is no reasonable probability that any conflict of interest prejudiced the outcome of Petitioner's case.[17] First, as discussed above, none of Petitioner's specific complaints about Sicks's representation have any merit. Second, a review of the record reflects that trial counsel gave constitutionally sufficient representation to Petitioner by making appropriate pre-trial motions, adequately cross-examining witnesses, making appropriate objections and motions during trial, maintaining a consistent theme of misidentification of Petitioner throughout the trial, conducting a summation that highlighted the problems with the prosecution's case, and advocating for a more lenient sentence

---

[17] Professional standards may have obligated Sicks to notify Petitioner that he had just testified before the Advisory Council and that charges might be brought against him in the future. However, the Supreme Court has repeatedly held that "'breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel.'" Mickens, 535 U.S. at 176 (quoting Nix v. Whiteside, 475 U.S. 157, 165 (1986)); accord, e.g., United States v. Taylor, 139 F.3d 924, 930 (D.C. Cir. 1998) ("An ethical lapse is not the same as a conflict of interest . . . ."); United States v. Gallegos, 39 F.3d 276, 278 (10th Cir. 1994) ("[O]ur inquiry is not whether a state disciplinary rule for lawyers has been violated . . . but whether, everything considered, Appellant's counsel 'actively' represented conflicting interests.").

for Petitioner. See Jeremiah v. Artuz, 181 F. Supp. 2d 194, 203 (E.D.N.Y. 2002) (finding no ineffective assistance after examining "counsel's overall performance"); Rosario v. Bennett, No. 01-CV-7142 (RMB) (AJP), 2002 WL 31852827, at *33 (S.D.N.Y. Dec. 20, 2002) (report and recommendation) (denying claim of ineffective assistance, in light of court's review of counsel's adequate trial performance), adopted, 2003 WL 151988 (S.D.N.Y. Jan. 21, 2003).

Furthermore, the court cannot say that the § 440.10 court's determination of this claim on the merits (see Pre-Hr'g Decision at 9), "was contrary to, or involved an unreasonable application" of the Strickland standard, see 28 U.S.C. § 2254(d)(1). Accordingly, Petitioner's claim of ineffective assistance of counsel due to a conflict of interest is denied.

## B.    Trial Court Errors

Petitioner argues that the trial court erred in three respects: (1) failing to afford him a hearing on evidence of uncharged crimes (Def.-Appellant Br. at 13-16); (2) failing to conduct an adequate inquiry of certain jurors who claimed it would be difficult for them to render an impartial verdict (Mem. in Supp. of § 440.10 Mot. at 25); and (3) improperly denying his motion in limine to relieve counsel (Aff. in Supp. of Mot. to Vacate J. ¶ 43).

### 1.    Failure to Afford a Hearing on Evidence of Uncharged Crimes

Petitioner argued on direct appeal that the trial court committed reversible error when it failed to afford him a Ventimiglia hearing on the issue of the phone calls to Davis. (Def.-Appellant Br. at 14.) Petitioner argues that the trial court, in failing to afford a hearing, not only denied him his right to properly challenge the admissibility of the prejudicial evidence, but also failed to establish the true nature of the evidence as it would be presented to the jury. (Id. at 16.)

The Appellate Division rejected Petitioner's claim that the trial court improperly denied him a hearing on evidence of uncharged crimes, on the basis that the claim was not preserved for appellate review due to failure to raise a contemporaneous objection at trial. Bethea, 824

59

N.Y.S.2d at 129. The Appellate Division ruled on the merits in the alternative, concluding that the evidence was properly introduced as evidence of Petitioner's consciousness of guilt and that a proper limiting instruction was given. Id. For the reasons that follow, this court determines that Petitioner's claim is procedurally barred.

"[T]he independent and adequate state ground doctrine . . . applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). Here the independent and adequate state law ground for disposing of the claim is New York's contemporaneous objection rule. Bethea, 824 N.Y.S.2d at 128; see N.Y. Crim. Proc. Law § 470.05(2). The Second Circuit has found the contemporaneous objection rule to be an independent and adequate ground for decision. See, e.g., Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

Federal habeas review of a claim is precluded, even though a state court has considered the merits of the claim, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision." Harris v. Reed, 489 U.S. 255, 264 n.10 (1989). Although in this case the Appellate Division ruled on the merits, it did so after "clearly and expressly stat[ing] that its judgment rest[ed] on a state procedural bar." Harris, 489 U.S. at 263 (citations and internal quotation marks omitted); see Bethea, 824 N.Y.S.2d at 128 (finding defendant had not preserved his claim for appellate review, but "[i]n any event" the claim was meritless); cf. Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted."); Ojar v. Greene, No. 07-CV-3674 (JG), 2008 WL 428014, at *10 (E.D.N.Y. Feb. 15, 2008) (finding a state court that relied on a procedural bar and addressed the

merits "in any event," to have rested primarily on state procedural law). Therefore, Petitioner's claim is procedurally barred, and this court will not address the merits.

### 2. Failure to Conduct an Adequate Inquiry of Certain Jurors

Petitioner argued in his § 440.10 motion to vacate judgment that at the time of jury selection, the trial court failed to conduct further inquiry of prospective jurors whose statements raised a serious doubt about their ability to be impartial. (Mem. in Supp. of § 440.10 Mot. at 24-25.) Petitioner argues that as a consequence of the trial court's failure, he was denied his constitutional right to an unbiased and fair trial. (Id. at 25-26.)

This claim was first addressed by the § 440.10 court, which determined that Petitioner's challenges to the court's voir dire proceedings were "on-the-record claims" and were barred due to Petitioner's "failure to raise them on direct appeal." (Pre-Hr'g Decision at 11 (citing N.Y. Crim. Proc. Law § 440.10(2)(c)). The court further found that Petitioner had "failed to register any objection to the [trial] court's rulings on the record" and held that the claim was procedurally barred pursuant to § 440.10(3)(a). (Id.) The § 440.10 court therefore found Petitioner's claim of error by the trial court to be procedurally barred on the basis of both §§ 440.10(2)(c) and (3)(a).

A federal habeas court may not reach the merits if the state court's rejection of a federal claim "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman, 501 U.S. at 729. Thus, this court applies New York's procedural rules, pursuant to the exhaustion requirement for federal habeas. Clark v. Perez, 510 F.3d 382, 390 (2d Cir. 2008). Section 440.10(2)(c) is one of the procedural default rules that is independent and adequate, and thus serves as a procedural bar to review. See e.g., St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004) (per curiam); Perez, 510 F.3d at 391; Bennett, 353 F.3d at 140. Therefore, insofar as the § 440.10 court relied on § 440.10(2)(c) as a procedural bar, this court is precluded from addressing the claim on the merits.

61

Furthermore, the alternative holding of the § 440.10 court—denying Petitioner's claim pursuant to § 440.10(3)(a) because it could have been raised on appeal (see Pre-Hr'g Decision at 11)—also serves as an independent and adequate state ground that procedurally bars this court from reviewing that claim. See Coons v. Superintendent, No. 11-CV-1502 (CFH) (NAM), 2014 WL 316757, at *7 (N.D.N.Y. Jan. 28, 2014) ("[Section] 440.10(3)(a) . . . constitutes an independent and adequate state law ground."); Witt v. Racette, No. 10-CV-9180 (JPO), 2012 WL 3205177, at *8 (S.D.N.Y. Aug. 7, 2012) ("Federal courts have recognized 440.10(3)(a) as an adequate and independent procedural bar that precludes federal habeas review."); Huggins v. Girdick, No. 03-CV-3248 (VVP) (NG), 2007 WL 433397, at *8 (E.D.N.Y. Feb. 7, 2007) (collecting cases); Collins v. Superintendent, No. 04-CV-4672 (RPP), 2006 WL 1114053, at *3 (S.D.N.Y. Apr. 26, 2006) (same); Cameron v. New York, No. 01-CV-9988 (GWG), 2002 WL 31898076, at *7 (S.D.N.Y. Dec. 30, 2002) (report and recommendation) ("[Section] 440.10(3)(a) . . . constitutes an adequate and independent state ground that prevents a federal court from reviewing the merits of the claim."), adopted, Order (S.D.N.Y. Jan. 5, 2004) (Dkt. 33).

Therefore, the § 440.10 court refused to consider the claim on the basis of an adequate and independent state law ground. Accordingly, this court is barred from reviewing this claim.

### 3. Denial of Motion to Relieve Counsel

Petitioner argued in his § 440.10 motion to vacate judgment, and now in his Amended Petition, that the trial court was arbitrary, capricious, and abused its discretion when it denied Petitioner's motion in limine to relieve Sicks as trial counsel, resulting in the deprivation of his constitutional right to choice of counsel. (Mem. in Supp. of § 440.10 Mot. at 16.) The § 440.10 court found this claim procedurally barred pursuant to N.Y. Crim. Proc. Law § 440.10(2)(c), but the court also made a ruling on the merits. (See Pre-Hr'g Decision 11-12.)

A federal habeas court may not reach the merits if the state court's rejection of a federal claim "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman, 501 U.S. at 729. However, a court on "direct review of state court judgments, will presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" Id. at 735-36 (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)). Because the § 440.10 court did not "clearly and expressly" rely on § 440.10(2)(c) as an independent and adequate state ground for decision, this court is not barred from federal habeas review. See Harris, 489 U.S. at 266. This court therefore addresses this claim on the merits, but finds, for the reasons set forth below, that Petitioner is not entitled to relief.

The Sixth Amendment, which applies to the states through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy . . . the Assistance of Counsel for his defence." U.S. Const. amend VI. "While the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159 (1988). The Sixth Amendment also does not "guarantee a meaningful relationship between an accused and his counsel." Morris v. Slappy, 461 U.S. 1, 2 (1983). Thus, "[a] court need go no further than ensuring that defendant has an 'effective advocate.'" Allison v. Khahaifa, No. 10-CV-3453 (KAM), 2011 WL 3298876, at *9 (quoting Wheat, 486 U.S. at 160). "A defendant with assigned counsel cannot decide for no good cause

on the eve or in the middle of trial that he will have another attorney represent him." United States v. Calabro, 467 F.2d 973, 986 (2d Cir. 1972).

When reviewing on direct appeal a federal district court's denial of a motion for reassignment of counsel, the Second Circuit reviews that decision for abuse of discretion. See United States v. John Doe #1, 272 F.3d 116, 122 (2d Cir. 2001). The circuit court applies a four-factor test to evaluate whether the district court abused its discretion: (1) "whether defendant made a timely motion requesting new counsel"; (2) "whether the trial court adequately inquired into the matter"; (3) "whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense"; and (4) "whether the defendant substantially and unjustifiably contributed to the breakdown in communication."[18] Id. at 122-23 (citations and internal quotation marks omitted). Although AEDPA requires this court to apply a standard of review that is more deferential to the state court's conclusions than the abuse-of-discretion standard, see 28 U.S.C. § 2254(d), courts have found the John Doe factors to be "instructive in determining whether the state courts' adjudication of [a] Sixth Amendment claim was a reasonable application of an established constitutional right." Allison, 2011 WL 3298876, at *10. This court therefore employs the John Doe test for this instructive purpose, mindful that the factors must be interpreted in the context of AEDPA's highly deferential framework. See e.g., Lopez, 2012 WL 1865502, at *6.

---

[18] The Second Circuit has not directly addressed whether its stringent standards for reassignment of counsel during trial, as well as its four-factor test for reviewing denials of motions for reassignment, apply in the same fashion where, as here, the defendant brings the motion for reassignment at some point before trial. The Circuit has implied, however, that these standards do apply to pre-trial motions, and that the timeliness of the defendant's motion affects only the outcome of the application of the standards, not whether the test applies in the first place. See, e.g., John Doe, 272 F.3d at 123 (repeating the Second Circuit's standards for reassignment of counsel at trial; noting that "the government d[id] not dispute the timeliness of [defendant's] motions for substitution"; and then stating that "whether [defendant's] motion was timely made is but one of the four factors that this Court will apply and, even treating the motion as timely, application of the remaining three factors demonstrates that there was no abuse of discretion"). In any event, to the extent that less rigorous standards should apply to motions for reassignment made well before trial, these standards have not yet been established in federal law (let alone by the Supreme Court), and thus Petitioner would not be entitled to benefit from them for the purposes of his Petition. See 28 U.S.C. § 2254(d).

*a.*    *Timeliness of Petitioner's Motion*

On April 15, 2003, just before jury selection, Petitioner requested an adjournment of "at least" three weeks so that he could retain private counsel. (Apr. 15, 2003, Trial Tr. at 8:8-10.) The first John Doe factor—timeliness of the motion for reassignment—therefore weighs against Petitioner. See, e.g., United States v. Blaize, 178 F. App'x 43, 44 (2d Cir. 2006) (summary order) (finding petitioner's motion not timely because, among other reasons, it was made "a few days before trial was to begin"); Soltero v. Kuhlman, No. 99-CV-10765 (GEL), 2000 WL 1781657, at *3-4 (S.D.N.Y. Dec. 4, 2000) (finding reasonable the trial court's denial of petitioner's request for reassignment of counsel made two weeks before trial due in part to the untimely nature of the request). The Second Circuit has held that, on the eve of trial, a defendant should only be permitted to substitute court-appointed counsel under "unusual circumstances . . . such as a complete breakdown of communication or an irreconcilable conflict" between the defendant and counsel. United States v. Schmidt, 105 F.3d 82, 89 (2d Cir. 1997). While Petitioner claims Sicks failed to consult with him about trial strategy as well as his claim of actual innocence (Am. Pet. ¶ 17), Petitioner has failed to show that this amounted to a "complete breakdown of communication or irreconcilable conflict" with his counsel. For these reasons, Petitioner's motion was untimely.

*b.*    *Trial Court's Inquiry into the Matter*

The second factor the court considers with respect to the state court's adjudication of Petitioner's motion for reassignment is "whether the trial court adequately inquired into the matter." John Doe, 272 F.3d at 122.

At trial, defense counsel informed the court that Petitioner wished to retain private counsel. (Apr. 15, 2003, Trial Tr. 8:8-10.) The following exchange occurred just before jury selection began:

65

MR. SICKS: My client is now asking for an adjournment for at least three weeks so he can retain private counsel.

THE COURT: I see. That's denied. Call in the panel, please.

(Id. at 8:8-12.)

A defendant does not have an absolute right to reject assigned counsel and demand another, once trial has begun, or on the eve of trial. See Schmidt, 105 F.3d at 89 ("A trial court may require a defendant to proceed to trial with counsel not of defendant's choosing; although it may not compel defendant to proceed with incompetent counsel."); United States v. DiTommaso, 817 F.2d 201, 219 (2d Cir. 1987) (holding that criminal defendant's right to counsel of choice is not absolute); United States v. Calabro, 467 F.2d 973, 986 (2d Cir. 1972) ("A defendant with assigned counsel cannot decide for no good cause on the eve or in the middle of trial that he will have another attorney represent him."); United States ex rel. Baskerville v. Deegan, 428 F.2d 714, 716 (2d Cir. 1970) (holding that there is no absolute right to counsel of one's choosing and a mere denial of a continuance on opening day of trial to substitute counsel did not deprive a defendant of any constitutional right). In particular, the Second Circuit has cautioned against allowing the use of a request for reassignment of counsel as a stalling tactic. United States v. Llanes, 374 F.2d 712, 717 (2d Cir. 1967) ("Judges must be vigilant that requests for appointment of a new attorney on the eve of trial should not become a vehicle for achieving delay.").

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process." Ungar v. Sarafite, 376 U.S. 575, 589 (1964). "[B]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." Morris, 461 U.S.

at 11-12 (quoting Ungar, 376 U.S. at 589). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Ungar, 376 U.S. at 589. Thus, courts have found that "notwithstanding concern over the lack of a more thorough judicial inquiry when faced with defense counsel's application to substitute new counsel . . . the timing of the application to substitute counsel weighs against the finding of a Sixth Amendment violation." Stephens v. Costello, 55 F. Supp. 2d 163, 170 (W.D.N.Y. 1999) (finding a motion for reassignment made "only moments before jury selection was scheduled to commence," to be one reason that justified a "curt" denial of the motion by the trial judge); see also Jennings v. Strack, No. 93-CV-1681 (SWK), 1994 WL 163944, at *9 (S.D.N.Y. Apr. 25, 1994) (finding that where application for new counsel came on the morning of trial, trial judge "reasonably concluded" that defendant was merely trying to delay proceedings), aff'd, 47 F.3d 1158 (2d Cir. 1995); Byas v. Keane, No. 97-CV-2789 (SAS), 1999 WL 608787, at *10 (S.D.N.Y. Aug. 12, 1999) (finding that motion for reassignment made immediately prior to a pre-trial hearing rendered it all the more likely that it was simply a "vehicle for achieving delay" (quoting Llanes, 374 F.2d at 717)).

Petitioner had ample opportunity to retain private counsel during the time between his indictment and trial, which included a delay from January 22, 2003, to April 15, 2003, due to the holding of a suppression hearing. (January 22, 2003, Pre-Trial Hr'g Tr. ("Pre-Trial Tr.") (Dkt. 4-3) at 1; Apr. 15, 2003, Trial Tr. at 1.) Nevertheless, Petitioner requested an adjournment of "at least three weeks" in order to retain private counsel, just moments before the prospective jurors were called in. Petitioner's counsel also failed to present any reason to the trial judge for why a change in counsel was necessary. The court finds that the § 440.10 court's determination

67

that the request for continuance was a "dilatory tactic" and that the trial court "properly exercised its discretion" was not unreasonable. Thus, the second John Doe factor also weighs somewhat against Petitioner.

<blockquote><i>c.</i>     <i>Impact on Communication between Petitioner and Counsel</i></blockquote>

The third John Doe factor is "whether the conflict between the defendant and his attorney was so great that is resulted in a total lack of communication preventing an adequate defense." 272 F.3d at 122.

Petitioner argues that he moved the court to relieve Sicks because of "Sicks's gross incompetence and ineffective assistance of counsel." (Mem. in Supp. of § 440.10 Mot. at 16.) The § 440.10 court found the record indicated that counsel provided competent performance by raising appropriate objections, introducing beneficial evidence, attempting to undermine the credibility of prosecution witnesses, and employing a strategy of maintaining a theme of misidentification of Petitioner throughout trial. (Pre-Hr'g Decision at 8-9.) Furthermore, this court has already found Petitioner's claims of ineffective assistance of trial counsel to be largely meritless. Therefore, this court finds reasonable the § 440.10 court's determination that trial counsel provided an adequate defense, and this factor also weighs against Petitioner. See 28 U.S.C. § 2254(d)(1)-(2); see also John Doe, 272 F.3d at 125 (finding that since the record showed counsel making motions, cross-examining witnesses, and making numerous objections, the court could not say that a conflict prevented an adequate defense); cf. United States v. Simeonov, 252 F.3d 238, 242 (2d Cir. 2001) (holding that because the transcript "reveale[ed] that [counsel] advocated aggressively on his client's behalf, both in cross-examining witnesses and in his closing remarks . . . the district court did not abuse its discretion in its decision that the conflict between [defendant] and his attorney was not so great that it had resulted in a total lack of communication preventing an adequate defense" (internal quotation marks and citation

omitted)); Byas, 1999 WL 608787, at *9 (finding no good cause for reassignment due to lack of communication because "counsel was entirely familiar with the facts and principles of the case such that he was able to file pre-trial motions, conduct cross-examination of witnesses and provide a cogent defense").

### d. Petitioner's Contribution to Breakdown in Communication

The fourth factor, which examines whether the defendant "substantially and unjustifiably contributed to the communication breakdown" is inapplicable, and it therefore weighs neither in favor of, nor against, Petitioner. See Cantoni v. Leclair, No. 12-CV-4353 (VEC) (MHD), 2015 WL 518226, at *4 (S.D.N.Y. Feb. 9, 2015).

*  *  *  *

For the reasons set forth above, this court finds Petitioner's choice-of-counsel claim to be meritless and further finds that the § 440.10 court's rejection of Petitioner's claim was not "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d).

### C. Prosecutorial Misconduct

Petitioner argues that the prosecutor committed misconduct by eliciting false testimony from Bass at trial, and by failing to investigate Bass's recantation letter. (Mem. in Supp. of § 440.10 Mot. at 7.) Petitioner maintains that this misconduct was so egregious as to violate his due process rights. (Id.)

The § 440.10 court found the claim that the prosecutor had allegedly elicited false testimony from Bass to be procedurally barred pursuant to § 440.10(2)(c). (Pre-Hr'g Decision at 9-10.) The court went on to find that the claim was also meritless. (Id. at 10.) The court further found the claim that the prosecutor failed to investigate Bass's recantation letter to be

unfounded, unsubstantiated, and contradicted by the court record, pursuant to N.Y. Crim. Proc. Law §§ 440.30(4)(b) and (d). (Id. at 10.)

1.    Procedural Bar

The § 440.10 court's decision addressed both a procedural bar and the merits of the claim, without first establishing it was doing so in the alternative or making a clear statement it was relying on a state law ground. As such, the decision must be treated as having been made on the merits. See e.g., Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) (Sotomayor, J.) (finding that if there was only a reference to a state procedural bar, such ambiguity would be insufficient to preclude habeas review); Mateo v. Fishkill Corr. Facility, No. CV-04-3420 (DGT), 2007 WL 2362205, at *4-5 (E.D.N.Y. Aug. 14, 2007) (finding a state court decision that found a claim procedurally barred and then also meritless to not "contain a clear statement of reliance on a state procedural bar," and therefore treating the decision as having been made on the merits (quoting Jimenez v. Walker, 458 F.3d 130, 145 (2d Cir. 2006))). Treating the § 440.10 court's determination as a merits-based decision is in keeping with the Supreme Court's command that a state court's reliance on a state procedural ground must be clear from the face of the opinion before a federal court finds that a habeas petitioner's claim was not decided on the merits. See Walker, 458 F.3d at 137-38 (reviewing Harris and Coleman requirements); see also Long, 463 U.S. at 1040-41 (holding that when adequacy and independence of state law ground is not "clear from the face of the opinion," federal courts must presume that the state court decided as it did because it was required to do so by federal law). Therefore, to the extent that the § 440.10 court relied on §§ 440.30(4)(b) and (d) as a basis for its decision, neither of those provisions are a procedural bar to habeas review. See supra Part III.A.1.

This court finds that the § 440.10 court's decision was an adjudication on the merits, notwithstanding the fact that the § 440.10 court cited § 440.30(4)(d) in rejecting Petitioner's claim. See, e.g., Warren v. Goord, No. 06–CV–1423, 2013 WL 1310465, at *5 (E.D.N.Y. Mar. 28, 2013) (finding that where trial court "held that some of defendant's contentions were . . . unsupported by anything but petitioner's allegations of fact and were thus barred by CPL § 440.30(4)(d)," this decision was merits-based) (citation omitted); Skinner, 2003 WL 21386032, at *28 ("[B]ecause [] § 440.30 refers to the procedures for deciding [] § 440 motions, and [] § 440.30(4) specifically states that '[u]pon considering the merits of the motion, the court may deny it without conducting a hearing' if certain conditions exist, that is a merits based decision, not a procedural bar."); see also, e.g., Carrion v. Smith, 549 F.3d 583, 587 (2d Cir. 2008); Garcia v. Portuondo, 104 F. App'x 776, 779 (2d Cir. 2004) (summary order); Lopez v. Ercole, No. 09-CV-1398 (AJP) (PAC), 2010 WL 1628994, at *19 (S.D.N.Y. Apr. 21, 2010) (report and recommendation), adopted, 2014 WL 285079 (S.D.N.Y. Jan. 27, 2014).

Because the § 440.10 court's decision was merits-based, this court is not barred from reviewing Petitioner's claims of prosecutorial misconduct. However, any review must afford the deference required by § 2254(d). See Jimenez, 458 F.3d at 146.

      2.    Merits

A petitioner faces a high bar in order to obtain habeas relief based on a claim of prosecutorial misconduct. Absent a showing that the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process," federal habeas relief is unavailable. Darden v. Wainwright, 477 U.S. 168, 169 (1986). To find this sort of misconduct, courts examine "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." Floyd v.

Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (internal quotation and citations omitted). In line with these precedents, a habeas court must determine whether any of the allegedly improper comments were "minor aberrations in a prolonged trial" as opposed to "cumulative evidence of a proceeding dominated by passion and prejudice." United States v. Socony–Vacuum Oil Co., 310 U.S. 150, 240 (1940); see also United States v. Biasucci, 786 F.2d 504, 514 (2d Cir. 1986) ("[C]riminal convictions are not to be lightly overturned on the basis of a prosecutor's inappropriate comments standing alone in an otherwise fair proceeding." (citing United States v. Young, 470 U.S. 1 (1985))); Gatto v. Hoke, 809 F. Supp. 1030, 1040 (E.D.N.Y. 1992) ("A criminal conviction will not be overturned on the basis of a prosecutor's remarks in an otherwise fair proceeding."). Because Petitioner alleges two instances of prosecutorial misconduct, this court will look at the cumulative effect they had, rather than the effect of each alone. See Floyd, 907 F.2d at 357 ("While each instance of prosecutorial misconduct, standing alone, might not justify reversal, the effect of all of them requires it."); Wilson v. Heath, No. 10-CV-3814 (DLI) (LB), 2013 WL 5530673, at *7 (E.D.N.Y. Sept. 30, 2013) ("The effect of each instance of prosecutorial misconduct should be judged cumulatively.").

a.    *Proper Impeachment*

Federal habeas relief is generally unavailable for claims of mere error concerning state evidentiary determinations. See Estelle v. McGuire, 502 U.S. 62, 67-68, 71-72 (1991). Rather, the error must be of such magnitude as to deprive the petitioner of a protected constitutional right. Ponder v. Conway, 748 F. Supp. 2d 183, 199 (W.D.N.Y. 2010).

According to N.Y. Criminal Procedure Law § 60.35(1), "When, upon examination by the party who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove the position of such party, such party may introduce evidence that such witness has previously made either a written statement signed by him or an oral

statement under oath contradictory to such testimony." A material issue in this case was Petitioner's identity as the robber. Thus, Bass's testimony at trial—that Petitioner was not the person whom he had picked out of a lineup (Apr. 21 & 22, 2003, Trial Tr. 34:21-25)—clearly tended to disprove the position of the prosecution. Therefore, consistent with state evidentiary rules, the prosecution was properly allowed to introduce the limited portion of Bass's grand jury testimony in which he had identified Petitioner in a lineup as the person who had robbed him. (Id. at 36:7-38-11.). See also Cusamano v. Donelli, No. 06-CV-6047 (PAC) (THK), 2007 WL 7216166, at *14 (S.D.N.Y. Dec. 19, 2007) (report and recommendation) ("As a general rule, the credibility of any witness can be attacked by showing an inconsistency between his testimony at trial and what he has said on previous occasions." (citing People v. Duncan, 385 N.E.2d 572, 576 (N.Y. 1978))), adopted, 2010 WL 2653653 (S.D.N.Y. July 1, 2010). Therefore, as there was no error in state evidentiary law, the prosecution did not commit misconduct, and it cannot be said that Petitioner was deprived of a protected constitutional right.

### b. Failure to Investigate Bass's Recantation

Petitioner argues that the prosecution had a legal obligation to conduct an investigation regarding Bass's recantation and to move to dismiss the robbery charges against Petitioner upon being informed of material exculpatory evidence. (Mem. in Supp. of § 440.10 Mot. at 7.) Bass testified that he did not give the letter to the prosecution or the police, but rather gave it to Petitioner's family so that it could be given to Petitioner's lawyer. (Apr. 21 & 22, 2003, Trial Tr. at 47:9-17.) Bass testified that he did not contact the prosecutor or the police to report seeing the perpetrator. (Id. at 47:2-8.) Bass further testified that he did not talk to the prosecutor about the recantation letter until after he had been subpoenaed. (Id. at 47:9-48:7.) Furthermore, the record demonstrates that the prosecutor did talk to Bass about the substance of the letter. (Id. at 48:2-7.)

Therefore, Petitioner's claim that the prosecution did not investigate Bass's recantation is plainly contradicted by the record and meritless.

Accordingly, because both of Petitioner's claims of prosecutorial misconduct are meritless, this court finds that any "cumulative effect" they both may have had did not deprive Petitioner of his right to a fair trial. See Floyd, 907 F.2d at 357.

### D.     Ineffective Assistance of Appellate Counsel

Petitioner argued in his application for a writ of error coram nobis to vacate the decision and order of the Appellate Division, Bethea, 824 N.Y.S.2d 128, that he had received ineffective assistance of appellate counsel. Petitioner maintained that his appellate counsel was ineffective for failing to raise the following claims: (1) the evidence was legally insufficient to establish Petitioner's guilt beyond a reasonable doubt; (2) the trial court erroneously allowed the prosecution to impeach one of its witnesses with that witness's grand jury testimony and failed to immediately give corresponding limiting instructions; (3) the prosecutor engaged in misconduct that deprived Petitioner of a fair trial; (4) Petitioner was denied his right to choice of counsel; and (5) the hearing court improperly denied Petitioner's motion to suppress his pre-Miranda statements. (See generally Def.'s Coram Nobis Mem.) Finally, Petitioner claims his appellate counsel was ineffective because counsel raised a mischaracterized and unpreserved Ventimiglia claim. (Bethea Coram Nobis Aff. ¶¶ 12, 15-17.) Petitioner makes these same arguments to this court. (Am. Pet.)

The Appellate Division reviewed Petitioner's application on the merits and determined that Petitioner had failed to establish that his appellate counsel was ineffective. Bethea, 862 N.Y.S.2d at 296. Because the state court determined that Petitioner was not deprived of effective

assistance of appellate counsel, this court is limited to determining whether the state court applied the governing law unreasonably. See 28 U.S.C. § 2254(d)(1).

A criminal defendant has the right to the effective assistance of counsel on the direct appeal of his conviction. Evitts v. Lucey, 469 U.S. 387, 395-96 (1985). The two-pronged test of Strickland, 466 U.S. at 668, governs claims of ineffective assistance of appellate counsel, just as it does claims of ineffective assistance of trial counsel. In order to establish ineffectiveness of appellate counsel, Petitioner may show that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). However, this does not compel counsel to press every nonfrivolous argument, even if urged upon him by his client. See Jones v. Barnes, 463 U.S. 745, 754 (1983) ("For judges to . . . impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the [] goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard." (footnote omitted)). The Supreme Court has further explained that appellate counsel "should not" raise every nonfrivolous claim on appeal, but rather should select among them in order to maximize the likelihood of success. Smith v. Robbins, 528 U.S. 259, 288 (2000). Thus, this court is reluctant to second-guess the reasonable professional judgments of appellate counsel on issues of tactical decision such as which claims to raise on appeal. See Barnes, 463 U.S. at 754; Strickland, 466 U.S. at 690-91 (noting that appellate counsel's strategic choices with regard to which claims to bring on appeal are "virtually unchallengeable").

### 1. Sufficiency of Evidence

Petitioner argues that the evidence at trial was legally insufficient to establish his identity as the perpetrator of the robberies beyond a reasonable doubt and that the verdict was against the weight of the evidence, and that his appellate counsel was ineffective for failing to raise these

claims. (Def.'s Coram Nobis Mem. at 13, 21-25.) Petitioner argues that these claims were preserved for appellate review when his trial counsel moved for a trial order of dismissal on the ground that the prosecution failed to establish a prima facie case. (Id.; see also Apr. 21 & 22, 2003, Trial Tr. 86:15-87:8.)

The New York Court of Appeals has held that to preserve for appellate review a challenge to the legal sufficiency of a conviction, a defendant must move for a trial order of dismissal, and the argument must be "specifically directed" at the error being urged. People v. Hawkins, 900 N.E.2d 946, 950 (N.Y. 2008). The Court of Appeals has repeatedly made clear that general motions simply do not create questions of law that require appellate review. Id. (footnote and citations omitted).

Here, Petitioner's trial counsel made a general motion to dismiss at the end of trial and did not identify the precise defect Petitioner claims his appellate counsel should have raised on appeal; in other words, trial counsel's objection was not "specifically directed" at the alleged error. See People v. Gray, 652 N.E.2d 919, 921 (N.Y. 1995) ("[E]ven where a motion to dismiss for insufficient evidence [is] made, the preservation requirement compels that the argument be 'specifically directed' at the alleged error."). Even if trial counsel's motion to dismiss due to failure to make out a prima facie case were construed as a motion to dismiss for insufficient evidence, Petitioner's claims still would not have been preserved for appellate review. Id. Therefore, this claim was not preserved for appellate review, and appellate counsel cannot be deemed ineffective for failing to raise it. Aparicio v. Artuz, 269 F.3d 78, 96 (2d. Cir 2001) (finding that appellate counsel was not ineffective for failing to make a claim waived by trial counsel's failure to raise objection). As the claim would have been procedurally barred if raised, no relief would have been granted to Petitioner, and, as such, he is unable to establish prejudice

pursuant to Strickland. See 466 U.S. at 694. With this in mind, the court cannot find that the Appellate Division was "objectively unreasonable" in denying Petitioner's claim. See Ryan, 303 F.3d at 245.

### 2. Impeachment of Bass

Petitioner claims that the trial court improperly allowed the prosecution to impeach Bass with Bass's grand jury testimony and subsequently failed to give a proper limiting instruction to the jury, and that his appellate counsel was ineffective for failing to raise this claim on appeal. (Def.'s Coram Nobis Mem. at 16-20.)

The court has already found the impeachment of Bass to be proper and without error. See supra Part III.C.2.a. The court likewise finds that Petitioner is unable to satisfy either prong of Strickland. Furthermore, appellate counsel cannot be found ineffective for omitting a claim which had little likelihood of success on appeal, and Petitioner cannot be prejudiced as a result of appellate counsel's failure to raise meritless claims. See Mayo, 13 F.3d at 534 ("To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that [his] claim would have been successful." (internal quotation marks omitted)). Accordingly, the court finds that the Appellate Division's determination was not contrary to clearly established federal law, and therefore Petitioner is not entitled to relief on this claim. See 28 U.S.C. § 2254(d)(1).

### 3. Prosecutorial Misconduct

Petitioner claims that the prosecutor engaged in misconduct that deprived him of a fair trial and that his appellate counsel was ineffective for failing to raise this claim on appeal. (Def.'s Coram Nobis Mem. at 26-33.) Petitioner argues that the prosecutor committed error by: (1) improperly eliciting evidence that a friend of Petitioner had called one of the victims and told him not to go to court (id. at 26-29); (2) failing to disclose Bass's recantation (id. at 30);

(3) failing to investigate Bass's recantation (id. at 30); and (4) mischaracterizing evidence in summation (id. at 31). This court notes that the Appellate Division determined this claim on the merits, and therefore Petitioner may only obtain relief if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington, 562 U.S. at 102. For the following reasons, the court finds that Petitioner has failed to meet this burden and therefore is not entitled to relief.

### a. Eliciting of Evidence

The Appellate Division determined on Petitioner's direct appeal that Davis's testimony regarding a phone call from one of Petitioner's friends was properly introduced as evidence of Petitioner's consciousness of guilt. See Bethea, 824 N.Y.S.2d at 129. Therefore, even if this court were to find that it was unreasonable for Petitioner's appellate counsel to fail to bring this claim, the fact that the Appellate Division determined the claim to be meritless demonstrates that Petitioner was not prejudiced by appellate counsel's alleged failure. See Strickland, 466 U.S. at 694 (holding that "prejudice" requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

### b. Disclosure and Investigation of Bass's Recantation

The court has already found meritless the claim that the prosecution committed misconduct by failing to investigate Bass's recantation. See supra Part III.C.2.b. Furthermore, Petitioner's claim that the prosecution violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose Bass's recantation to the defense, is plainly contradicted by the record. In order to establish a Brady violation, a defendant must show that: "(1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." United States v.

Coppa, 267 F.3d 132, 140 (2d Cir. 2001) (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).

As noted previously, see supra Part III.C.2.b, Bass did not give his recantation letter to the police or the prosecution, but rather gave it to Petitioner's family so that it would go to his lawyer. (Apr. 21 & 22, 2003, Trial Tr. at 47:9-14.) Furthermore, Petitioner's attorney entered Bass's recantation letter into the record as a trial exhibit. (Id. at 51:7-52:4.) Therefore, it is clear that Bass's recantation was neither willfully nor inadvertently suppressed, and Petitioner has suffered no prejudice.

### c. Mischaracterization of Evidence in Summation

Petitioner's complaint regarding the conduct of the prosecutor during summation was unpreserved for appeal because it was not raised at trial. See N.Y. Crim. Proc. Law § 470.05(2) (contemporaneous objection rule). As noted previously, appellate counsel cannot be deemed ineffective for failing to make a claim which was waived by trial counsel's failure to raise an objection. Artuz, 269 F.3d at 96.

Alternatively, this claim is also meritless because Petitioner's allegations are not supported by the record. (Cf. Def.'s Coram Nobis Mem. at 31 (stating that the prosecutor misstated the record and mischaracterized the evidence that both Bass and Davis filed complaints against Petitioner with the police); Pre-Trial Tr. at 5:16-7:7 (line of questioning which includes Detective Parsekian referencing a complaint report and subsequently referring to Bass and Davis as "complainants").) Furthermore, because Petitioner's claims of prosecutorial misconduct are meritless, any error would have been harmless. See Garofolo v. Coomb, 804 F.2d 201, 206 (harmless error doctrine applicable to claim of prosecutorial misconduct involving statements to the jury (citing United States v. Hasting, 461 U.S. 499, 510-12 (1974))); Gatto, 809 F. Supp.

at 1040 ("A criminal conviction will not be overturned on the basis of a prosecutor's remarks in an otherwise fair proceeding." (citing Young, 470 U.S. at 11)).

Accordingly, the court finds meritless all of Petitioner's claims of appellate counsel's ineffectiveness based on failure to raise claims of prosecutorial misconduct.

### 4. Denial of Request for Adjournment to Retain Private Counsel

Petitioner claims that the trial court's summary denial of his request for a three-week adjournment in order to retain private counsel deprived him of his right to choice of counsel, and that his appellate counsel was ineffective for failing to raise this claim on appeal. (Def.'s Coram Nobis Mem. at 34-35.) Petitioner maintains that he was "dissatisfied with defense counsel's lack of meaningful representation" and argues that the trial court abused its discretion by "arbitrarily denying" his request for an adjournment. (Id. at 34.)

New York courts have held that "[w]hether a continuance should be granted is largely within the discretion of the Trial Judge." People v. Arroyave, 401 N.E.2d 393, 397 (N.Y. 1980). Furthermore, "absent exigent or compelling circumstances, a court may, in the exercise of its discretion, deny a defendant's request to substitute counsel made on the eve of or during trial if the defendant has been accorded a reasonable opportunity to retain counsel of his own choosing before that time." Id. In light of public policy concerns about the delay of trial proceedings, the New York Court of Appeals has made it "incumbent upon the defendant to demonstrate that the requested adjournment has been necessitated by forces beyond his control and is not simply a dilatory tactic." Id.

This court, having already found meritless Petitioner's claim of deprivation of choice of counsel, and considering the wide discretion given to trial judges in granting continuances, finds that this claim had no likelihood of success on appeal. Appellate counsel therefore was not ineffective for failing to raise it, and Petitioner cannot be prejudiced as a result of appellate

80

counsel's failure to raise a meritless claim. See Mayo, 13 F.3d at 534 ("To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful . . . ." (internal quotation marks, citation, and alteration omitted)).

5.    Denial of Motion to Suppress Petitioner's Pre-Miranda Statements

Petitioner claims that the hearing court improperly denied his motion to suppress his pre-Miranda statements, and that his appellate counsel was ineffective for failing to raise this claim on direct appeal. (Def.'s Coram Nobis Mem. at 36-37.)

The record shows that Petitioner's statements were made while he spoke to someone on the phone and while walking from the lineup room. (Pre-Trial Tr. at 23:7-25:6.) The record supports the hearing court's finding that the statements were admissible in the absence of Miranda warnings because the statements were spontaneous and were not triggered by questions or conduct by police officers. See Miranda v. Arizona, 384 U.S. 436 (1966); Rhode Island v. Innis, 446 U.S. 291 (1980) (holding that Miranda applies only when a suspect's incriminating response is the product of words or actions on the part of police that they should have known were reasonably likely to elicit an incriminating response).

Furthermore, the hearing court credited the testimony of Detective Parsekian (see Pre-Trial Tr. at 40:10-18), which indicated that Petitioner's statement was not a product of custodial interrogation but instead was spontaneous and voluntary, and that determination is entitled to deference. See Marshall v. Lonberger, 459 U.S. 422, 434 (1983) ("28 U.S.C. 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court but not by them.").

Given the trial court's determinations of Detective Parsekian's credibility, and Petitioner's failure to show that his statements were the product of custodial interrogation, this

court finds Petitioner's claim to be meritless. The court further finds that appellate counsel was not ineffective for failing to raise this claim. Barnes, 463 U.S. at 754. Accordingly, this court finds that the state court's decision was not unreasonable application of clearly established federal law, see 28 U.S.C. § 2254(d)(1), and Petitioner is not entitled to relief.

### 6. Raising of Unpreserved Claim

Petitioner claims that his appellate counsel was ineffective because counsel raised a mischaracterized and unpreserved Ventimiglia claim. (Bethea Coram Nobis Aff. ¶¶ 15-17.) Petitioner claims that appellate counsel also was ineffective for arguing that the court failed to properly instruct the jury on the limited value of the evidence, an argument which also was unpreserved for appellate review. (Id. ¶ 17.)

The decision of appellate counsel to raise unpreserved claims does not, by itself, require a finding of ineffective assistance. See Tung v. Fischer, No. 01-CV-3877 (JG), 2003 WL 22999662, at *17 (E.D.N.Y. Dec. 22, 2003) (finding that although appellate counsel raised only one ground for appeal, which was found unpreserved, appellate counsel was not ineffective under Strickland); Washington v. Walsh, No. 01-CV-250 (JG), 2002 WL 2003207, at *7 (E.D.N.Y. Aug. 1, 2002) (finding that although appellate counsel raised two grounds for appeal, both of which were found unpreserved, appellate counsel was not ineffective under Strickland). Furthermore, even if the decision of appellate counsel to raise the unpreserved issues was an unprofessional error, Petitioner has not demonstrated that the result of his appeal would have been different absent the alleged error. See Moore v. Conway, No. 08-CV-6390T, 2010 WL 4117411, at *10 (W.D.N.Y. Oct. 20, 2010) (finding that petitioner had not satisfied the second prong of Strickland where he alleged only unprofessional error for arguing an unpreserved claim), aff'd, 476 F. App'x 928 (2d Cir. 2012) (summary order).

Even if it was unreasonable for appellate counsel to raise a claim that was unpreserved, Petitioner is required to meet both prongs of <u>Strickland</u>, and he has failed to demonstrate prejudice. <u>See Strickland</u>, 466 U.S. at 687. Thus, the court finds that the Appellate Division was not "objectively unreasonable" in denying Petitioner's claim, and Petitioner is not entitled to relief. <u>See Ryan</u>, 303 F.3d at 245.

### E. Sentencing

On April 22, 2003, Petitioner was convicted of two counts of first-degree robbery. (Apr. 22, 2003, Trial Tr. at 155:16-156:7.) First-degree robbery, N.Y. Penal Law § 160.15(4), is classified as a class B violent felony offense, <u>see</u> N.Y. Penal Law § 70.02(1)(a). Under the New York Penal Law, the maximum possible sentence for a defendant convicted of a class B violent felony offense is twenty-five years of imprisonment. N.Y. Penal Law § 70.02(3)(a). On May 12, 2003, Petitioner was sentenced to two concurrent, determinate terms of imprisonment of twenty-five years. (Sentencing Tr. at 5:14-6:11.) Accordingly, Petitioner's sentence fell within the statutory range.

Petitioner argues now, as he did on direct appeal, that his sentence was: (1) "harsh and excessive" (Def.-Appellant Br. at 19, 23); (2) "cruel and unusual punishment" as prohibited by the Eighth Amendment of the United States Constitution (<u>id.</u> at 21); and (3) a penalty for "exercising his right to trial" (<u>id.</u> at 22-23). On Petitioner's direct appeal, the Appellate Division held that "the sentence imposed was not excessive."[19] <u>Bethea</u>, 824 N.Y.S.2d at 129. This court

---

[19] The Supreme Court held in <u>Harrington</u>, 562 U.S. at 99, that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." In <u>Johnson v. Williams</u>, 133 S. Ct. 1088 (2013), the presumption was expanded to apply to adjudications not only where the state court order does not address <u>any</u> of the petitioner's claims, but also where a state court opinion addresses some but not all. The Court held that "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." <u>Id.</u> at 1096. The state court opinion here relied on no state law procedural principles, and as such the presumption is not rebutted. Therefore, this court finds that although the Appellate Division did not

addresses all of Petitioner's challenges to his sentence and, for the following reasons, denies them all.

### 1.    Harsh and Excessive

Petitioner's claim of an excessive sentence does not provide a basis for habeas relief, because "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir.1992); see also Thomas v. Senkowski, 968 F. Supp. 953, 956 (S.D.N.Y. 1997) ("It is well established that, when a sentence falls within the range prescribed by state law, the length of the sentence may not be raised as grounds for federal habeas relief."). It is undisputed that Petitioner's sentence fell within the range prescribed by state law. (See Def.-Appellant Br. at 23 n.5 ("This was the maximum allowable sentence.").) Because Petitioner's sentence is within the statutory range, it is not reviewable for excessiveness.

### 2.    "Cruel and Unusual Punishment"

In Solem v. Helm, the Supreme Court held that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." 463 U.S. 277, 290 (1983). However, the Court went on to explain that "[r]eviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." Id. The Court further elaborated in a footnote that "we do not adopt or imply approval of a general rule of appellate review of sentences . . . [as] it is not the role of an appellate court to substitute its judgment for that of the sentencing court,"

---

explicitly address Petitioner's additional challenges to his sentence, those claims have been adjudicated on the merits and the Appellate Division's decision is deserving of deference. See 28 U.S.C. § 2254(d).

and noted that "a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." Id. at 290 n.16.

A full review of a sentence under the Solem factors "is only necessary in exceptional cases where a 'threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.'" Hsu v. Cunningham, No. 05-CV-4586 (LTS) (JCF), 2006 WL 938729, at *5 (S.D.N.Y. Apr.11, 2006) (quoting Harmelin v. Michigan, 501 U.S. 957, 1005 (1991) (Kennedy, J. concurring)); see also United States v. Bennett, 252 F.3d 559, 566-67 (2d Cir. 2001) (noting that the court's review of challenges to sentences as disproportionate is "very limited"); United States v. Hildenbrandt, 378 F. Supp. 2d 44, 47 (N.D.N.Y. 2005) (finding that consideration of the Solem factors is only necessary where the petitioner has made a threshold comparison of gross disproportionality). Petitioner has failed to show the gross disproportionality required to trigger an in-depth analysis under Solem. Indeed, Petitioner's sentence falls well within the range of acceptable sentences as determined by the Supreme Court. Cf. Lockyer v. Andrade, 538 U.S. 63 (2003) (holding that sentence of two consecutive terms of 25 years to life in prison for stealing approximately $150 worth of videotapes was not cruel and unusual (emphasis added)); Ewing v. California, 538 U.S. 11 (2003) (upholding sentence of 25 years to life for the theft of several golf clubs); Rummel v. Estelle, 445 U.S. 263 (1980) (upholding sentence of life with the possibility of parole for a defendant's third nonviolent felony).

The court further notes that Petitioner received only half the maximum penalty he could have received by law. (See Sentencing Tr. at 5:25-6:4 ("Given the nature of the crimes committed of which defendant stands convicted, and the aggravated circumstances . . . there is authority in law to impose consecutive sentences.").) Furthermore, because the Appellate

Division adjudicated this claim on the merits, this court may only grant relief if the state court was "objectively unreasonable" and not merely "incorrect or erroneous" in applying clearly established federal law. Ryan, 303 F.3d at 245 (citation and internal quotation marks omitted). The state court was not objectively unreasonable in its decision denying Petitioner's Eighth Amendment claim. Accordingly, Petitioner is not entitled to relief on this claim.

3.    Vindictive Sentence

Petitioner argues that "by exercising his right to trial, [he] was penalized for failing to avail himself of a minimum offer on a lesser charge, and instead [was] excessively sentenced." (Def.-Appellant Br. at 23.) A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal. North Carolina v. Pearce, 395 U.S. 711, 725 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794 (1989). In Smith, the Supreme Court summarized its precedent on this issue:

> In order to assure the absence of such a motivation [of vindictiveness], we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for him doing so must affirmatively appear. Otherwise, a presumption arises that a greater sentence has been imposed for a vindictive purpose—a presumption that must be rebutted by objective information justifying the increased sentence.

490 U.S. at 799 (internal quotation marks, citations, and alterations omitted).

The Supreme Court has not limited the Pearce presumption to sentencings after re-trials, but instead has made clear that this same rule applies to all instances in which a "reasonable likelihood of vindictiveness" exists. United States v. Goodwin, 457 U.S. 368, 373 (1982). However, "[c]ourts have long recognized that trial judges are entitled to encourage guilty pleas by imposing on a defendant who pleads guilty a lesser sentence than would have been imposed had the defendant stood trial." United States v. Cruz, 977 F.2d 732, 733 (2d Cir. 1992) (citing

Corbitt v. New Jersey, 439 U.S. 212, 219 (1978); Brady v. United States, 397 U.S. 742, 750-51 (1970)); see also Izaguirre v. Lee, 856 F. Supp. 2d 551, 574-75 (E.D.N.Y. 2012) ("[T]he Court emphasizes that it does not conclude that the Pearce presumption applies simply because the post-trial sentence exceeded a previous plea offer. Such a conclusion would be contrary to well-established Supreme Court precedent and common sense."); Wheeler v. Phillips, No. 05-CV-4399 (JFB), 2006 WL 2357973, at *10 (E.D.N.Y. Aug. 15, 2006) ("[T]he mere fact that the trial court, following conviction, imposed a higher sentence than the plea offer does not, in and of itself, establish actual vindictiveness.").

In Petitioner's case, the trial judge set forth several valid factors that he considered in imposing Petitioner's sentence, including Petitioner's lack of remorse and the evidence adduced at trial, specifically as it pertained to the recantation of one of the victims. (Sentencing Tr. at 5:14-6:3.) Cf. Cruz, 977 F.2d at 734 (finding vindictiveness by sentencing judge who threatened defendant before trial with the maximum sentence if he lacked "a good defense"); Izaguirre, 856 F. Supp. 2d at 574-75 (E.D.N.Y. 2012) (finding that Pearce presumption should have applied where sentencing judge told defendant before trial that he would receive the non-mandatory, statutory maximum if he were convicted; at that time, the judge had not been presented with any of the state's evidence, petitioner's defense, or a pre-sentencing report).

Additionally, Petitioner offers no evidence to support his claim that his sentence was a vindictive measure intended as punishment for his decision to go to trial. The court also notes that the state court's denial of this claim on the merits is entitled to substantial deference. Accordingly, Petitioner is not entitled to relief on this claim. See 28 U.S.C. § 2254(d).

## F.    Actual Innocence

Petitioner does not assert a claim of actual innocence to overcome a procedural bar or other procedural obstacle. Rather, he requests that this court grant him habeas relief on the basis that he was wrongly convicted and had a legitimate alibi defense. (Aff. in Supp. of Mot. to Vacate J. ¶¶ 12-13, 23.) Petitioner asserts that at the time of the robberies on October 31, 2001, he was with his then-girlfriend, Kyonte Walker, and her mother, Angienette Walker, at their apartment at 777 Franklin Avenue from 3:00 p.m. to 11:30 p.m. (Id. ¶¶ 12, 23; see also Mem. in Supp. of § 440.10 Mot. at 3-4.) In support of his claim, Petitioner submitted an affidavit by Kyonte Walker, now his wife, affirming Petitioner's alibi. (See Walker Aff.)

Petitioner first raised this claim of actual innocence in his § 440.10 motion to vacate judgment. (See Not. of Mot. to Vacate J.) The § 440.10 court found Petitioner's actual innocence claim to be meritless (see Pre-Hr'g Decision at 6), and further held that "in light of the overwhelming evidence of guilt at defendant's trial, defendant's evidence, consisting solely of an affidavit drafted long after trial, is entirely unreliable" (id. at 5-6). The § 440.10 court also noted that Petitioner had not demonstrated why he failed to present his alibi sooner. (Id. at 6.)

Nonetheless, the § 440.10 court granted a hearing with respect to the issue of whether trial counsel was ineffective for failing to investigate and proffer an alibi defense at the hearing and trial. (Id. at 12.) After that hearing, the court made the following findings of fact regarding Petitioner and his wife as it concerned Petitioner's alleged alibi:

> The Court rejects Ms. Bethea and defendant's version of events in its entirety. The Court finds their testimony was not credible. Ms. Bethea testified that her boyfriend at the time, who she saw an [sic] a nearly daily basis, simply disappeared for approximately six months, and she was completely unaware of his situation. Further, it is incredible to think that once Ms. Bethea was aware of the charges, and as she testified, defendant's innocence, that she would not have more strenuously followed up with defendant's attorney.

> Ms. Bethea did not even attend defendant's trial until after she would have had an opportunity to provide her alibi evidence. Ms. Bethea admits she did not contact any of the attorneys who represented defendant after his conviction and sentencing in 2003.

(Post-Hr'g Decision at 6.) Under AEDPA, "a determination of a factual issue made by a State court [is] presumed to be correct," and a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The court finds that Petitioner has failed to meet this burden.

"[A] federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Dretke v. Haley, 541 U.S. 386, 393-94 (2004). Having addressed all of Petitioner's nondefaulted claims, the court now turns to Petitioner's claim of actual innocence.

The United States Supreme Court has yet to recognize a freestanding federal constitutional claim of actual innocence. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); District Attorney's Office v. Osborne, 557 U.S. 52, 71, (2009) ("Whether [a federal right to be released upon proof of actual innocence] exists is an open question. We have struggled with it over the years, in some cases assuming, arguendo, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet."); House v. Bell, 547 U.S. 518, 554-55 (2006) (declining to decide whether a freestanding actual innocence claim exists); Herrera, 506 U.S. at 404 (finding that habeas petitioner who was not seeking to excuse procedural default was not entitled to relief based on actual innocence claim). Petitioner, therefore, cannot show that the New York

Supreme Court's decision denying Petitioner's actual innocence claim was contrary to, or an unreasonable application of, clearly established federal law.

Even assuming, arguendo, the existence of a freestanding federal claim of actual innocence, the Supreme Court has suggested that the threshold showing for such a claim would be "extraordinarily high." Herrera, 506 U.S. at 417; see Osborne, 557 U.S. at 71 (noting high standard that actual innocence claimants would have to meet). Here, in support of his actual innocence claim, Petitioner merely marshals the same arguments about his trial counsel's failures that state courts and this court have largely found to be meritless. Additionally, the "new evidence" that Petitioner presents is an affidavit submitted by Petitioner's wife, which the § 440.10 court found "not credible." (Post-Hr'g Decision at 6.) This showing falls far short of the threshold that would apply in a hypothetical free-standing actual innocence claim. See Herrera, 506 U.S. at 417 (finding petitioner's showing fell far short of the "extraordinarily high" threshold applicable to an actual innocence claim). Furthermore, even if Petitioner were to make out a free-standing federal claim of actual innocence, the availability of relief for such a claim has been limited in dicta to capital cases, which this case is not. See Herrera, 506 U.S. at 417 ("We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim."). Accordingly, the court denies Petitioner's request for relief based on a claim that he is actually innocent.

## IV. CONCLUSION

For the reasons set forth above, Bethea's Petition for Writ of Habeas Corpus is DENIED. Because Petitioner has not made a substantial showing of the denial of a constitutional right, no

certificate of appealability shall issue. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this judgment would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      January 19, 2016

NICHOLAS G. GARAUFIS
United States District Judge